SCOTT A. KRONLAND (Lead Counsel, *pro hac vice*)
MATTHEW J. MURRAY (*pro hac vice*)
ALTSHULER BERZON LLP
177 Post Street, Suite 300
San Francisco, CA 94108
Telephone: (415) 421-7151
Facsimile: (415) 362-8064
E-mail: skronland@altber.com
mmurray@altber.com

KAREN O'KASEY, OSB No. 870696
HART WAGNER LLP
1000 SW Broadway, 20th Floor
Portland, OR 97205
Telephone: (503) 222-4499
Facsimile: (503) 222-2301
E-mail: kok@hartwagner.com

*Attorneys for Defendant*
*Portland Association of Teachers*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| JOHN DOE, an individual,<br><br>          Plaintiff,<br>     v .<br><br>PORTLAND ASSOCIATION OF<br>TEACHERS, *et al*.,<br><br>          Defendants.<br>_____ | Case No. 3:25-cv-00854-AR<br><br>**DEFENDANT PORTLAND<br>ASSOCIATION OF TEACHERS'<br>MOTION TO DISMISS** |

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES..................................................................................................iii

L.R. 7-1 CERTIFICATION ................................................................................................. 1

MOTION .............................................................................................................................. 1

LEGAL ARGUMENT .......................................................................................................... 2

    INTRODUCTION .......................................................................................................... 2

    BACKGROUND .............................................................................................................. 4

        1.  Oregon's collective bargaining system........................................................................ 4

        2.  Plaintiff's lawsuit ...................................................................................................... 6

    LEGAL STANDARD....................................................................................................... 7

    ARGUMENT.................................................................................................................... 8

    I.   Plaintiff's First Amended Complaint should be dismissed in its entirety because he has not identified himself or obtained leave to proceed anonymously. ........................... 8

    II.  *Knight* and *Mentele* foreclose Plaintiff's First Amendment challenge to exclusive-representative collective bargaining (Count I).................................................................. 9

        A. Count I is foreclosed by *Knight*. ...................................................................... 9

        B. As recognized in *Mentele*, *Janus* does not disturb *Knight*........................................ 11

        C. Count I would fail even if *Knight* and *Mentele* did not directly control.................. 12

        D. Plaintiff's allegations about his personal views do not change the analysis............. 16

    III. Exclusive-representative collective bargaining does not violate the First Amendment Free Exercise clause (Count II)................................................................... 18

        A. Count II is foreclosed by *Knight* and *Mentele*. ......................................................... 18

        B. Count II would fail even if *Knight* and *Mentele* did not directly control. ................ 19

    IV. Plaintiffs' Title VII claim should be dismissed as untimely (Count VII)....................... 21

    CONCLUSION................................................................................................................. 23

CERTIFICATE OF COMPLIANCE ..................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A.G. v. Unum Life Ins. Co. of Am.*,
2018 WL 903463 (D. Or. Feb. 14, 2018).................................................................................8

*Abood v. Detroit Bd. of Ed.*,
431 U.S. 209 (1977)...............................................................................................................16

*Adams v. Teamsters Union Loc. 429*,
2022 WL 186045 (3d Cir. Jan. 20, 2022) (unpublished),
*cert. denied*, 143 S. Ct. 88 (2022)........................................................................................3

*Akers v. Maryland State Educ. Ass'n*,
990 F.3d 375 (4th Cir. 2021) ................................................................................................3

*Apache Stronghold v. United States*,
101 F.4th 1036 (9th Cir. 2024) (en banc) ............................................................................19

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)...........................................................................................................8, 13

*Babb v. Cal. Tchrs. Ass'n*,
378 F.Supp.3d 857 (C.D. Cal. 2019),
*aff'd sub nom. Martin v. Cal. Tchrs. Ass'n*,
2022 WL 256360 (9th Cir. Jan. 26, 2022) ...........................................................................12

*Bd. of Educ. of Westside Cmty. Sch. v. Mergens By & Through Mergens*,
496 U.S. 226 (1990)...............................................................................................................15

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007).................................................................................................................7

*Bennett v. AFSCME Council 31*,
991 F.3d 724 (7th Cir. 2021),
*cert. denied*, 142 S. Ct. 424 (2021) .......................................................................................3

*Bierman v. Dayton*,
900 F.3d 570 (8th Cir. 2018),
*cert. denied sub nom. Bierman v. Walz*, 139 S. Ct. 2043 (2019)..............................................3

*Boardman v. Inslee*,
978 F.3d 1092 (9th Cir. 2020) ..............................................................................................12

*Bowen v. Roy*,
     476 U.S. 693 (1986)...............................................................................................19

*Boy Scouts of Am. v. Dale*,
     530 U.S. 640 (2000)...............................................................................................13

*Branch v. Commonwealth Emp't Relations Bd.*,
     120 N.E.3d 1163 (Mass. 2019),
     *cert. denied sub nom. Branch v. Mass. Dep't of Labor Relations*,
     140 S. Ct. 858 (2020)................................................................................................3

*Coleman v. Children's Servs. Div. of Dep't of Hum. Res.*,
     71 Or. App. 687 (1985)............................................................................................5

*Crockett v. NEA-Alaska*,
     367 F.Supp.3d 996 (D. Alaska 2019) ....................................................................12

*Crowe v. Oregon State Bar*,
     112 F.4th 1218 (9th Cir. 2024) ..............................................................................14

*D'Agostino v. Baker*,
     812 F.3d 240 (1st Cir.),
     *cert. denied*, 579 U.S. 909 (2016)................................................................3, 13, 15

*Does I thru XXIII v. Advanced Textile Corp.*,
     214 F.3d 1058, 1067 (9th Cir. 2000) ...................................................................2, 8

*Emp't Div., Dep't of Human Res. of Or. v. Smith*,
     494 U.S. 872 (1990)...............................................................................................20

*Fulton v. City of Philadelphia, Pa.*,
     593 U.S. 522 (2021)...............................................................................................20

*Goldstein v. Prof. Staff Cong./CUNY*,
     643 F.Supp.3d 431 (S.D.N.Y. 2022).....................................................................16

*Goldstein v. Prof. Staff Cong./CUNY*,
     96 F.4th 345 (2d Cir. 2024),
     *cert. denied*, 145 S. Ct. 1044 (2025)....................................................................3, 9

*Grossman v. Hawaii Gov't Emps. Ass'n/AFSCME Loc. 152*,
     382 F.Supp.3d 1088 (D. Haw. 2019).....................................................................12

*Gums v. Oakland Unified Sch. Dist.*,
     2003 WL 716240 (N.D. Cal. Feb. 24, 2003) .........................................................23

*Hendrickson v. AFSCME Council 18*,
    992 F.3d 950 (10th Cir. 2021),
    *cert. denied*, 142 S. Ct. 423 (2021) ......................................................................3

*Hill v. SEIU*,
    850 F.3d 861 (7th Cir.),
    *cert. denied*, 583 U.S. 972 (2017)........................................................................3

*Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp. of Boston*,
    515 U.S. 557 (1995)..............................................................................................13

*Janus v. AFSCME Council 31*,
    585 U.S. 878 (2018)....................................................................................6, 11, 16

*Jarvis v. Cuomo*,
    660 F. App'x 72 (2d Cir. 2016),
    *cert. denied*, 580 U.S. 1159 (2017) ......................................................................3

*Kato v. Ishihara*,
    239 F.Supp.2d 359 (S.D.N.Y. 2002),
    *aff'd*, 360 F.3d 106 (2d Cir. 2004)......................................................................23

*Knight v. Minnesota Cmty. Coll. Fac. Ass'n*,
    460 U.S. 1048 (1983)............................................................................................10

*Krieger v. Banks*,
    No. 2:24-cv-08589-SVW-SK, Doc. #38 (C.D. Cal. July 21, 2025) ......................12

*Lyng v. Northwest Indian Cemetery Protective Ass'n*,
    485 U.S. 439 (1988)..............................................................................................19

*Mentele v. Inslee*,
    916 F.3d 783 (9th Cir. 2019),
    *cert. denied sub nom. Miller v. Inslee*, 140 S. Ct. 114 (2019) ......................... *passim*

*Minnesota State Board for Community Colleges v. Knight*,
    465 U.S. 271 (1984)............................................................................................ *passim*

*Moody v. NetChoice, LLC*,
    144 S. Ct. 2383 (2024)..........................................................................................13

*Nat'l R.R. Passenger Corp. v. Morgan*,
    536 U.S. 101 (2002)...........................................................................................4, 22

*Nuss v. Pan Am. World Airways, Inc.*,
    634 F.2d 1234 (9th Cir. 1980) ...........................................................................4, 22

*O'Callaghan v. Regents of Univ. of Cal.*,
    2019 WL 6330686 (C.D. Cal. Sept. 30, 2019),
    *aff'd sub nom. O'Callaghan v. Napolitano*,
    2022 WL 1262135 (9th Cir. Apr. 28, 2022) ..........................................................................12

*Ocol v. Chicago Tchrs. Union*,
    982 F.3d 529 (7th Cir. 2020),
    *cert. denied*, 142 S. Ct. 423 (2021) .....................................................................................3

*Oliver v. SEIU Local 668*,
    830 F. App'x 76 (3d. Cir. 2020) .............................................................................................3

*Olympus Spa v. Armstrong*,
    138 F.4th 1204 (9th Cir. 2025) .............................................................................................20

*Parents for Priv. v. Barr*,
    949 F.3d 1210 (9th Cir. 2020) .................................................................................19, 20, 21

*Peltz-Steele v. UMass Fac. Fed'n*,
    60 F.4th 1 (1st Cir. 2023),
    *cert. denied*, 143 S. Ct. 2614 (2023) ...............................................................................3, 15

*Radovich v. Placer Cnty. Sheriff's Off.*,
    2019 WL 3425998 (E.D. Cal. July 30, 2019) .......................................................................23

*Reisman v. Associated Faculties of Univ. of Maine*,
    939 F.3d 409 (1st Cir. 2019),
    *cert. denied*, 141 S. Ct. 445 (2020) .................................................................................3, 15

*Rumsfeld v. Forum for Academic & Institutional Rights, Inc.*,
    547 U.S. 47 (2006)............................................................................................................16, 17

*Sosa v. Hiraoka*,
    920 F.2d 1451 (9th Cir. 1990) ..............................................................................................22

*St. Louis v. New York City Health & Hosp. Corp.*,
    682 F.Supp.2d 216 (E.D.N.Y. 2010) ....................................................................................22

*Stevens v. Cnty. of San Mateo*,
    2005 WL 350965 (N.D. Cal. Feb. 11, 2005) ........................................................................22

*Stormans, Inc. v. Wiesman*,
    794 F.3d 1064 (9th Cir. 2015) ..............................................................................................20

*Sweet v. Cal. Ass'n of Psychiatric Technicians*,
    2019 WL 4054105 (E.D. Cal. Aug. 28, 2019)......................................................................12

*Tarbah v. Gonzalez*,
   No. 5:25-cv-00882-KK-SP, Doc. #67 (C.D. Cal. July 18, 2025) ............................................12

*Thompson v. Marietta Educ. Ass'n*,
   972 F.3d 809 (6th Cir. 2020),
   *cert. denied*, 141 S. Ct. 2721 (2021) ...................................................................................3

*United States v. Stoterau*,
   524 F.3d 988 (9th Cir. 2008) .............................................................................................8

*Uradnik v. Inter Fac. Org.*,
   2 F.4th 722 (8th Cir. 2021) ...............................................................................................3

*West Virginia State Bd. of Educ. v. Barnette*,
   319 U.S. 624 (1943) .........................................................................................................18

*Wright v. Serv. Emps. Int'l Union Loc.*
   503, 48 F.4th 1112 (9th Cir. 2022)
   *cert. denied*, 143 S. Ct. 749 (2023) ..................................................................................5

**Administrative Decisions**

*Chan v. Leach*,
   Case No. UP-13-05, 21 PECBR 563,
   2006 WL 5668388 (Or. ERB Dec. 22, 2006) .................................................................17

*Pratka v. Laborers Internat'l Union of N. Am., Local 483*,
   Case No. FR-001-21, 2022 WL 1062301 (Or. ERB Apr. 6, 2022) .................................5

**Statutes**

29 U.S.C. §158(d) ...................................................................................................................5

29 U.S.C. §159 ........................................................................................................................5

42 U.S.C. §1983 ......................................................................................................................2

42 U.S.C. §2000e-2(c) ..........................................................................................................17

42 U.S.C. §2000e-5(e)(1) ..............................................................................................2, 21, 22

45 U.S.C. §152 Fourth ............................................................................................................5

Alaska Stat. §23.40.110(b) ......................................................................................................6

Cal. Gov't Code §3515.5 .........................................................................................................6

Conn. Gen. Stat. §5-271(b) ......................................................................................................6

D.C. Code §1-617.10(a) ................................................................................................6

Del. Code tit. 19, §1304(a) ..........................................................................................6

Fla. Stat. §447.307(1)(a) ..............................................................................................6

Ga. Code Ann. §25-5-5 ................................................................................................6

Haw. Rev. Stat. §89-8(a) ..............................................................................................6

Idaho Code §§33-1273, 44-1803 .................................................................................6

Ill. Comp. Stat. §315/3(f) ............................................................................................6

Ind. Code §20-29-2-9 ...................................................................................................6

Ind. Code §20-29-5-2(a) ..............................................................................................6

Iowa Code §20.16 ........................................................................................................6

Kan. Stat. §72-2220(a) .................................................................................................6

Ky. Rev. Stat. §67A.6902(2) .......................................................................................6

Ky. Rev. Stat. §345.030(2) ..........................................................................................6

Mass. Gen. Laws ch. 150E, §4.....................................................................................6

Me. Rev. Stat. tit. 26, §967(1-A) .................................................................................6

Me. Rev. Stat. tit. 26, §979-F(2)(B) ............................................................................6

Mich. Comp. Laws §423.26..........................................................................................6

Mich. Comp. Laws §423.211 .......................................................................................6

Minn. Stat. §179A.06(2) ..............................................................................................6

Mont. Code §39-31-205 ...............................................................................................6

Mont. Code §39-31-206 ...............................................................................................6

N.D. Cent. Code §15.1-16-11(1)(f) .............................................................................6

N.D. Cent. Code §15.1-16-18 ......................................................................................6

N.H. Rev. Stat. Ann. §273-A:3(I) ................................................................................6

N.H. Rev. Stat. Ann. §273-A:11 ..................................................................................6

N.J. Stat. §34:13A-5.3........................................................................................................6

N.M. Stat. §10-7E-15(A) ...................................................................................................6

N.Y. Civ. Serv. Law §204(2)..............................................................................................6

Neb. Rev. Stat. §48-838(4) ................................................................................................6

Nev. Rev. Stat. §288.160(2)...............................................................................................6

NLRA 2313 (1935) .............................................................................................................6

Ohio Rev. Code §4117.04(A) .............................................................................................6

Okla. Stat. tit. 19, §901.30-2(E)..........................................................................................6

ORS 243.650 et seq.............................................................................................................4

ORS 243.650(7) .............................................................................................................5, 14

ORS 243.656.......................................................................................................................21

ORS 243.662.........................................................................................................................5

ORS 243.666(1) .................................................................................................5, 6, 14, 19

ORS 243.672(1)(a)...............................................................................................................5

ORS 243.672(1)(e)..........................................................................................................5, 19

ORS 243.672(2)(a)...............................................................................................................5

ORS 243.686(4) ...................................................................................................................5

ORS 659A.030.................................................................................................................7, 17

P.R. Laws tit. 3, §1451b......................................................................................................6

P.R. Laws tit. 3, §1451f .....................................................................................................6

Pa. Stat. §1101.606 .............................................................................................................6

R.I. Gen. Laws §36-11-2(d).................................................................................................6

S.D. Codified Laws §3-18-3 ...............................................................................................6

Texas Loc. Gov't Code §174.101 .......................................................................................6

Texas Loc. Gov't Code §174.102 .......................................................................................6

Page ix  Defendant Portland Association of Teachers' Motion to Dismiss

Utah Code §34-20a-4 ................................................................................................................6

Vt. Stat. tit. 3, §941(h), tit. 16 §1991(a) ...............................................................................6

Wash. Rev. Code §41.56.080 ...................................................................................................6

Wash. Rev. Code §41.80.080(2)-(3) .......................................................................................6

Wis. Stat. §111.83(1) ..............................................................................................................6

Wyo. Stat. §27-10-103 ............................................................................................................6

**Rules**

Fed. R. Civ. P. 10(a) ......................................................................................................1, 2, 8

Fed. R. Civ. P. 12(b)(6) ...........................................................................................................2

**Other Authorities**

Portland Public Schools Board Policy 5.60.030-P ................................................................23

S. Rep. No. 74-573, reprinted in 2 Leg. Hist. of the NLRA 2313 (1935) .............................6

**L.R. 7-1 CERTIFICATION**

Counsel for the Defendant Portland Association of Teachers conferred in good faith on August 19, 2025, with counsel for Plaintiff about the subject of this motion. The issue could not be resolved without the assistance of the Court.

**MOTION**

Defendant Portland Association of Teachers ("PAT") moves to dismiss Plaintiff John Doe's First Amended Complaint in its entirety because Plaintiff has failed to include his true name in the complaint, in violation of both Fed. R. Civ. P. 10(a)'s requirement that the title of every complaint "must name all the parties" and the public's common law right of access to judicial proceedings.

Defendant PAT further moves to dismiss Plaintiff's Counts I, II, and VII with prejudice because Plaintiff has failed to state a claim on which relief can be granted.

Counts I and II allege that PAT's status as exclusive representative of a bargaining unit of employees for purposes of collective bargaining under Oregon's public employee collective bargaining laws violates his rights to freedom of association and the free exercise of religion under the First Amendment. Those claims are foreclosed by binding Supreme Court and Ninth Circuit precedent. *See Minnesota State Board for Community Colleges v. Knight*, 465 U.S. 271 (1984); *Mentele v. Inslee*, 916 F.3d 783, 787–89 (9th Cir. 2019), *cert. denied sub nom. Miller v. Inslee*, 140 S. Ct. 114 (2019).

Count VII alleges that PAT violated Title VII of the Civil Rights Act of 1964. The allegations in the First Amended Complaint establish on their face that Count VII is untimely, because Plaintiff failed to file a charge with the Equal Employment Opportunity Commission

Page 1  Defendant Portland Association of Teachers' Motion to Dismiss

("EEOC") within 180 days of the last allegedly discriminatory act by PAT, as required by 42 U.S.C. §2000e-5(e)(1).

In support of this motion, PAT relies on Fed. R. Civ. P. 10(a) and 12(b)(6); the legal argument below; the First Amended Complaint (ECF 30); and the files and record of this case.

## LEGAL ARGUMENT

### INTRODUCTION

Plaintiff is an unidentified teacher employed by the Portland Public Schools ("District"). His First Amended Complaint (ECF 30, "FAC") asserts two 42 U.S.C. §1983 claims against defendant Portland Association of Teachers ("PAT" or "Union") for alleged violation of the First Amendment, state and federal claims against PAT for alleged religion/national origin discrimination, and other claims against other defendants. The First Amended Complaint should be dismissed.

As a threshold matter, Plaintiff "John Doe" failed to include his true name in either the original complaint or the First Amended Complaint, in violation of the public's common law right of access to judicial proceedings and Rule 10(a)'s command that the title of every complaint "must name all the parties." Fed. R. Civ. P. 10(a); *see Does I thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058, 1067 (9th Cir. 2000). Plaintiff has not moved for permission to proceed under a pseudonym, and there is no basis for him to do so. The First Amended Complaint should be dismissed in its entirety on this threshold ground, with leave to amend to add Plaintiff Doe's true name if he wishes to proceed with the case.

In addition, Plaintiff Doe's Counts I and II under the First Amendment should be dismissed with prejudice, because they are foreclosed by binding precedent. Count I asserts that the District's recognition of PAT as the exclusive collective bargaining representative of a

bargaining unit violates Plaintiff's First Amendment right to freedom of association by compelling him to associate with the Union. This claim is foreclosed by *Minnesota State Board for Community Colleges v. Knight*, 465 U.S. 271 (1984), which holds that an exclusive-representative bargaining system does not compel association in violation of the First Amendment. *See id.* at 288 (designation of union as bargaining representative "in no way restrain[s] … [the employees'] freedom to associate or not to associate with whom they please, including the exclusive representative"). The Ninth Circuit and every other court to consider the issue have recognized that *Knight* forecloses First Amendment challenges to exclusive representation for public employees. *See Mentele v. Inslee*, 916 F.3d 783, 787–89 (9th Cir. 2019) (holding that, under *Knight*, state "authorization of an exclusive bargaining representative does not infringe [employee's] First Amendment rights"), *cert. denied sub nom. Miller v. Inslee*, 140 S. Ct. 114 (2019); *see also Goldstein v. Prof. Staff Cong./CUNY*, 96 F.4th 345, 347, 351 (2d Cir. 2024) (rejecting challenge to exclusive representation by professors who alleged union was "anti-Semitic"), *cert. denied*, 145 S. Ct. 1044 (2025).[1]

---

[1] *See also Peltz-Steele v. UMass Fac. Fed'n*, 60 F.4th 1, 4–8 (1st Cir. 2023), *cert. denied*, 143 S. Ct. 2614 (2023); *Adams v. Teamsters Union Loc. 429*, 2022 WL 186045, at *2–3 (3d Cir. Jan. 20, 2022) (unpublished), *cert. denied*, 143 S. Ct. 88 (2022); *Uradnik v. Inter Fac. Org.*, 2 F.4th 722, 725–27 (8th Cir. 2021); *Hendrickson v. AFSCME Council 18*, 992 F.3d 950, 968–70 (10th Cir. 2021), *cert. denied*, 142 S. Ct. 423 (2021); *Bennett v. AFSCME Council 31*, 991 F.3d 724, 732–35 (7th Cir. 2021), *cert. denied*, 142 S. Ct. 424 (2021); *Akers v. Maryland State Educ. Ass'n*, 990 F.3d 375, 382 n.3 (4th Cir. 2021); *Ocol v. Chicago Tchrs. Union*, 982 F.3d 529, 532–33 (7th Cir. 2020), *cert. denied*, 142 S. Ct. 423 (2021); *Thompson v. Marietta Educ. Ass'n*, 972 F.3d 809, 813–14 (6th Cir. 2020), *cert. denied*, 141 S. Ct. 2721 (2021); *Oliver v. SEIU Local 668*, 830 F. App'x 76, 80–81 (3d. Cir. 2020); *Reisman v. Associated Faculties of Univ. of Maine*, 939 F.3d 409, 412–14 (1st Cir. 2019), *cert. denied*, 141 S. Ct. 445 (2020); *Branch v. Commonwealth Emp't Relations Bd.*, 120 N.E.3d 1163, 1173 (Mass. 2019), *cert. denied sub nom. Branch v. Mass. Dep't of Labor Relations*, 140 S. Ct. 858 (2020); *Bierman v. Dayton*, 900 F.3d 570, 573–74 (8th Cir. 2018), *cert. denied sub nom. Bierman v. Walz*, 139 S. Ct. 2043 (2019); *Hill v. SEIU*, 850 F.3d 861, 864–65 (7th Cir.), *cert. denied*, 583 U.S. 972 (2017); *Jarvis v. Cuomo*, 660 F. App'x 72, 74–75 (2d Cir. 2016), *cert. denied*, 580 U.S. 1159 (2017); *D'Agostino v. Baker*, 812 F.3d 240, 243–44 (1st Cir.), *cert. denied*, 579 U.S. 909 (2016).

Count II asserts that exclusive-representative collective bargaining violates Plaintiff's First Amendment right to the free exercise of religion by compelling him to associate with the Union. Count II should be dismissed for the same reasons as Count I, because exclusive-representative bargaining does not compel any expressive association implicating the First Amendment.

Plaintiff's Count VII claim under Title VII of the Civil Rights Act of 1964 should also be dismissed with prejudice, because it is untimely. "To maintain an action under Title VII …, a plaintiff must file a timely charge of discrimination with the [Equal Employment Opportunity Commission ('EEOC')]" within 180 days of the last alleged discriminatory act by the defendant. *Nuss v. Pan Am. World Airways, Inc.*, 634 F.2d 1234, 1236 (9th Cir. 1980); *see Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 120 (2002). The allegations in Plaintiff's First Amended Complaint establish that he failed to do so. Plaintiff alleges that PAT caused him to suffer a hostile work environment at his prior school site, but that he was transferred to a new school site at the end of the 2023-24 school year. FAC ¶113. He does not allege that PAT engaged in any discriminatory act after that transfer, yet he admits that he did not file a charge with the EEOC until almost a year later, on May 22, 2025. FAC ¶198. His Title VII claim thus is untimely.

Plaintiff's only other claim against PAT is a state-law discrimination claim (Count V). That claim is not addressed by this motion.

## BACKGROUND

### 1. Oregon's collective bargaining system

Under Oregon's Public Employee Collective Bargaining Act ("PECBA"), ORS 243.650 et seq., the majority of public school employees in an appropriate bargaining unit may

Page 4  Defendant Portland Association of Teachers' Motion to Dismiss

democratically vote to be represented by an employee organization for purposes of collective bargaining about terms and conditions of employment. ORS 243.662, 243.666(1), 243.686(4). If employees choose union representation, the union becomes the "exclusive representative" of the bargaining unit "for the purposes of collective bargaining with respect to employment relations," and the public employer has a duty to bargain with the union about unit-wide "employment relations." ORS 243.666(1), 243.672(1)(e). Under Oregon law, school districts are not required to bargain with the exclusive representative about "the school curriculum" and other matters expressly excluded from the definition of "employment relations" under ORS 243.650(7)(e).

The PECBA guarantees employees the right to choose whether to become members of a union that represents their bargaining unit, free from any retaliation or discrimination from their employers or unions. ORS 243.662, 243.672(1)(a), (2)(a); *Wright v. Serv. Emps. Int'l Union Loc.* 503, 48 F.4th 1112, 1121 (9th Cir. 2022) ("Oregon do[es] not require state employees to join a union."), *cert. denied*, 143 S. Ct. 749 (2023). The exclusive representative has a duty to fairly represent all bargaining unit employees, regardless of membership status, in negotiating and enforcing the collective bargaining agreement. *See Coleman v. Children's Servs. Div. of Dep't of Hum. Res.*, 71 Or. App. 687, 691 (1985); *Pratka v. Laborers Internat'l Union of N. Am., Local 483*, Case No. FR-001-21, 2022 WL 1062301, at *6 (Or. ERB Apr. 6, 2022) ("Among other things, ORS 243.672(2)(a) requires a labor organization to fairly represent all employees in a bargaining unit for which it is the exclusive representation.").

The PECBA's democratic system of exclusive-representative bargaining follows the model that Congress adopted nearly a century ago for private-sector labor relations. *See* 29 U.S.C. §§158(d), 159 (exclusive representation provisions of National Labor Relations Act); 45 U.S.C. §152 Fourth (exclusive representation provisions of Railway Labor Act). Congress

adopted exclusive representation as the best mechanism for stable labor relations, concluding

that, because it is "practically impossible to apply two or more sets of agreements to one unit of

workers at the same time, or to apply the terms of one agreement to only a portion of the workers

in a single unit, the making of agreements is impracticable in the absence of majority rule." S.

Rep. No. 74-573, reprinted in 2 Leg. Hist. of the NLRA 2313 (1935). The exclusive-

representation model is the essentially universal collective bargaining system in the United States

and is also used by the federal government for its employees, and in at least 37 states, the District

of Columbia, and Puerto Rico for at least some public employees.[2]

After *Janus v. AFSCME Council 31*, 585 U.S. 878 (2018), public employees who choose

not to be members of the union that represents their bargaining unit are not required to provide

any financial support to the union.

### 2. Plaintiff's lawsuit

Plaintiff has not identified himself in the First Amended Complaint. FAC ¶4. Nor has he

moved for leave to proceed anonymously. He alleges that he is a teacher employed by the

District in a bargaining unit represented by PAT. *Id.* ¶¶4-6. Plaintiff alleges that he is not a

member and has never been a member of PAT. *Id.* ¶24. Plaintiff does not allege that he has ever

---

[2] *See* Alaska Stat. §23.40.110(b); Cal. Gov't Code §3515.5; Conn. Gen. Stat. §5-271(b); Del. Code tit. 19, §1304(a); D.C. Code §1-617.10(a); Fla. Stat. §447.307(1)(a); Ga. Code Ann. §25-5-5; Haw. Rev. Stat. §89-8(a); Idaho Code §§33-1273, 44-1803; 5 Ill. Comp. Stat. §315/3(f); Ind. Code §§20-29-5-2(a), 20-29-2-9; Iowa Code §20.16; Kan. Stat. §72-2220(a); Ky. Rev. Stat. §§67A.6902(2), 345.030(2); Me. Rev. Stat. tit. 26, §§967(1-A), 979-F(2)(B); Mass. Gen. Laws ch. 150E, §4; Mich. Comp. Laws §§423.26, 423.211; Minn. Stat. §179A.06(2); Mont. Code §§39-31-205, 39-31-206; Neb. Rev. Stat. §48-838(4); Nev. Rev. Stat. §288.160(2); N.H. Rev. Stat. Ann. §§273-A:3(I), 273-A:11; N.J. Stat. §34:13A-5.3; N.M. Stat. §10-7E-15(A); N.Y. Civ. Serv. Law §204(2); N.D. Cent. Code §§15.1-16-11(1)(f), 15.1-16-18; Ohio Rev. Code §4117.04(A); Okla. Stat. tit. 19, §901.30-2(E); ORS 243.666(1); 43 Pa. Stat. §1101.606; P.R. Laws tit. 3, §§1451b, 1451f; R.I. Gen. Laws §36-11-2(d); S.D. Codified Laws §3-18-3; Texas Loc. Gov't Code §§174.101, 174.102; Utah Code §34-20a-4; Vt. Stat. tit. 3, §941(h), tit. 16 §1991(a); Wash. Rev. Code §§41.56.080, 41.80.080(2)-(3); Wis. Stat. §111.83(1); Wyo. Stat. §27-10-103.

been required to pay dues, make any statement, take any action, or indeed say or do *anything* to support PAT.

Plaintiff filed this lawsuit on May 19, 2025. ECF 1. He filed the operative First Amended Complaint on August 8, 2025, against PAT, the District, District Superintendent Kimberlee Armstrong, the members of the District Board of Education, the Oregon Employment Relations Board ("ERB"), and the ERB members. FAC ¶¶5-19.

Plaintiff alleges that he opposes the Union because, in his view, the Union "distributed anti-Israel teaching materials." *Id.* pg. 2. Plaintiff asserts four counts against PAT. Count I alleges that PAT's status as exclusive bargaining representative "violates the Plaintiff's free association" rights under the First Amendment by "forcing him to associate" with PAT's expression. *Id.* ¶123. Count II alleges that PAT's status as exclusive bargaining representative "burdens Plaintiff's free exercise of his religion" by "compel[ling him], by association, to tacitly affirm beliefs that violate his deeply held religious beliefs," in violation of the First Amendment. *Id.* ¶¶129, 133. Plaintiff asserts Counts I and II against the District and ERB, along with PAT. Count V alleges that PAT and the District "discriminated against Plaintiff based on his religious beliefs and national origin, including creation of a hostile work environment," in violation of Oregon state law, ORS 659A.030. FAC ¶157. Count VII alleges that PAT "caused Plaintiff's work environment to become hostile," in violation of Title VII. *Id.* ¶189. Plaintiff also brings three counts against only the District (Counts III, IV, and VI). *Id.* ¶¶139, 147, 159.

## LEGAL STANDARD

To survive a motion to dismiss, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Although the Court must accept as true all well-pled factual allegations, that tenet "is

inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Nor may a complaint rely on "mere conclusory statements." *Id.*

## ARGUMENT

**I.**    **Plaintiff's First Amended Complaint should be dismissed in its entirety because he has not identified himself or obtained leave to proceed anonymously.**

As a threshold matter, Plaintiff's First Amended Complaint should be dismissed in its entirety for violation of Fed. R. Civ. P. 10(a)'s command that the title of every complaint "must name all the parties," and the public's common law right to access to judicial proceedings. *See Does I thru XXIII*, 214 F.3d at 1067 ("Plaintiffs' use of fictitious names runs afoul of the public's common law right of access to judicial proceedings … and Rule 10(a)…."). "As a general rule, the identity of the parties in any action, civil or criminal, should not be concealed except in an unusual case, where there is a need for the cloak of anonymity." *United States v. Stoterau*, 524 F.3d 988, 1012 (9th Cir. 2008) (citation and internal quotation marks omitted). Plaintiff has not moved for permission to proceed under a pseudonym, and there is no basis for him to do so. *See, e.g.*, *A.G. v. Unum Life Ins. Co. of Am.*, 2018 WL 903463, at *2–5 (D. Or. Feb. 14, 2018) (ordering plaintiff to file amended complaint with his full name even where defendant was aware of plaintiff's identity); *contrast Does I thru XXIII*, 214 F.3d at 1063, 1068–73 (holding that exceptionally vulnerable plaintiffs could proceed anonymously where they "demonstrate[d] … an objectively reasonable fear of extraordinarily severe retaliation" through detailed declarations).

Plaintiff makes broad, potentially reputation-damaging (albeit meritless) allegations that PAT and its representatives engaged in unlawful discrimination against him. "The people have a right to know who is using their courts" to assert those serious allegations. *Stoterau*, 524 F.3d at 1013 (citation omitted). There is no basis to permit Plaintiff to proceed anonymously here when

individual plaintiffs routinely must identify themselves in analogous actions. The First Amended Complaint should be dismissed in its entirety on this threshold ground alone, with leave for Plaintiff to file a second amended complaint identifying himself if he wishes to pursue this action.

## II.     *Knight* and *Mentele* foreclose Plaintiff's First Amendment challenge to exclusive-representative collective bargaining (Count I).

Plaintiff's First Amendment free association claim (Count I) should also be dismissed with prejudice for failure to state a claim. Plaintiff alleges in Count I that PAT's designation as the exclusive representative of his bargaining unit violates his First Amendment associational rights. FAC ¶123. That claim is foreclosed by Supreme Court and Ninth Circuit precedent. The Supreme Court concluded forty years ago in *Knight*, 465 U.S. 271, that an exclusive-representation system does not violate the First Amendment rights of public employees. "Following *Knight*, every circuit court to address the constitutionality of exclusive bargaining arrangements [including the Ninth Circuit] … has concluded that these provisions do not violate the First Amendment." *Mentele*, 916 F.3d at 787–89; *see Goldstein*, 96 F.4th at 349 ("The Supreme Court's decision in *Knight* forecloses Plaintiffs' claims challenging [the union] as their exclusive representative."); *supra* at 3 n.1 (collecting court of appeal decisions that reach the same conclusion).

### A.  Count I is foreclosed by *Knight*.

In *Knight*, the Supreme Court addressed a First Amendment challenge by college instructors to a Minnesota statute that (like the Oregon statute here) "establishe[d] a procedure, based on majority support within a unit, for the designation of an exclusive bargaining agent for that unit." 465 U.S. at 274. The Minnesota statute required public employers (1) to negotiate with such an exclusive representative over terms and conditions of employment (known as a

"meet and negotiate" requirement), and also (2) to confer with the exclusive representative about subjects outside the scope of mandatory negotiations (known as a "meet and confer" requirement). *Id.* Under the statute, "the employer [could] neither 'meet and negotiate' nor 'meet and confer' with any members of that bargaining unit except through their exclusive representative." *Id.* at 275.

The statute did not prevent members of the bargaining unit from submitting advice to their employer or from speaking publicly on matters related to their employment. *Id.* Although the state university board "consider[ed] the [union's] views … to be the faculty's official collective position," the board also recognized "that not every instructor agrees with the official faculty view on every policy question." *Id.* at 276.

The Supreme Court summarily affirmed the district court's dismissal of the instructors' constitutional challenge to the "meet and negotiate" requirement. *See id.* at 279 (citing *Knight v. Minnesota Cmty. Coll. Fac. Ass'n*, 460 U.S. 1048 (1983)). The Court then gave plenary consideration to the instructors' challenge to the "meet and confer" requirement, concluding that exclusive representation was constitutional in that context as well. *Id.* at 288.

In Part II.A of its opinion, the *Knight* Court first considered and rejected the instructors' claim that their right to free speech was impaired because, unlike the exclusive representative, they had no "government audience for their views." *Id.* at 280–88.

The Court then turned, in Part II.B of the opinion, to the broader issues of speech and association, concluding that "[t]he State ha[d] *in no way* restrained [the instructors'] freedom to speak on any education-related issue or their freedom to associate or not to associate with whom they please, *including the exclusive representative*." *Id.* at 288 (emphases added); *see id.* at 290 n.12 (finding that nonmembers' "speech and associational freedom have been *wholly*

*unimpaired*") (emphasis added); *id.* at 291 (stating that instructors were "[u]nable to demonstrate an infringement of *any First Amendment right*") (emphasis added).

The Court pointed out that the instructors were "not required to become members" of the union and were "free to form whatever advocacy groups they like." *Id.* at 289. The Court reasoned that instructors' "associational freedom ha[d] not been impaired" because "the pressure [they may have felt to join the exclusive representative was] no different from the pressure to join a majority party that persons in the minority always feel." *Id.* at 289–90. *Knight* addressed a collective bargaining system materially indistinguishable from the one at issue here, so *Knight* forecloses Plaintiff's First Amendment claim.

## B. As recognized in *Mentele*, *Janus* does not disturb *Knight*.

The Supreme Court's decision in *Janus* did not disturb *Knight*'s holding. *Janus* held only that public employees who are not union members cannot be required to pay fees to an exclusive representative for collective bargaining representation, because "compelled subsidization of private speech seriously impinges on First Amendment rights." 585 U.S. at 894. The Court emphasized that it was "not disputed that the State may require that a union serve as exclusive bargaining agent for its employees." *Id.* at 895–96, 916.

The *Janus* Court stated that it was "not in any way questioning the foundations of modern labor law," but was instead "simply draw[ing] the line at allowing the government to … require all employees to support the union irrespective of whether they share its views." *Id.* at 904 n.7, 916. The Court explained that its decision would not require an "extensive legislative response," and that the States could "keep their labor-relations systems exactly as they are—only they cannot force nonmembers to subsidize public-sector unions." *Id.* at 928 n.27; *see also id.* at 896, 928 n.27 (States may "follow the model of the federal government," in which "a union chosen by

majority vote is designated as the exclusive representative of all the employees" but there are no agency fees).

Thus, the Ninth Circuit held in *Mentele*—a post-*Janus* decision—that *Knight* forecloses First Amendment challenges to exclusive-representative bargaining. *Mentele,* 916 F.3d at 789; *see also Boardman v. Inslee*, 978 F.3d 1092, 1115 (9th Cir. 2020) ("In light of *Knight* and *Mentele*," exclusive-representative bargaining "raises no First Amendment concerns."). After *Mentele*, district courts in this circuit have unanimously and repeatedly rejected, as foreclosed by controlling precedent, challenges to exclusive-representative bargaining that are indistinguishable from Plaintiff's challenge here. *See Krieger v. Banks*, No. 2:24-cv-08589-SVW-SK, Doc. #38 at 4–8 (C.D. Cal. July 21, 2025) (Order Granting Motions to Dismiss); *Tarbah v. Gonzalez*, No. 5:25-cv-00882-KK-SP, Doc. #67 at 8 (C.D. Cal. July 18, 2025) (Order Denying Preliminary Injunction); *Babb v. Cal. Tchrs. Ass'n*, 378 F.Supp.3d 857, 888 (C.D. Cal. 2019), *aff'd sub nom. Martin v. Cal. Tchrs. Ass'n*, 2022 WL 256360 (9th Cir. Jan. 26, 2022); *Sweet v. Cal. Ass'n of Psychiatric Technicians*, 2019 WL 4054105, at *3–4 (E.D. Cal. Aug. 28, 2019); *Grossman v. Hawaii Gov't Emps. Ass'n/AFSCME Loc. 152*, 382 F.Supp.3d 1088, 1091–92 (D. Haw. 2019); *O'Callaghan v. Regents of Univ. of Cal.*, 2019 WL 6330686, at *6–7 (C.D. Cal. Sept. 30, 2019), *aff'd sub nom. O'Callaghan v. Napolitano*, 2022 WL 1262135 (9th Cir. Apr. 28, 2022); *see also Crockett v. NEA-Alaska*, 367 F.Supp.3d 996, 1009 (D. Alaska 2019). *Mentele* requires the same outcome here.

### C.  Count I would fail even if *Knight* and *Mentele* did not directly control.

The unanimous judicial authority rejecting First Amendment challenges to exclusive-representative bargaining is consistent with the Supreme Court's broader jurisprudence about compelled expressive association.

Compelled expressive association may exist when the government requires individuals to personally communicate an unwanted message or prevents them from communicating a desired message. *See, e.g.*, *Moody v. NetChoice, LLC*, 144 S. Ct. 2383, 2393–94 (2024) (law prohibited social-media platforms from "engag[ing] in content moderation—to filter, prioritize, and label … messages" posted on their platforms); *Boy Scouts of Am. v. Dale*, 530 U.S. 640, 653–56 (2000) (forcing organization to accept a "gay rights activist" as a scoutmaster would "significantly affect [organization's] expression"); *Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp. of Boston*, 515 U.S. 557, 581 (1995) (parade organizers were required through court order including unwanted participants "to alter the[ir] message").

By contrast, Plaintiff and other bargaining unit workers "are not compelled to act as public bearers of an ideological message they disagree with," nor "are they under any compulsion … to modify the expressive message of any public conduct they may choose to engage in." *D'Agostino*, 812 F.3d at 244. Plaintiff does not need to join the Union or do or say anything to endorse its positions. Nor is he precluded from speaking and petitioning about any issues. Plaintiff is free to dissociate from the Union by refusing to join it and by denouncing the Union and its members—as he has done.

Plaintiff alleges that observers "would associate Plaintiff with PAT's speech because he is a known member of the bargaining unit represented by PAT," and "[t]here is no way for Plaintiff to dispel the impression that he supports PAT and the positions that PAT takes." FAC ¶¶124, 127. Those conclusory allegations are directly contrary to the controlling legal regime, under which membership in PAT is entirely voluntary. *See supra* at 4-6; *Iqbal*, 556 U.S. at 678 (court need not take conclusory allegations as true).

Page 13  Defendant Portland Association of Teachers' Motion to Dismiss

First, Plaintiff's allegation that he is a "member" of the bargaining unit is just semantics. Being a bargaining unit member just means being an employee in one of the job classifications whose terms and conditions of employment are set through collective bargaining with the Union. Like being a "member of the public," it does not imply any action by the individual to affiliate with an expressive organization. "Not all interactions with other people that 'might be described as "associational" in common parlance … involve the sort of expressive association that the First Amendment has been held to protect.'" *Crowe v. Oregon State Bar*, 112 F.4th 1218, 1234 (9th Cir. 2024) (citation omitted); *see also id.* at 1233 (favorably citing *Mentele*).[3]

Second, Plaintiff alleges that he is "associate[d]" with PAT's speech about political and curricular matters. FAC ¶¶38-56, 62. But under Oregon law, PAT has been certified as an exclusive representative only "for the purposes of collective bargaining with respect to employment relations," ORS 243.666(1), and "employment relations" expressly does not include "school curriculum" or any "subjects that have an insubstantial or de minimis effect on public employee wages, hours, and other terms and conditions of employment," ORS 243.650(7)(d)-(e). Thus, even under Plaintiff's own theory, nothing in state law "associates" him with PAT's speech about matters outside the scope of PAT's role as exclusive representative for purposes of collective bargaining.

Third, and in any event, even with respect to collective bargaining, an "exclusive representative" in a public employee collective bargaining system like the one established by the

---

[3] *Crowe* involved a law that required individuals (attorneys) to become *members* of the defendant organization (bar association) and pay it dues, and involved a specific communication from the defendant that made it appear that all its *members* supported the organization's views. 112 F.4th at 1225, 1233–34 (reasoning that when "a plaintiff challenges a requirement that *he join an organization*, the plaintiff can establish an infringement on his freedom of association by showing that *his membership in the organization* impairs his own expression") (emphases added). Plaintiff here is not a member of the Union and does not have to provide any financial support to the Union.

PECBA does not act as any individual employee's "*personal* representative." *Reisman*, 939 F.3d at 412–13 (emphasis added). Rather, "a union, once it becomes the exclusive bargaining agent for a bargaining unit, must represent the *unit* as an entity." *Id.* (emphasis in original); *see also Peltz-Steele*, 60 F.4th at 5 (same reasoning). As Justice Souter has explained while sitting by designation on the First Circuit, "the relationship is one that is clearly imposed by law, not by any choice on a dissenter's part, and when an exclusive bargaining agent is selected by majority choice, it is readily understood that employees in the minority, union or not, will probably disagree with some positions taken by the agent answerable to the majority." *D'Agostino*, 812 F.3d at 244; *see also Knight*, 465 U.S. at 276 ("The State Board considers the views expressed … to be the faculty's official collective position. It recognizes, however, that not every instructor agrees with the official faculty view ….").

Indeed, different viewpoints exist within *every* democratic system, and courts recognize that reasonable people similarly understand that not every parent, alumnus, or constituent shares the views of a parent-teacher association, alumni organization, or elected representative. *See, e.g.*, *Bd. of Educ. of Westside Cmty. Sch. v. Mergens By & Through Mergens*, 496 U.S. 226, 250 (1990) (even high school students understand that school does not endorse speech of school-recognized student groups). Plaintiff does not allege any facts to differentiate Oregon's system of exclusive representation from the systems upheld in *Knight* and *Mentele*, so his conclusory allegation that exclusive representation bargaining impermissibly "associates" him with a union in the public eye cannot escape controlling precedent that exclusive representation bargaining is not an impermissible burden on First Amendment expressive association.

### D. Plaintiff's allegations about his personal views do not change the analysis.

Plaintiff alleges that he strongly disagrees with PAT's alleged views about Israel and Palestine. FAC ¶¶36, 123. Plaintiff is entitled to his views about the Union, but Plaintiff's views—even if strongly and sincerely held—do not create a First Amendment violation that does not otherwise exist.

Courts have long recognized that unions sometimes express views with which bargaining unit employees may strongly disagree. *See, e.g.*, *Janus*, 585 U.S. at 913–14 ("Unions can … speak out in collective bargaining on controversial subjects such as climate change, the Confederacy, sexual orientation and gender identity, evolution, and minority religions.") (footnotes omitted); *Abood v. Detroit Bd. of Ed.*, 431 U.S. 209, 222 (1977) (an employee's "moral or religious views about the desirability of abortion may not square with the union's policy in negotiating a medical benefits plan"), *overruled on other grounds by Janus*, 585 U.S. 878. Such disagreements do not create a First Amendment violation where those employees are not required to join the union and are free to denounce the union, as Plaintiff has already done. *See, e.g.*, *Goldstein v. Prof. Staff Cong./CUNY*, 643 F.Supp.3d 431, 443–44 (S.D.N.Y. 2022), *aff'd*, 96 F.4th 345 (2d Cir. 2024), *cert. denied*, 145 S. Ct. 1044 (2025) (dismissing materially identical challenge to exclusive-representative bargaining system by plaintiffs who alleged they believed union was "anti-Semitic").

In *Rumsfeld v. Forum for Academic & Institutional Rights, Inc.*, 547 U.S. 47 (2006), for example, law schools argued that they were forced to associate with a military recruitment policy that they believed to be homophobic, in contravention of their deeply held beliefs, but the Supreme Court recognized that under basic First Amendment principles, there was no compelled

expressive association, "regardless of how repugnant the law school considers the recruiter's message." *Id.* at 70. The same is true here.

Moreover, the people that Plaintiff alleges hold odious views about Israel are Plaintiff's own co-workers. Yet Plaintiff has no First Amendment right to require the District to establish separate school sites or academic departments so Plaintiff will never interact with colleagues who have different views. Like the plaintiffs in *Rumsfeld*, Plaintiff "attempt[s] to stretch … First Amendment doctrines well beyond the sort of activities these doctrines protect." 547 U.S. at 70.

Finally, to the extent that Plaintiff objects to PAT's *conduct* directed toward him (and not just to the existence of the statutory exclusive-representative collective bargaining system or the fact that PAT engages in its own protected speech), federal and state law make it illegal for labor organizations to discriminate on the basis of religion or national origin, and any such discriminatory conduct would be actionable under those laws. *See, e.g.*, Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e-2(c); Oregon Equality Act, ORS 659A.030(c) (prohibiting discrimination by "labor organization"). PAT also has a legal duty of fair representation when it acts as exclusive representative, and that duty precludes discrimination. *See Chan v. Leach*, Case No. UP-13-05, 21 PECBR 563, 575, 2006 WL 5668388, at *8 (Or. ERB Dec. 22, 2006). Plaintiff alleges in Counts V and VII state and federal claims contending that the Union "discriminated" against him through the Union's actions. FAC ¶¶150-157, 185-198. PAT vehemently denies those allegations, but the fact that Plaintiff asserts those claims reinforces the point that legal remedies exist to prevent discriminatory conduct.

For all these reasons, this Court should dismiss Count I.

### III.    Exclusive-representative collective bargaining does not violate the First Amendment Free Exercise clause (Count II).

Plaintiff's Count II claim that PAT's status as exclusive representative creates an "association" with him that "burdens Plaintiff's free exercise of his religion" under the First Amendment (FAC ¶¶128-134) should also be dismissed with prejudice, for the same reasons as Count I.

#### A.  Count II is foreclosed by *Knight* and *Mentele*.

For all the reasons previously explained, Oregon's system of exclusive-representative bargaining does not cause "an infringement of *any* First Amendment right." *Knight*, 456 U.S. at 291 (emphasis added); *see Mentele*, 916 F.3d at 787–89 (under *Knight*, state "authorization of an exclusive bargaining representative does not infringe [employee's] First Amendment rights"). Plaintiff's Count II claim is substantively identical to Count I—he alleges that he is being forced into an "association" with PAT because, he contends, the mere fact of being a worker within a bargaining unit that is represented by the Union for purposes of collective bargaining forces him "to tacitly affirm beliefs" expressed by the Union. FAC ¶129. The argument is directly foreclosed by precedent. *Supra* Part I.A-B. The exclusive-representative collective bargaining system does not compel Plaintiff to affirm anything.

Plaintiff's assertion that his disagreement with the Union stems from his religious beliefs does not change the analysis. If merely being included as an employee in a bargaining unit represented by a union for purposes of collective bargaining *were* an infringement on bargaining unit workers' First Amendment rights, the same infringement would exist regardless of whether a worker's opposition to the union was based on his religious beliefs. *See West Virginia State Bd. of Educ. v. Barnette*, 319 U.S. 624, 634 (1943) ("Nor does the issue [of compelled expression] as we see it turn on one's possession of particular religious views or the sincerity with which they

are held."). Where, as here, there is no compelled expressive association, whether Plaintiff's disagreement with the Union is based on his religious beliefs is irrelevant.

### B. Count II would fail even if *Knight* and *Mentele* did not directly control.

That *Knight* and *Mentele* foreclose Count II is consistent with the Supreme Court's broader Free Exercise jurisprudence. "'The Free Exercise clause affords an individual protection from certain forms of governmental compulsion; it does not afford an individual a right to dictate the conduct of the Government's internal procedures.'" *Apache Stronghold v. United States*, 101 F.4th 1036, 1051 (9th Cir. 2024) (en banc) (quoting *Lyng v. Northwest Indian Cemetery Protective Ass'n*, 485 U.S. 439, 448 (1988)). PAT's status as an exclusive representative for purposes of collective bargaining does not compel Plaintiff to do or say anything. Rather, the PECBA requires the *District* to bargain with PAT regarding "employment relations" to set terms and conditions of employment for the District's employees. ORS 243.666(1), 243.672(1)(e). It is well-established that "[t]he Free Exercise Clause simply cannot be understood to require the Government to conduct its own internal affairs in ways that comport with the religious beliefs of particular citizens." *Bowen v. Roy*, 476 U.S. 693, 699 (1986); *accord Lyng*, 495 U.S. at 448; *Apache Stronghold*, 101 F.4th at 1055. The Free Exercise clause does not confer on Plaintiff a constitutional right to demand that his employer set terms of employment for its employees without collective bargaining, or through any other particular method. That is dispositive.

Moreover, even if Oregon's recognition of PAT as an exclusive representative for purposes of collective bargaining did regulate Plaintiff's conduct (which it does not), the "'right to freely exercise one's religion … does not relieve an individual of the obligation to comply with a 'valid and neutral law of general applicability on the ground that the law proscribes (or prescribes) conduct that his [or her] religion prescribes (or proscribes).'" *Parents for Priv. v.*

*Barr*, 949 F.3d 1210, 1233 (9th Cir. 2020) (quoting *Emp't Div., Dep't of Human Res. of Or. v. Smith*, 494 U.S. 872, 879 (1990), *superseded by statute in other contexts*) (some quotation marks and citations omitted)). "'[L]aws incidentally burdening religion are ordinarily not subject to strict scrutiny under the Free Exercise Clause so long as they are neutral and generally applicable,' and will instead be subject to rational basis review." *Olympus Spa v. Armstrong*, 138 F.4th 1204, 1218 (9th Cir. 2025) (quoting *Fulton v. City of Philadelphia, Pa.*, 593 U.S. 522, 533 (2021)). "In assessing neutrality and general applicability, courts evaluate both 'the text of the challenged law as well as the effect … in its real operation.'" *Parents for Priv.*, 949 F.3d at 1234 (quoting *Stormans, Inc. v. Wiesman*, 794 F.3d 1064, 1076 (9th Cir. 2015)). The "two tests for whether a law is neutral and generally applicable focus on whether a law specifically targets or singles out religion." *Id.* at 1234–35.

The PECBA's exclusive-representative collective bargaining provision is neutral and generally applicable. First, the law is neutral because it does not "infringe upon or restrict practices *because* of their religious motivation." *Id.* at 1235 (emphasis in original, citation omitted). Plaintiff does not—and cannot—allege that the state's collective bargaining statutory framework was "adopted with the object of suppressing the exercise of religion." *Id.*

Second, the law is generally applicable because it does not "treat[] religious observers unequally." *Id.* The law treats all individuals who choose not to join a collective bargaining representative the same, regardless of the motivation for that choice. It does not "selectively impose[] certain conditions or restrictions only on religious conduct." *Id.* at 1236; *see also Olympus Spa*, at 138 F.4th at1219 (law generally applicable where "it imposes the same requirements on religious and non-religious … alike").

Oregon's exclusive-representative collective bargaining law thus "must be upheld if it is rationally related to a legitimate governmental purpose." *Parents for Priv.*, 949 F.3d at 1238. It easily satisfies that minimal standard. Indeed, the Ninth Circuit has held that exclusive-representative collective bargaining in public employment would survive *exacting* scrutiny because it "serves the compelling—and enduring—state interest of labor peace." *Mentele*, 916 F.3d at 790–91. *A fortiori*, such laws are rationally related to a legitimate government purpose.

Oregon's Legislature recognized that the state's public employee exclusive representative collective bargaining structure promotes "harmonious and cooperative relationships between government and its employees," and that "[e]xperience in private and public employment has also proved" that such an arrangement "safeguards employees and the public from injury, impairment and interruptions of necessary services, and removes certain recognized sources of strife and unrest, by encouraging practices fundamental to the peaceful adjustment of disputes arising out of differences as to wages, hours, terms and other working conditions, and by establishing greater equality of bargaining power between public employers and public employees." ORS 243.656. There can be no dispute that Oregon's statutory scheme—modeled on the same approach to collective bargaining adopted by Congress and at least 36 other states, *supra* at 6 & n.2, is rationally related to these legitimate government interests.

The Court thus should dismiss Count II.

## IV.     Plaintiffs' Title VII claim should be dismissed as untimely (Count VII).

In his First Amended Complaint, Plaintiff added a claim against PAT under Title VII. FAC ¶¶184-198. That claim should be dismissed as time-barred, because Plaintiff's allegations establish that he did not file a charge with the EEOC within 180 days of any alleged discriminatory act by PAT, as required by 42 U.S.C. §2000e-5(e)(1).

"To maintain an action under Title VII …, a plaintiff must file a timely charge of discrimination with the EEOC." *Nuss*, 634 F.2d at 1236; *see Morgan*, 536 U.S. at 120 ("[F]iling a timely charge is a prerequisite to having an actionable claim."). "A charge must 'be filed within one hundred and eighty days after the alleged unlawful employment practice occurred,' unless proceedings are initially instituted with an appropriate state or local agency, in which case the 'charge … (must) be filed … within three hundred days after the alleged unlawful employment practice occurred ….'" *Nuss*, 634 F.2d at 1236 (quoting 42 U.S.C. §2000e-5(e)(1)). Plaintiff does not allege that he filed an administrative charge with a state or local agency. *See* FAC ¶198. "Because [Plaintiff] filed only with the EEOC and not with any state agency, the 180-day limitation applies to his case." *Sosa v. Hiraoka*, 920 F.2d 1451, 1455 n.1 (9th Cir. 1990).

Plaintiff alleges in Count VII that PAT violated Title VII by "caus[ing] Plaintiff's work environment to become hostile." FAC ¶189. For a charge alleging a hostile work environment claim to be timely, "at least one act" by the defendant constituting a "part of the same unlawful employment practice" must "fall[] within the [180-day] time period." *Morgan*, 536 U.S. at 122; *see, e.g.*, *St. Louis v. New York City Health & Hosp. Corp.*, 682 F.Supp.2d 216, 228 (E.D.N.Y. 2010) (Title VII sexual harassment claim time barred). "Plaintiff's FAC does not contain any allegations of hostile conduct [by PAT] during the statutory period," so the claim must be dismissed. *Stevens v. Cnty. of San Mateo*, 2005 WL 350965, at *2 (N.D. Cal. Feb. 11, 2005) (granting motion to dismiss Title VII claim as untimely).

Plaintiff alleges that PAT caused a hostile work environment at his prior school site, FAC ¶¶23, 40, 43-50, 56, 73, 87, 90, 94-100, 188-193, but that he was transferred to a new school site at the end of the 2023-24 school year. *Id.* ¶113. The First Amended Complaint contains no allegation that PAT engaged in any discriminatory act after that transfer. Rather, the FAC alleges

only that Plaintiff "continues to suffer from the hostility he faced at his previous school." *Id.* ¶¶114-117. The 2023-24 school year ended at the latest in June 2024. *See* Portland Public Schools Board Policy 5.60.030-P (District's "standard year" is between July 1 and June 30).[4] Plaintiff alleges that he filed a charge with the EEOC on May 22, 2025 (after he filed the original complaint in this lawsuit, ECF 1), almost a year after he transferred school sites, and far more than 180 days after any alleged discriminatory act by PAT. FAC ¶198. The First Amended Complaint "does not allege any facts that would support any ground for equitable tolling" of the 180-day filing requirement. *Gums v. Oakland Unified Sch. Dist.*, 2003 WL 716240, at *4 (N.D. Cal. Feb. 24, 2003) (hostile environment claims time barred); *see Radovich v. Placer Cnty. Sheriff's Off.*, 2019 WL 3425998, at *2 (E.D. Cal. July 30, 2019) (claim time barred where alleged facts did not support equitable tolling).

The Court thus should dismiss Count VII as untimely. *See Kato v. Ishihara*, 239 F.Supp.2d 359, 364 (S.D.N.Y. 2002) (granting motion to dismiss where complaint alleged plaintiff transferred away from location of alleged hostile environment more than 300 days before filing charge), *aff'd*, 360 F.3d 106 (2d Cir. 2004).

## CONCLUSION

For all the foregoing reasons, the Court should dismiss the First Amended Complaint in its entirety for failure to identify the plaintiff. The Court should also dismiss Counts I, II, and VII with prejudice for failure to state a claim.

DATED:  August 19, 2025                    Respectfully submitted,

                                  By: *s/  Matthew J. Murray*
                                      Matthew J. Murray

---

[4] Available at https://www.pps.net/cms/lib/OR01913224/Centricity/Domain/4814/5.60.030-P.pdf.

SCOTT A. KRONLAND
MATTHEW J. MURRAY
Altshuler Berzon LLP

KAREN O'KASEY
Hart Wagner LLP

*Attorneys for Defendant*
*Portland Association of Teachers*

**CERTIFICATE OF COMPLIANCE**

This brief complies with the applicable word-count limitation under LR 7-2(b) because it contains 7,150 words, including headings, footnotes, and quotations, but excluding the caption, table of contents, table of cases and authorities, signature block, exhibits, and any certificates of counsel.

DATED: August 19, 2025                    By: _s/  Matthew J. Murray_
                                                 Matthew J. Murray