MISHA ISAAK, OSB No. 086430
misha.isaak@stoel.com
MEGAN S. BRADFORD, OSB No. 222711
megan.bradford@stoel.com
DOMINIK K. MACKINNON, OSB No. 231723
dominik.mackinnon@stoel.com
STOEL RIVES LLP
760 SW Ninth Avenue, Suite 3000
Portland, OR 97205
Telephone: 503.224.3380
Facsimile: 503.220.2480

*Attorneys for Defendants Portland Public Schools,
Dr. Kimberlee Armstrong, Edward Wang, Michelle
DePass, Christy Splitt, Virginia La Forte, Stephanie
Engelsman, Patte Sullivan, and Rashelle Chase-
Miller*

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| JOHN DOE, an individual, | |
| Plaintiff, | Case No.: 3:25-cv-00854-AR |
| v. | |
| PORTLAND ASSOCIATION OF TEACHERS, a labor organization; PORTLAND PUBLIC SCHOOLS; DR. KIMBERLEE ARMSTRONG, in her official capacity as the superintendent of Portland Public Schools; EDWARD WANG, in his official capacity as the chairman of the Portland Public Schools Board of Education; MICHELLE DEPASS, in her official capacity as the vice-chair of the Portland Public Schools Board of Education; CHRISTY SPLITT, in her official capacity as a member of the Portland Public Schools Board of Education; | **MOTION TO DISMISS**<br><br>**BY DEFENDANT PORTLAND PUBLIC SCHOOLS**<br><br>Pursuant to Fed. R. Civ. P. 12(b)(6)<br><br>(ORAL ARGUMENT REQUESTED) |

**DEFENDANT PORTLAND PUBLIC SCHOOLS' MOTION TO DISMISS**
129518210.28 0035426-00024

VIRGINIA LA FORTE, in her official capacity as a member of the Portland Public Schools Board of Education; STEPHANIE ENGELSMAN, in her official capacity as a member of the Portland Public Schools Board of Education; PATTE SULLIVAN, in her official capacity as a member of the Portland Public Schools Board of Education; RASHELLE CHASE-MILLER, in her official capacity as a member of the Portland Public Schools Board of Education; the OREGON EMPLOYMENT RELATIONS BOARD; ADAM RHYNARD, in his official capacity as Chair of the Employment Relations Board; SHIRIN KHOSRAVI, in her official capacity as a member of the Employment Relations Board; BENJAMIN O'GLASSER, in his official capacity as a member of the Employment Relations Board,

        Defendants.

**TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES...................................................................................................iii

L.R. 7-1(**a**) CERTIFICATION ............................................................................................. 1

MOTION........................................................................................................................... 1

MEMORANDUM OF LAW ............................................................................................. 1

I.  INTRODUCTION ................................................................................................ 1

II.  FACTUAL BACKGROUND .............................................................................. 2

III.  LEGAL STANDARD .......................................................................................... 4

IV.  ARGUMENT ....................................................................................................... 5

  A.  Claims I and II: Plaintiff's First Amendment Freedom of Association and
      Free Exercise Claims Fail to State a Plausible Claim for Relief. ......................... 5

      1.  Plaintiff's Challenge to Exclusive Representation Is Foreclosed by
          Binding Precedent. ...................................................................................... 6

      2.  Plaintiff Does Not Allege Facts to Establish Liability of PPS................... 7

  B.  Claim III: Plaintiff's First Amendment Freedom of Speech Claim Fails to
      State a Plausible Claim for Relief......................................................................... 10

  C.  Claim IV: Plaintiff's First Amendment Establishment Clause Claim Fails
      to State a Plausible Claim for Relief..................................................................... 14

      1.  The Complaint's Curriculum-Based Allegations Do Not State a
          Plausible Claim for Relief......................................................................... 16

      2.  The Complaint's Display-Based Allegations Do Not State a
          Plausible Claim for Relief......................................................................... 18

      3.  The Complaint's Prayer-Based Allegations Do Not State a
          Plausible Claim for Relief......................................................................... 21

  D.  Claim V: Plaintiff Fails to Establish a Prima Facie Claim of a Hostile
      Work Environment Under ORS 659A.030............................................................ 22

      1.  Plaintiff's Allegations Lack the Necessary Factual Detail to
          Establish That the Conduct in Question Was Sufficiently Severe or
          Pervasive. .................................................................................................. 23

**TABLE OF CONTENTS**
(continued)

**Page**

2.    Even If Considered Sufficiently Detailed, Plaintiff's Allegations Do Not Constitute the Type of Severe and Pervasive Conduct Necessary to Give Rise to a Hostile Work Environment Claim. .............. 25

E.    Claim VI: Plaintiff's Title VII Claim Should Be Dismissed with Prejudice. ....... 30

1.    Plaintiff's Title VII Claim Is Time Barred. ............................................. 30

2.    Plaintiff's Title VII Claim Should Be Dismissed Because Plaintiff Failed to Exhaust Administrative Remedies. ........................................... 31

3.    Plaintiff's Title VII Claim Should Be Dismissed for Failure to State a Plausible Claim. ............................................................................. 33

V.    CONCLUSION ................................................................................................... 35

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*American Legion v. American Humanist Ass'n*,
588 U.S. 29 (2019)......................................................................................................20

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009).....................................................................................................4, 5

*Atwood v. PCC Structurals, Inc.*,
No. 14-00021, 2015 WL 3606323 (D. Or. June 4, 2015)..........................................33

*B.K.B. v. Maui Police Dep't*,
276 F.3d 1091 (9th Cir. 2002) ....................................................................................32

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007).....................................................................................................5, 8

*Bob Jones Univ. v. United States*,
461 U.S. 574 (1983).....................................................................................................15

*Brown v. Dignity Health*,
No. 18-03418, 2020 WL 3403088 (D. Ariz. June 19, 2020) .....................................34

*Brown v. Elec. Arts, Inc.*,
724 F.3d 1235 (9th Cir. 2013) .....................................................................................5

*Cath. Charities Bureau, Inc. v. Wisc. Labor & Indus. Rev. Comm'n*,
605 U.S. 238 (2025)......................................................................................................15

*Chin v. Fhuere*,
No. 24-01124, 2025 WL 2412053 (D. Or. Aug. 20, 2025) ........................................15

*Clink v. Or. Health & Sci. Univ.*,
9 F. Supp. 3d 1162 (D. Or. 2014) ...............................................................................31

*Cozzi v. County of Marin*,
787 F. Supp. 2d 1047 (N.D. Cal. 2011) ......................................................................34

*Daniels-Hall v. Nat'l Educ. Ass'n*,
629 F.3d 992 (9th Cir. 2010) ......................................................................................2

*Downs v. Los Angeles Sch. Dist.*,
228 F.3d 1003 (9th Cir. 2000) .......................................................................... passim

*E.E.O.C. v. Prospect Airport Servs., Inc.*,
621 F.3d 991 (9th Cir. 2010) ......................................................................................25

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

*Faragher v. City of Boca Raton*,
    524 U.S. 775 (1998)................................................................................................23, 25, 30

*Feldman v. Denver Pub. Schs.*,
    No. 23-02986, 2024 WL 4309365 (D. Colo. Aug. 1, 2024)...............................................11, 13

*Foothill Church v. Watanabe*,
    854 F. App'x 174 (9th Cir. 2021) ...................................................................................15, 17

*Foothills Christian Ministries v. Johnson*,
    __ F.4th __, 2025 WL 2351204 (9th Cir. 2025) .......................................................................15

*Freeman v. Oakland Unified Sch. Dist.*,
    291 F.3d 632 (9th Cir. 2002) ..............................................................................................32

*Hernandez v. Fed. Home Loan Mortg. Corp.*,
    663 F. App'x 518 (9th Cir. 2016) ..........................................................................................5

*Hilsenrath on Behalf of C.H. v. Sch. Dist. of Chathams*,
    698 F. Supp. 3d 752 (D.N.J. 2023) ..................................................................................17, 18

*Edwards ex rel. J.E. v. Yamhill County*,
    No. 19-00240, 2020 WL 6931316 (D. Or. Oct. 15, 2020), *report and
    recommendation adopted*, 2020 WL 6905316 (D. Or. Nov. 24, 2020)...................................34

*Janus v. American Federation of State, County, and Municipal Employees,
    Council 31*,
    585 U.S. 878 (2018)..............................................................................................................7

*Johnson v. Riverside Healthcare Sys., LP*,
    534 F.3d 1116 (9th Cir. 2008) ..............................................................................................4

*Kennedy v. Bremerton School District*,
    597 U.S. 507 (2022)...................................................................................................... passim

*Kopmar v. Ass'n of Legal Aid Att'ys*,
    No. 24-5158, 2025 WL 1939048 (S.D.N.Y. July 15, 2025)..................................................20

*Kumar v. Koester*,
    131 F.4th 746 (9th Cir. 2025) .............................................................................................15

*Laquaglia v. Rio Hotel & Casino, Inc.*,
    186 F.3d 1172 (9th Cir. 1999) ............................................................................................31

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

*Larson v. Valente*,
456 U.S. 228 (1982)................................................................................................15

*Los Angeles County v. Humphries*,
562 U.S. 29 (2010)..................................................................................................8

*Lynch v. Donnelly*,
465 U.S. 668 (1984)................................................................................................20

*Lyons v. England*,
307 F.3d 1092 (9th Cir. 2002) .........................................................................30, 31

*Manatt v. Bank of America, NA*,
339 F.3d 792 (9th Cir. 2003) ...........................................................................28, 29

*Markel v. Union of Orthodox Jewish Congregations of Am.*,
124 F.4th 796 (9th Cir. 2024) ................................................................................15

*Mentele v. Inslee*,
916 F.3d 783 (9th Cir. 2019) ...............................................................................6, 7

*Mills v. PeaceHealth*,
31 F. Supp. 3d 1099 (D. Or. 2014) ............................................................27, 28, 29

*Minnesota State Board for Community Colleges v. Knight*,
465 U.S. 271 (1984)..................................................................................................6

*Monell v. Department of Social Services of City of New York*,
436 U.S. 658 (1978)...............................................................................................8, 9

*Mooers v. St. Charles Health Sys., Inc.*,
No. 23-01294, 2024 WL 759632 (D. Or. Feb. 23, 2024) .......................................22

*Newman v. Point Park Univ.*,
No. 20-00204, 2022 WL 969601 (W.D. Pa. Mar. 31, 2022) ......................... passim

*Nichols v. Azteca Rest. Enters., Inc.*,
256 F.3d 864 (9th Cir. 2001) ..................................................................................22

*Ochs v. Eugene Emeralds Baseball Club, Inc.*,
774 F. App'x 1026 (9th Cir. 2019) .........................................................................22

*Peterson v. Hewlett-Packard Co.*,
358 F.3d 599 (9th Cir. 2004) ..................................................................................34

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

*Pleasant Grove City, Utah v. Summum*,
  555 U.S. 460 (2009)..............................................................................................10, 20

*Pullom v. U.S. Bakery*,
  477 F. Supp. 2d 1093 (D. Or. 2007) ............................................................................33

*Reynaga v. Roseburg Forest Prods.*,
  847 F.3d 678 (9th Cir. 2017) ......................................................................................22

*Salazar v. Buono*,
  559 U.S. 700 (2010)......................................................................................................20

*Say & Say v. Layman*,
  15 F.3d 1089, 1993 WL 539259 (9th Cir. 1993) (unpublished)................................34

*Settlegoode v. Portland Pub. Schs.*,
  371 F.3d 503 (9th Cir. 2004) ........................................................................................8

*Shurtleff v. City of Boston, Mass.*,
  596 U.S. 243 (2022)................................................................................................10, 13

*Surrell v. Cal. Water Serv. Co.*,
  518 F.3d 1097 (9th Cir. 2008) ................................................................................22, 23

*Town of Greece, N.Y. v. Galloway*,
  572 U.S. 565 (2014)................................................................................................19, 20

*Treaster v. Conestoga Wood Specialties, Corp.*,
  No. 09-00632, 2010 WL 2606479 (M.D. Pa. Apr. 29, 2010).....................................30

*Trusov v. Or. Health & Sci. Univ.*,
  No. 23-77, 2023 WL 6147251 (D. Or. Sept. 20, 2023) ................................................7

*Van Orden v. Perry*,
  545 U.S. 677 (2005)......................................................................................................20

*Vasquez v. County of Los Angeles*,
  349 F.3d 634 (9th Cir. Nov. 7, 2003)...........................................................................29

*Walker v. Portland Pub. Schs.*,
  No. 21-01349, 2022 WL 3335529 (D. Or. Aug. 12, 2022) ..........................................8

*Wilkins v. Herron*,
  No. 24-80, 2024 WL 5200177 (9th Cir. Dec. 23, 2024), *petition for certiorari
  pending*.........................................................................................................................8, 9

129518210.28 0035426-00024

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

*Williams v. Pa. Hum. Rels. Comm'n*,
No. 14-01290, 2016 WL 6834612 (W.D. Pa. Nov. 21, 2016)................................................30

*Yamaguchi v. U.S. Dep't of Air Force*,
109 F.3d 1475 (9th Cir. 1997) ........................................................................................7, 8

**Statutes**

42 U.S.C. § 1983.................................................................................................................6, 8, 9

Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-2000e-17............................ passim

42 U.S.C. § 2000e–5(b) .......................................................................................................32

42 U.S.C. § 2000e-5(b) .......................................................................................................31

42 U.S.C. § 2000e-5(e) .......................................................................................................31

42 U.S.C. § 2000e-5(f)(1) ...................................................................................................31

42 U.S.C. §2000e-(f)(1) ......................................................................................................31

42 U.S.C. § 20003e-(e)(1)...................................................................................................31

Title IX of the Education Amendments Act of 1972, 20 U.S.C. § 1681 *et seq.* ............................26

ORS 31.150.............................................................................................................................22

ORS 243.650(20) ....................................................................................................................7

ORS 243.666(1) ..................................................................................................................5, 9

ORS 659A.030........................................................................................................................ passim

ORS 659A.030(1)(a)...............................................................................................................22

ORS 659A.030(1)(b)...............................................................................................................22

Public Employee Collective Bargaining Act, ORS 243.650-243.806 ................................5, 6, 7, 9

RCW 41.56.028 ......................................................................................................................6

RCW 41.56.2006 ....................................................................................................................6

Page vii  **DEFENDANT PORTLAND PUBLIC SCHOOLS' MOTION TO DISMISS**

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

**Rules**

Fed. R. Civ. P. 8(a)(2)................................................................................................7, 8

Fed. R. Civ. P. 12(b)(6)......................................................................................1, 4, 7, 11

Local Rule 7-1(A)......................................................................................................1

**Constitutional Provisions**

U.S. Const. amend. I. ...................................................................................... passim

**L.R. 7-1(A) CERTIFICATION**

Pursuant to L.R. 7-1(a), counsel for defendant Portland Public Schools ("PPS") conferred in good faith with counsel for plaintiff John Doe ("Plaintiff") regarding this motion by telephone on September 12, 2025. The parties were unable to resolve the issues.

**MOTION**

Pursuant to Federal Rule of Civil Procedure 12(b)(6), PPS hereby moves the Court to dismiss the complaint against it. This motion is supported by the following memorandum of law. Oral argument is requested.

**MEMORANDUM OF LAW**

## I.    INTRODUCTION

This lawsuit concerns engagement with the ongoing Israel-Palestine conflict, an issue of public concern that evokes strong opinions and feelings, within the environment of a public secondary school. Plaintiff, a PPS teacher, has deeply held personal views about the geopolitical conflict, which, according to his First Amended Complaint (the "Complaint" or "FAC"), differ sharply from the views of many of his colleagues. Plaintiff takes issue with how this array of views was expressed at the school where he worked. Plaintiff now brings this lawsuit, alleging that (1) Oregon's public employee labor law violates his right to freedom of association and free exercise of religion; (2) PPS violated Plaintiff's freedom of speech by refusing to allow him to display an Israeli flag in its common areas, while allowing others to display Palestine flags in common areas; (3) PPS established a religion by permitting Plaintiff's colleagues' expression regarding this geopolitical conflict; and (4) PPS subjected Plaintiff to a hostile work environment and/or discriminated against Plaintiff by allowing his colleagues to express political views that he finds offensive.

Page 1 –   **DEFENDANT PORTLAND PUBLIC SCHOOLS' MOTION TO DISMISS**
129518210.28 0035426-00024

PPS's foremost commitment is to its students' education, and it does not generally take positions on matters of intense political, ideological, and/or religious controversy—including the current conflict in Israel and Gaza. At this stage, however, the parties and the Court must assume the truth of the allegations in the Complaint and evaluate their merit against controlling law. Considering these allegations, Plaintiff has not alleged facts sufficient to plausibly state that PPS violated his constitutional or statutory rights. At best, Plaintiff's factual allegations, if true, would establish that PPS allowed his colleagues to espouse views that he found deeply offensive and objectionable. Though PPS accepts as true Plaintiff's allegations (as it must at this stage), they do not support viable claims for relief. Lacking the necessary factual allegations, the Complaint relies on nonspecific and conclusory statements in an attempt to invalidate well-established law regarding public sector labor relations and municipality liability; misapply constitutional protections; and misuse employment discrimination statutes to suppress contrary viewpoints. For these reasons and others, PPS moves to dismiss Plaintiff's lawsuit against PPS in its entirety.[1]

## II.    FACTUAL BACKGROUND

The following summarizes the allegations of the Complaint, which, for purposes of this motion only, are assumed to be true. *See Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010). Plaintiff, who does not provide his name, identifies as a Jewish person, both in ethnicity and religion. FAC ¶¶ 4, 20. PPS employs Plaintiff as a high school math teacher. FAC ¶¶ 4, 23. PPS's teachers, including Plaintiff, are represented by the Portland Association of

---

[1] This motion is filed in tandem with PPS's Special Motion to Strike (moving to strike Plaintiff's ORS 659A.030 claim under Oregon anti-SLAPP law) and PPS's Motion to Dismiss Individual Portland Public School Employees and Board Members (seeking dismissal of the individually named defendants from the FAC).

Page 2 –   **DEFENDANT PORTLAND PUBLIC SCHOOLS' MOTION TO DISMISS**
129518210.28 0035426-00024

Teachers ("PAT") pursuant to Oregon's exclusive representation law. FAC ¶ 5. PPS and PAT are separate entities: PPS (a government entity) is Plaintiff's employer, whereas PAT (a non-governmental entity) is Plaintiff's exclusive representative for collective bargaining. FAC ¶¶ 5, 6. Plaintiff has chosen not to pay dues to PAT but, he alleges, is still "forced to associate" with it. FAC ¶ 26. Plaintiff would prefer to "have nothing to do with PAT." FAC ¶ 30.

This lawsuit is largely a reaction to the tragic events in Israel on October 7, 2023, and the resulting Israel-Palestine war that has ensued. The conflict has prompted a range of responses, including from PPS's teachers and students who have sought to express their views within Plaintiff's school. The expression at issue in this lawsuit occurred throughout the 2023-24 year, particularly in March through August 2024. *See, e.g.,* FAC ¶¶ 40, 42, 43, 87, 100, 108, 109.

PPS maintains balanced policies for displaying visual representations in its school, requiring an administrator's approval to hang an expressive item in common areas. FAC ¶ 61. Some PPS community members sought to display visual representations in solidarity with Palestinians—i.e., visual representations with a "political meaning" (FAC ¶ 66)—and, according to Plaintiff, PPS allowed for some of those displays in common spaces (FAC ¶¶ 63, 64). According to Plaintiff, others expressed their views by wearing symbolic clothing (FAC ¶ 73) or holding meetings with other interested participants to discuss the Israel-Palestine conflict (FAC ¶¶ 74, 77).

Plaintiff takes issue with the pro-Palestine political viewpoints expressed by his colleagues. FAC ¶¶ 65, 67. From Plaintiff's perspective, pro-Palestine symbols—such as a Palestinian flag—are necessarily anti-Israeli and support the "destruction of the State of Israel." *Id*. According to Plaintiff, seeing these pro-Palestine symbols caused him PTSD and threatened his mental well-being and safety. FAC ¶¶ 75, 79. Plaintiff allegedly reported his concerns to

school administrators, but the public displays he complained of did not violate school policy so there was nothing for PPS to remediate. FAC ¶¶ 68, 76. Plaintiff also allegedly requested to display an Israeli flag or "symbols supporting Israel's right to exist," but PPS denied his request. FAC ¶ 70. (Plaintiff does not allege where he sought to place these displays.)

Upset by the pro-Palestine displays, Plaintiff removed—without authorization—a print-out of a Palestinian flag that was displayed on a wall in the school library. FAC ¶ 79. Plaintiff's actions were reported and investigated by PPS. FAC ¶ 81.

As the 2023-24 school year went on, Plaintiff alleges he was subjected to additional unwelcome conduct in his school, including: PPS investigating him for removing more pro-Palestine flags (FAC ¶ 109); PPS refusing Plaintiff's request to investigate his colleagues related to the "hostility and messages" he faced (FAC ¶¶ 172, 176); and PPS "undermin[ing]" Plaintiff's advisory role for a geography club and preventing another club associated with Plaintiff from performing at a school assembly (FAC ¶¶ 84, 85).

Plaintiff requested a transfer to a different school, and PPS granted his request for the 2024-25 school year. FAC ¶ 113. He now works at the other school. *Id*.

## III.    LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a motion to dismiss shall be granted where the plaintiff fails to state a claim upon which relief can be granted. "A Rule 12(b)(6) dismissal may be based on either a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1121 (9th Cir. 2008) (internal quotation marks and citation omitted). A complaint must allege facts sufficient to state a claim for relief that is plausible on its face. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[A] plaintiff's obligation to provide the 'grounds' of his

'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level …. " *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted; second brackets in original).

While the Court must assume the truth of the Complaint's factual allegations and draw reasonable inferences in the light most favorable to Plaintiff, it should not make "'unreasonable inferences'" from the allegations or "'assume the truth of legal conclusions cast in the form of factual allegations.'" *Brown v. Elec. Arts, Inc.*, 724 F.3d 1235, 1248 (9th Cir. 2013) (citation omitted). Put differently, federal rules require a plaintiff to plead "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Dismissal with prejudice is appropriate when no amendment can cure a deficient complaint. *Hernandez v. Fed. Home Loan Mortg. Corp.*, 663 F. App'x 518, 520 (9th Cir. 2016).

## IV.    ARGUMENT

### A.    Claims I and II: Plaintiff's First Amendment Freedom of Association and Free Exercise Claims Fail to State a Plausible Claim for Relief.

Plaintiff's first two claims,[2] brought under the First Amendment's Freedom of Association and Free Exercise Clauses, challenge the constitutionality of Oregon's Public Employee Collective Bargaining Act ("PECBA"). PECBA mandates that labor organizations certified by Oregon's Employment Relations Board ("ERB") are the exclusive representative of a public employer, like PPS, for purposes of collective bargaining over the terms of employment. ORS 243.666(1). According to Plaintiff, PECBA unlawfully interferes with his freedom of association and free exercise of religion.

---

[2] The Complaint styles Plaintiff's claims as "Counts." This Motion will use the word "Claims" to refer to Counts I-VII of the Complaint.

Plaintiff's First Amendment Freedom of Association and Free Exercise claims fail for two reasons. First, the claims are foreclosed by binding precedent. And second, Plaintiff fails to allege facts that, if true, would establish liability against PPS, nor does Plaintiff allege a "policy or custom," as required for Section 1983 claims against a municipality, like Plaintiff brings here. For these reasons, and as detailed below, Claims I and II should be dismissed.

### 1.    Plaintiff's Challenge to Exclusive Representation Is Foreclosed by Binding Precedent.

In Claims I and II, Plaintiff asserts that PECBA is unconstitutional because it forces his association with expression he disagrees with and compels him to "tacitly affirm" beliefs that are counter to his religious convictions. FAC ¶¶ 123, 129. The Ninth Circuit, however, has upheld the constitutionality of public sector exclusive representation laws like the one Plaintiff challenges here. *Mentele v. Inslee*, 916 F.3d 783, 791 (9th Cir. 2019) (concluding "that Washington's exclusive bargaining arrangement with SEIU is constitutionally permissible").[3] The plaintiffs in *Mentele* made precisely the argument that Plaintiff makes here: "that their First Amendment right to expressive association was violated when Washington recognized SEIU as the exclusive bargaining representative for all childcare providers" by enacting an exclusive representation law, Wash. Rev. Code § 41.56.028 (recodified as Wash. Rev. Code § 41.56.2006). *Mentele,* 916 F.3d at 785. In a reasoned opinion, the Ninth Circuit thoroughly rejected that

---

[3] The *Mentele* plaintiffs alleged that their "right to expressive association was violated when Washington recognized SEIU as the exclusive bargaining representative." *Mentele*, 916 F.3d 783 at 785. Here, Plaintiff alleges PAT's "compelled" representation violates not only his freedom of association, but also the free exercise of his religion.  FAC ¶¶ 126, 129-130. But Plaintiff's free exercise claim fails for the same reasons as his freedom of association claim. *See Minnesota State Board for Community Colleges v. Knight*, 465 U.S. 271, 291 (1984) (holding that Minnesota's exclusive representation law did not infringe on "*any* First Amendment right"); *Mentele*, 916 F.3d at 789 (applying *Knight* and concluding that Washington's "authorization of an exclusive bargaining representative does not infringe [plaintiff's] First Amendment rights").

argument and interpreted the Supreme Court to have already settled the matter in *Janus v. American Federation of State, County, and Municipal Employees, Council 31*, 585 U.S. 878 (2018). *Mentele,* 916 F.3d at 791 ("*Janus* specifically acknowledged that exclusive representation is constitutionally permissible."). Thus, the Ninth Circuit and Supreme Court have foreclosed Plaintiff's stale attempt to invalidate longstanding labor law. Regardless of the theoretical merit (if any) of Plaintiff's argument, the Court must follow these binding precedents and reject Plaintiff's contention that Oregon's exclusive representation law is unconstitutional.

### 2.    Plaintiff Does Not Allege Facts to Establish Liability of PPS.

Even if Plaintiff's Free Association and Free Exercise claims were not foreclosed by binding Ninth Circuit and Supreme Court precedent (as they are), the Complaint would still fail to state a claim against PPS. To state the matter plainly: even if it were the case that PECBA is unconstitutional (which it is not), it remains unclear what exactly Plaintiff would have PPS do about it. PECBA is, after all, statutory law that PPS is legally obligated to comply with. *See* ORS 243.650(20) (defining "public employer" to include "school districts").

A complaint must provide "'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Yamaguchi v. U.S. Dep't of Air Force*, 109 F.3d 1475, 1481 (9th Cir. 1997) (quoting Fed. R. Civ. P. 8(a)(2)). To survive a motion to dismiss under Rule 12(b)(6) "in a case alleging the same claim against multiple defendants, there must be specific allegations explaining what each defendant allegedly did wrong, rather than general allegations asserted against them as a group." *Trusov v. Or. Health & Sci. Univ.*, No. 23-77, 2023 WL 6147251, at *2 (D. Or. Sept. 20, 2023).

Here, even though PPS is named as a Defendant in Claims I and II of the Complaint, PPS does not appear in any of Claim I and Claim II's supporting allegations. *See* FAC ¶¶ 121-134.

Rather, Plaintiff's supporting allegations appear to be made exclusively against PAT. *Id*. PPS cannot reasonably discern how the alleged facts give rise to a Free Association or Free Exercise claim against it because there are no specific allegations against PPS that connect with the Free Association or Free Exercise claims' general allegations. Put differently, Plaintiff makes no allegations "'respecting all the material elements necessary to sustain recovery under some viable legal theory'" with respect to PPS. *Twombly*, 550 U.S. at 562 (citation omitted). Nor does it provide PPS "'fair notice of what the plaintiff's claim is and the grounds upon which it rests.'" *Yamaguchi*, 109 F.3d at 1481 (quoting Fed. R. Civ. P. 8(a)(2)).

Nor could Plaintiff cure this pleading defect with amendment. Under *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978), a plaintiff suing a municipal entity under Section 1983 must "show that [his] injury was caused by a municipal policy or custom." *Los Angeles County v. Humphries*, 562 U.S. 29, 31 (2010). Where a "policy or custom" simply effectuates a course of action that is mandated by state law, it is not attributable to the municipality, and *Monell* is not satisfied. *Wilkins v. Herron*, No. 24-80, 2024 WL 5200177, at *2 (9th Cir. Dec. 23, 2024), *petition for certiorari pending*. Municipalities cannot be liable under Section 1983 if *Monell* is not satisfied. *Humphries*, 562 U.S. at 36.

PPS is a municipal entity. *See Settlegoode v. Portland Pub. Schs.*, 371 F.3d 503, 516 n.11 (9th Cir. 2004) (treating PPS as a municipality and applying *Monell*); *Walker v. Portland Pub. Schs.*, No. 21-01349, 2022 WL 3335529, at *5 (D. Or. Aug. 12, 2022) (same). To proceed against PPS, Plaintiff must show that his injury was caused by a PPS policy or custom under *Monell*. The only conceivable "policy" alleged with respect to Claims I and II is "Oregon's statutory requirement of exclusive representation." FAC ¶ 123 (referring to PECBA).

Page 8 –   **DEFENDANT PORTLAND PUBLIC SCHOOLS' MOTION TO DISMISS**
129518210.28 0035426-00024

Plaintiff's theory is that PECBA "compels him as a condition of his employment to associate with beliefs with which he disagrees and that violate his speech" (FAC ¶ 126), or "to tacitly affirm beliefs that violate his deeply held religious beliefs" (FAC ¶ 129). PECBA provides, in relevant part, that "a labor organization certified by the Employment Relations Board or recognized by the public employer is the exclusive representative of the employees of a public employer for the purposes of collective bargaining with respect to employment relations." ORS 243.666(1). Here, PAT was certified by the ERB, which, pursuant to state statute, mandates PPS to recognize PAT as the exclusive representative of its employees.

The Ninth Circuit dictates that in such a situation, *Monell* is not satisfied. In *Wilkins*, a public school teacher alleged Section 1983 claims against a school district after he was fired for refusing to comply with the school's COVID-19 vaccine and mask mandate. 2024 WL 5200177, at *1. Because these mandates were required under state law, the plaintiff's alleged injuries were not "traceable to any policy or custom of the School District, as opposed to state law." *Id*. at *2. The Ninth Circuit affirmed dismissal of the plaintiff's Section 1983 claims accordingly. *Id*.

Like the enforcement of COVID-19 precautions mandated by state law in *Wilkins*, Plaintiff's association with PAT as a member of the bargaining unit is also mandated by state law. These state law mandates do not constitute a "policy or custom" properly traceable to PPS (or broader municipal policy, for that matter). Therefore, Plaintiff's Free Association and Free Exercise claims do not allege a policy or custom sufficient to comply with the requirements of *Monell*, and these claims should be dismissed.

In short, Plaintiff's gripe is not with PPS. Although he wishes not to be represented by PAT, he complains of no PPS policy or custom that creates the circumstances he dislikes. And, regardless, those circumstances are not unlawful anyway. Plaintiff's claims against PPS arising

from PAT's exclusive representation of PPS teachers should be dismissed both because they are squarely foreclosed by binding precedent and because they state no claim for relief against PPS.

### B. Claim III: Plaintiff's First Amendment Freedom of Speech Claim Fails to State a Plausible Claim for Relief.

Plaintiff alleges that PPS engaged in viewpoint discrimination, in violation of the First Amendment's Free Speech Clause, by allowing pro-Palestine displays in its common areas but not pro-Israel displays. This claim fails because the First Amendment's prohibition against viewpoint discrimination does not apply to government speech—the alleged speech at issue here—and therefore Plaintiff's Free Speech claim must be dismissed.

The First Amendment's Free Speech Clause provides that "Congress shall make no law … abridging the freedom of speech." U.S. Const. amend. I. "The Free Speech Clause restricts government regulation of private speech; it does not regulate government speech." *Pleasant Grove City, Utah v. Summum*, 555 U.S. 460, 467 (2009). That is because the government is free "choose[] what to say and what not to say" when it does such things as formulating policies, implementing programs, or speaking for the community. *Shurtleff v. City of Boston, Mass.*, 596 U.S. 243, 251 (2022). Said differently, the government is not required to speak in a viewpoint neutral way. *Downs v. Los Angeles Sch. Dist.*, 228 F.3d 1003, 1011 (9th Cir. 2000).

Plaintiff alleges generally that PPS engaged in impermissible viewpoint discrimination because it "allows expression on one side of a controversial matter of public opinion, namely pro-Palestine, anti-Israel symbols and messages. But when the Plaintiff requested equal opportunity to promote pro-Israel symbols and messages, the school administrators refused permission." FAC ¶¶ 136-137. In support of his First Amendment viewpoint discrimination claim, Plaintiff alleges:

- "The District made Plaintiff's school a forum for one-sided, anti-Israel rhetoric."

Page 10 – **DEFENDANT PORTLAND PUBLIC SCHOOLS' MOTION TO DISMISS**
129518210.28 0035426-00024

FAC ¶ 60.

- "The school's policy is that every poster or expressive item displayed in the school's common areas, such as a hallway, has to receive approval from administration. Thus, any display in these areas was with the explicit or implicit permission of the school administration." FAC ¶ 61.

- "School administration allowed posting of Palestinian flags, print-out maps of Palestine that eliminate Israel, and other symbols and slogans throughout the school." FAC ¶ 63.

- "The displayed flags and other symbols were in common spaces such as hallways, the library, as well as shared classrooms. The placement was intentional so as to appear to be an expression of the community and school rather than any individual staff person." FAC ¶ 64.

- "Plaintiff brought his concerns regarding the anti-Israel nature of the speech at school to the attention of the school's administration, and to others within the District, including the human resources department." FAC ¶ 68.

- "School administration refused to remove pro-Palestine symbols." FAC ¶ 69.

- "When he asked school administrators if he could display a flag of Israel or symbols supporting Israel's right to exist, school administrators denied Plaintiff's request telling him that an Israeli flag or related symbols would be too disruptive." FAC ¶ 70.

- "Because it only allowed pro-Palestinian flags, symbols, and messages, the school failed to maintain any kind of viewpoint neutrality on this issue." FAC ¶ 71.

The threshold question before the Court is whether the displayed flags and symbols constitute government or private speech. The former is "unhindered by rules against viewpoint discrimination" and properly subject to dismissal under Rule 12(b)(6). *Feldman v. Denver Pub. Schs.*, No. 23-02986, 2024 WL 4309365, at *4, *7 (D. Colo. Aug. 1, 2024). In *Downs*, 228 F.3d 1003, the Ninth Circuit provided a clear and binding answer to this question: materials displayed within common areas of a public school constitute government speech and, therefore, cannot give rise to a claim for viewpoint discrimination.

*Downs* involved a high school that allowed "materials related to Gay and Lesbian Awareness Month" to be posted on bulletin boards inside of the school building. 228 F.3d at

1006. The school's principal maintained "ultimate authority within the school over the content of the boards." *Id*. The plaintiff in *Downs* objected to recognizing Gay and Lesbian Awareness Month and created his own competing bulletin boards across the hall from his classroom, which contained materials calling homosexuality immoral, sinful, and illegal. *Id*. at 1006-07. The school removed the plaintiff's competing bulletin boards. *Id*. at 1007. The plaintiff brought suit alleging viewpoint discrimination because his bulletin boards were removed while the others' bulletin boards promoting Gay and Lesbian Awareness Month were not. *Id*. at 1009.

The Ninth Circuit upheld the trial court's grant of summary judgment against the plaintiff, finding the speech at issue was "government speech" because the bulletin boards "were the property and responsibility of [the school]," and the school principals retained "authority over the bulletin boards' content at all times." *Id.* at 1011. Accordingly, the court determined that the principals' "implicit acceptance of … material posted by school faculty and staff that remained on the bulletin boards was equivalent to [the school and the district] itself speaking," and that the "explicit rejection of [the plaintiff's] posted adversarial materials was equivalent to [the school and the district] itself … choosing not to speak." *Id.* at 1012. The Ninth Circuit concluded that because the bulletin boards were "vehicles for conveying a message from the school district," and not "free speech zones," the district was allowed to formulate the messages displayed on the boards "without the constraint of viewpoint neutrality." *Id.* at 1017-18.

Following the reasoning in *Downs*,[4] and assuming the truth of Plaintiff's allegations, the displays at issue here likewise cannot give rise to a claim under the First Amendment for viewpoint discrimination. The Complaint itself even characterizes the putatively offending speech as being attributable to PPS: "[t]he placement [of Palestinian flags and other symbols] was intentional *so as to appear to be an expression of the community and school rather than any individual staff person*." FAC ¶ 64 (emphasis added). Additionally, as alleged in the Complaint, PPS policy required every display in the school's common areas to be approved by the administration, and PPS allowed the display of pro-Palestine messages while refusing to allow Plaintiff to display pro-Israel ones. The Complaint makes clear that that PPS exercised control over the items displayed in its common areas, making those displays PPS's speech. *See Downs*, 228 F.3d at 1012 ("[B]ecause [the principals] had final authority over the content of the bulletin boards, all speech that occurred on the bulletin boards was the school board's and [school district's] speech.").

The question presented by the Complaint and this motion is whether a public school owes an obligation of viewpoint neutrality to individual teachers who disagree with messages publicized on the school campus. The clear answer, according to the binding precedent from the Ninth Circuit, is: it does not. Claims under the First Amendment for viewpoint discrimination, under these circumstances, are not cognizable and must therefore be dismissed.

---

[4] In *Shurtleff*, the Supreme Court created a three-factor test to determine what constitutes government speech: "[1] the history of the expression at issue; [2] the public's likely perception as to who (the government or a private person) is speaking; and [3] the extent to which the government has actively shaped or controlled the expression." 596 U.S. 243 at 252. *Downs*, which addressed facts analogous to those here, remains good law in light of *Shurtleff*. Even if the Court were to apply the *Shurtleff* test, the same conclusion must be reached: the display at issue is government speech. *See Feldman*, 2024 WL 4309365, at *6-7 (applying the *Shurtleff* test and dismissing a viewpoint discrimination claim where a school permitted the display of Pride Flags on school walls but rejected the display of adversarial materials).

Page 13 – **DEFENDANT PORTLAND PUBLIC SCHOOLS' MOTION TO DISMISS**
129518210.28 0035426-00024

Again, because this brief may have a public audience, PPS hastens to clarify that it does not typically take positions on matters of intense political, ideological, and religious controversy and does not endorse pro-Palestine and anti-Israel views over alternatives. Although imperfectly, PPS strives to focus the educational environment on cultivating student learning according to the curriculum adopted by the district and its schools, and the classroom should not be a soapbox for teachers' exclusionary political opinions. Having said that, the role of the parties and the Court at this stage is to assume the truth of the allegations in the Complaint and to determine whether they state legal claims that are viable under controlling law. Here, they do not.

PPS "may formulate [its] message without the constraint of viewpoint neutrality," and allow certain displays and not others. *Id*. at 1017. Because government speech is not subject to the constraints of the First Amendment's Free Speech Clause, Plaintiff has failed to state a claim and his third claim for relief must be dismissed.

## C.     Claim IV: Plaintiff's First Amendment Establishment Clause Claim Fails to State a Plausible Claim for Relief.

Plaintiff alleges that PPS violated the First Amendment's Establishment Clause by promoting religious views and practices. This claim fails because the Complaint does not allege facts that, if true, would give rise to the hallmarks of an Establishment Clause violation: PPS has not preferred one religion over another, and has not coerced religious practice in any sense.

The Establishment Clause provides that "Congress shall make no law respecting an establishment of religion." U.S. Const. amend. I. While the body of law interpreting and

applying it is not a paragon of clarity,[5] two principal hallmarks emerge from the cases. First, "one religious denomination cannot be officially preferred over another." *Kumar v. Koester*, 131 F.4th 746, 754 (9th Cir. 2025) (quoting *Larson v. Valente*, 456 U.S. 228, 244 (1982)); *see also Foothills Christian Ministries v. Johnson*, __ F.4th __, 2025 WL 2351204, at *7 (9th Cir. 2025) ("The clearest command of the Establishment Clause is that the government may not officially prefer one religious denomination over another.") (quoting *Cath. Charities Bureau, Inc. v. Wisc. Labor & Indus. Rev. Comm'n*, 605 U.S. 238, 247 (2025)). Second, the government may not coerce or compel religious practice or orthodoxy. *See Markel v. Union of Orthodox Jewish Congregations of Am.*, 124 F.4th 796, 809 (9th Cir. 2024) ("[T]he 'coercion that was a hallmark of historical establishments was coercion of religious orthodoxy.'" (citation omitted)); *see also Chin v. Fhuere*, No. 24-01124, 2025 WL 2412053, at *2 (D. Or. Aug. 20, 2025) ("[T]he inquiry is whether ODOC's [challenged practice] exhibits historical traits of coercion.").

To be clear, government action "does not violate the Establishment Clause 'merely because it happens to coincide or harmonize with the tenets of some or all religions.'" *Foothill Church v. Watanabe*, 854 F. App'x 174, 175 (9th Cir. 2021) (quoting *Bob Jones Univ. v. United States*, 461 U.S. 574, 604 n.30 (1983)). Government institutions are free to adopt policies on matters that may be controversial among religious groups without running afoul of the

---

[5] In *Kennedy v. Bremerton School District*, 597 U.S. 507 (2022), the Supreme Court expressly abrogated prior Establishment Clause doctrines like the so-called "*Lemon* test" and "endorsement test," and instead "instructed that the Establishment Clause must be interpreted by 'reference to historical practices and understandings.'" *Id.* at 510 (citation omitted). Lower courts have applied this instruction by drawing from history and case law the hallmarks of what the Establishment Clause commands. *E.g.*, *Chin*, 2025 WL 2412053, at *2 ("[A] state agency … may not promote or affiliate itself with any religious doctrine or organization, may not discriminate among persons on the basis of their religious beliefs and practices, may not delegate a governmental power to a religious institution, and may not involve itself too deeply in such an institution's affairs." (citation omitted)).

Page 15 – **DEFENDANT PORTLAND PUBLIC SCHOOLS' MOTION TO DISMISS**
129518210.28 0035426-00024

Establishment Clause. They may adopt policies for or against physician assisted suicide, abortion, or vaccination—to name a few prominent examples—and are not deemed to have taken sides among religious denominations just because their choices may align with some religious groups over others. *Accord Kennedy v. Bremerton Sch. Dist.*, 597 U.S. 507, 535 (2022) ("Nor does the Clause 'compel the government to purge from the public sphere' anything an objective observer could reasonably infer endorses or 'partakes of the religious.'" (citation omitted)).

The Complaint's allegations may be separated into three categories: allegations that are curriculum-based, display-based, and prayer-based. None of these allegations pleads facts sufficient to state a claim for relief.

### 1. The Complaint's Curriculum-Based Allegations Do Not State a Plausible Claim for Relief.

The Complaint's curriculum-based allegations describe lesson plans ***published by PAT*** that purportedly favor one set of religious views over another. According to the Complaint, PAT's curriculum guide "encourages teachers to use their classroom to teach anti-Isreal [sic] views and includes detailed curricula recommendations for pre-K through high school." FAC ¶¶ 44-54. The Complaint alleges that the PAT guide "purports to define aspects of Plaintiff's faith, which includes the belief in a Jewish homeland, in ways that are inconsistent with his beliefs, but that are consistent with the religious teachings of other faiths, including the beliefs of some Muslims." FAC ¶ 143. The Complaint faults PPS for the curriculum guide by alleging: "[t]he District does not prohibit teachers from utilizing PAT's tools to proselytize for religious beliefs regarding the of [sic] the State of Israel, and religious practices." FAC ¶ 141.

None of these allegations makes out a violation of the Establishment Clause. Plaintiff does not allege either of the hallmarks of an Establishment Clause violation: he does not present facts to indicate that PPS preferred one religious denomination over another, nor to indicate that

Page 16 – **DEFENDANT PORTLAND PUBLIC SCHOOLS' MOTION TO DISMISS**
129518210.28 0035426-00024

PPS coerced or compelled Plaintiff into religious practice or orthodoxy.

Rather, the Complaint seems to say that Plaintiff espouses a set of deeply held religious commitments—including a belief in Israel as the Jewish homeland—that PAT's curriculum guide criticizes and embraces an alternative set of views compatible with the beliefs of other religions. Accepting those allegations as true, Plaintiff nonetheless fails to state a claim for violation of the Establishment Clause. First, he faults PPS for a curriculum guide created, disseminated, and promoted by PAT, not PPS. That PPS allegedly did "not prohibit teachers from utilizing PAT's tools," FAC ¶ 141, is far from mandating or even endorsing such tools. Second, even if PPS were responsible for the curriculum guide (which it is not), a public school does not violate a teacher's rights under the Establishment Clause when colleagues take positions on issues that are in tension with the teacher's religious beliefs. *See Foothill Church*, 854 F. App'x at 175 (government action "does not violate the Establishment Clause 'merely because it happens to coincide or harmonize with the tenets of some or all religions.'" (citation omitted)). If that were an Establishment Clause violation, then so too would curricula promoting the use of contraception or the equality of LGBTQ+ people—both of which contravene the religious beliefs of certain denominations. While the Establishment Clause forbids official preference for one religious group over others, it does not require neutrality on all matters of religious belief.

Nor does the Complaint's allegation that the PAT curriculum guide "define[d] aspects of" Plaintiff's Jewish faith run afoul of the Establishment Clause. In *Hilsenrath on Behalf of C.H. v. School District of Chathams*, a student brought an Establishment Clause claim against his middle school because, as part its World Cultures and Geography Class, lessons were "aimed at teaching students about the general attributes of the Islamic faith." 698 F. Supp. 3d 752, 756 (D.N.J. 2023). These lessons purported to define aspects of Islam by providing explicit answers to

questions like "What is Islam?"; "Who is Allah?"; "Who is Muhammed?"; "What is the Noble Quran?"; and "What does history say about Islam?" *Id*. The court held that these lessons did not "bear any of the historical 'hallmarks of religious establishments'" because "the materials cannot be viewed as tending to compel a student 'by force of law and threat of penalty,' to adhere to a particular religious belief or participate in a particular religious practice." *Id*. at 763-64 (explaining that the relevant test is whether the educational units "require or coerce students 'to *support* or *participate* in' the religious faith covered by that unit" (citations omitted)).

Here, even if a teacher at PPS taught curricula that "purports to define aspects of Plaintiff's faith," this alone would not be impermissibly coercive.[6] There are no allegations from which to draw an inference that students were required to adhere to, support, or participate in a particular religious practice. "Exposure to a variety of viewpoints, *including religious ones*, is a proper goal." *Id*. at 765 (emphasis added). Thus, to state a claim for relief, the Complaint must allege more than mere exposure to religion; it must allege impermissible coercion. The Complaint is plainly deficient in this regard.

For these reasons, the Complaint's curriculum-based allegations fail to state a plausible claim for relief.

### 2. The Complaint's Display-Based Allegations Do Not State a Plausible Claim for Relief.

Plaintiff relies on the following display-based allegations to support his Establishment Clause claim:

- "The District allows displays of overtly anti-Israel messaging, including maps that

---

[6] This should not be construed to suggest that PPS strives for and incorporates anything other than neutrality in its curriculum. Again, the question addressed in this motion is whether the facts as alleged in the Complaint, when assumed to be true, overcome controlling legal standards, like the presence of coercion to make out a violation of the Establishment Clause. Here, they do not.

fail to display the nation of Israel." FAC ¶ 144.

- "School administration allowed posting of Palestinian flags, print-out maps of Palestine that eliminate Israel, and other symbols and slogans throughout the school." FAC ¶ 63.

- "Posting the Palestinian flag has a political meaning and message about the death of the Israeli people and the elimination of the state of Israel." FAC ¶ 66.

- "School administration refused to remove pro-Palestinian symbols." FAC ¶ 69.

- "The District denied Plaintiff the opportunity to even present an Israeli flag." FAC ¶ 146.

These allegations fail to state a plausible claim for relief under the Establishment Clause.

As mentioned, government institutions are free to take positions—and, certainly, to abide the taking of positions by others—that are controversial among religious groups, so long as they do not officially prefer one religious denomination over another or coerce religious practice. The allegations that PPS allowed teachers to display things like anti-Israel maps and Palestinian flags and symbols, while disallowing the display of an Israeli flag, if true, would not constitute an official preference for one religious denomination over another or coercion of religious practice.

Ample Establishment Clause cases about religious displays guide the legal analysis. The Supreme Court rejected an Establishment Clause challenge to the practice of a public high school football coach of praying midfield (in a visual spectacle) at the end of football games. *Kennedy*, 597 U.S. at 539. Despite arguments that forcing students to observe the teacher's midfield prayer was impermissibly coercive, the Court said the display "does not equate to coercion." *Id.* It added: "[L]earning how to tolerate speech or prayer of all kinds is part of learning how to live in a pluralistic society, a trait of character essential to a tolerant citizenry." *Id.* at 538. Likewise, in *Town of Greece, New York v. Galloway*, the Court held that beginning town meetings with a prayer did not violate the Establishment Clause. 572 U.S. 565, 589 (2014). Responding to the objection that the prayers "made [individuals] feel excluded and disrespected," the Supreme

Page 19 – **DEFENDANT PORTLAND PUBLIC SCHOOLS' MOTION TO DISMISS**

Court said: "Offense … does not equate to coercion. Adults often encounter speech they find disagreeable; and an Establishment Clause violation is not made out any time a person experiences a sense of affront from the expression of contrary religious views[.]" *Id.*

The Supreme Court has often upheld government-sanctioned displays to which religious nonadherents objected. In *Lynch v. Donnelly*, 465 U.S. 668 (1984), Christmas displays were upheld. In *American Legion v. American Humanist Ass'n*, 588 U.S. 29 (2019), the display of a 32-foot tall Latin cross—an "undoubtedly a Christian symbol"—was upheld. *Id.* at 66; *see also Salazar v. Buono*, 559 U.S. 700 (2010) (upholding a cross display). In *Van Orden v. Perry*, 545 U.S. 677 (2005), and *Pleasant Grove City*, 555 U.S. 460, monuments to the Ten Commandments were upheld. While reasonable minds differ on the wisdom of these holdings (and dissenting opinions abound), they unmistakably signal the high bar that must be overcome by Establishment Clause claimants challenging what they consider to be offensive religious displays.

Although perhaps susceptible to challenge, for present purposes PPS need not take on Plaintiff's premise that symbols like the Palestinian flag and maps disparaging Israel are religious symbols. The Supreme Court has recognized that symbols can have both religious and secular significance,[7] *see Am. Legion*, 588 U.S. at 53, and the Court need not broach that subject

---

[7] The mixed religious/political nature of the speech at issue here raises important questions about one employee using legal claims to silence the political expression of others. Setting to the side the precise allegations in the Complaint, consider the implications if Plaintiff's view of Establishment Clause doctrine were correct. Could a city council pass a resolution condemning, on the one hand, starvation in Gaza, or on the other hand, Palestinian violence against Israelis? *Accord Kopmar v. Ass'n of Legal Aid Att'ys*, No. 24-5158, 2025 WL 1939048, at *6 (S.D.N.Y. July 15, 2025) ("Such a document falls squarely within the realm of protected political speech. … While the Court does not doubt that Plaintiffs were sincerely upset upon reading the Resolution, the fact that speech may arouse intense negative reactions does not allow the government to restrict it."); *Newman v. Point Park Univ.*, No. 20-00204, 2022 WL 969601, at *25 (W.D. Pa. Mar. 31, 2022) ("[A]ccepting that argument would prove too much, as it would invalidate … public debate and give Plaintiff a veto over others engaging in that same debate.").

Page 20 – **DEFENDANT PORTLAND PUBLIC SCHOOLS' MOTION TO DISMISS**

129518210.28 0035426-00024

to determine the viability of the Establishment Clause claim. Assuming for present purposes that these symbols do in some sense convey religious meaning, a public school teacher's exposure to them in the workplace still does not contravene the Establishment Clause.

### 3. The Complaint's Prayer-Based Allegations Do Not State a Plausible Claim for Relief.

The prayer-based allegations are conspicuously vague and factually sparse. Plaintiff alleges that "[a] teacher led an on campus morning meeting that he designated as a 'prayer circle' to support Palestine." FAC ¶ 74. By Plaintiff's own account, this was a "meeting" that was merely called a "prayer circle" by some unspecified teacher. *Id*. There is no allegation that this meeting actually involved prayer or any other religious practice. Indeed, the Complaint provides hardly any insight into the content of the meeting, other than that it was held "to support Palestine." Plaintiff nonetheless characterizes this meeting as an "overtly religious activity," but that conclusory allegation lacks factual support. FAC ¶ 145.

Even if it is assumed that the "prayer circle" involved religious prayer (for which there are no supporting facts), this allegation still lacks sufficient minimum facts to state a plausible claim for relief. It is not alleged whether there were other participants, other than the alleged teacher, in this so-called "prayer circle." *Kennedy*, 597 U.S. at 529 (relevant for determining "'whether the speech at issue is itself ordinarily within the scope of an employee's duties'" such that it is government, rather than private, speech (citation omitted)). *Id.* If there were participants, there is no telling whether they were students, teachers, members of the public, or some combination of the three. *Id.* (same). And Plaintiff does not allege if the participants were invited, mandated, or requested on their own to attend the "prayer circle" meeting. *Id*. at 537 (relevant for determining whether religious exercise crosses the line "separating protected private expression from impermissible government coercion"). Nor does Plaintiff allege that PPS had

Page 21 – **DEFENDANT PORTLAND PUBLIC SCHOOLS' MOTION TO DISMISS**
129518210.28 0035426-00024

knowledge of the "prayer circle." *Id.* at 529 (relevant for determining whether the "prayer circle" constitutes government speech). These details are critical for line "'draw[ing] between the permissible and the impermissible,'" *id.* at 536, and their (glaring) absence should necessitate dismissal for failure to plead sufficient facts.

In sum, Plaintiff has not alleged sufficient facts—whether curriculum-, display-, or prayer-based—to state a plausible claim under the First Amendment's Establishment Clause.

### D.    Claim V: Plaintiff Fails to Establish a Prima Facie Claim of a Hostile Work Environment Under ORS 659A.030.[8]

Plaintiff fails to state a claim that PPS subjected him to a hostile work environment because of his national origin or religious beliefs. To do so, Plaintiff would need to allege ultimate facts indicating that "(1) [PPS] subjected [him] to verbal or physical conduct based on [his protected trait]; (2) the conduct was unwelcome; and (3) the conduct was sufficiently severe or pervasive to alter the conditions of [his] employment and create an abusive working environment." *Surrell v. Cal. Water Serv. Co.*, 518 F.3d 1097, 1108 (9th Cir. 2008).[9] "The required level of severity or seriousness 'varies inversely with the pervasiveness or frequency of the conduct.'" *Nichols v. Azteca Rest. Enters., Inc.*, 256 F.3d 864, 872 (9th Cir. 2001) (citation omitted); *see, e.g., Mooers v. St. Charles Health Sys., Inc.*, No. 23-01294, 2024 WL 759632, at *2 (D. Or. Feb. 23, 2024). The Complaint fails to satisfy these elements as it relies on bare and

---

[8] PPS has simultaneously filed an anti-SLAPP Special Motion to Strike Plaintiff's ORS 659A.030 claim under ORS 31.150. PPS requests that the Court first grant PPS's Special Motion to Strike. If, however, the Court denies that Motion to Strike, then PPS requests the Court grant PPS's motion to dismiss the ORS 659A.030 claim under this Motion. The argument set forth in this Section D is the same as that in Section B.1 of the Motion to Strike.
[9] Considering that ORS 659A.030 was "'modeled after Title VII …, federal cases interpreting Title VII are instructive.'" *Ochs v. Eugene Emeralds Baseball Club, Inc.*, 774 F. App'x 1026, 1027-28 (9th Cir. 2019) (citation omitted); *see also Reynaga v. Roseburg Forest Prods.*, 847 F.3d 678, 695 (9th Cir. 2017) ("[T]he substantive analysis for Title VII … claims also applies to discrimination claims under O.R.S. 659A.030(1)(a), (b)." (citation omitted)).

conclusory allegations and, even if the allegations were satisfactorily pled, they fall far short of a plausible hostile work environment claim.

### 1.    Plaintiff's Allegations Lack the Necessary Factual Detail to Establish That the Conduct in Question Was Sufficiently Severe or Pervasive.

In addition to satisfactorily pleading a discriminatory motive, Plaintiff must allege sufficient facts that the remaining conduct at issue was severe or pervasive enough to alter the conditions of his employment and create an abusive working environment to survive a motion to dismiss. *See, e.g., Surrell,* 518 F.3d at 1108. To satisfy this element, Plaintiff relies entirely on his belief that the expressive conduct alleged in his Complaint was hostile and abusive. But a claim under ORS 659A.030 cannot rest on subjective belief alone.

In determining whether conduct is severe and pervasive, the Court must focus on the "'frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Faragher v. City of Boca Raton,* 524 U.S. 775, 787-88 (1998) (citation omitted). Plaintiff's allegations are far too conclusory to meet this threshold.

In support of his ORS 659A.030 claim, Plaintiff asserts that PPS "made Plaintiff's school a forum for one-sided, anti-Israel rhetoric" (FAC ¶ 60) because it allowed for the expression of views on a geopolitical issue within the walls of his school when, for example:

- Teachers and staff posted "Palestinian flags, print-out maps of Palestine that eliminate Israel, and other symbols and slogans" in "common spaces such as hallways, the library, as well as shared classrooms" (FAC ¶¶ 63, 64);

- A teacher led "an on-campus morning meeting that he designated as a 'prayer circle' to support Palestine" (FAC ¶ 74); and

- The school principal "used the school and community partners' email list to promote a pro-Palestine teacher's request to talk and/or take action about what is going on in Palestine, and the school set up a zoom meeting for staff and students on the topic" (FAC ¶ 77).

These allegations do not establish the type of severity or pervasiveness necessary to support a hostile work environment claim. For example, while Plaintiff asserts that pro-Palestine symbols were posted in common areas such as hallways, the library, and shared classrooms, he does not allege that they were placed in every—or even most—common spaces or that, by nature of his work, he was forced to confront them on a frequent basis. And while he takes issue with a pro-Palestine morning "prayer circle," it is not clear from his Complaint if he witnessed the meeting, or that he even knew about the meeting at or near the time it occurred, where it occurred, or what was discussed. As for Plaintiff's allegations directed at the school principal, they are too vague and conclusory to be credited. Plaintiff provides no explanation for what "us[ing]" a school email list means, what the sent emails (if any) contained, or what specifically was to be discussed in the alleged Zoom meeting. Moreover, it is unclear whether Plaintiff himself even received these alleged emails or meeting invitations.

While Plaintiff believes that "[p]osting the Palestinian flag has a political meaning and message about the death of the Israeli people and the elimination of the state of Israel," he does not bring a single well-pleaded allegation that anyone at the school ever, directly or indirectly, subjected him to objectively offensive or abusive speech to that effect. For example, Plaintiff has not alleged that any colleague used any national origin-based or religion-based language, threats, or intimidation specifically directed toward or about Plaintiff inside or outside their classroom.

Finally, beyond alleging that the "anti-Israel messaging … negatively affected Plaintiff" and that he took accumulated and medical leave (FAC ¶¶ 88, 111), Plaintiff asserts no details about how, if at all, the conduct in question unreasonably interfered with his work performance. He does not, for example, discuss how his ability to manage his classroom, prepare lesson plans, complete grading, or advise on extracurriculars was impacted.

Plaintiff has failed to allege the necessary factual detail for the Court to find that the conduct in question was sufficiently frequent, severe, threatening, humiliating, or offensive; or whether it unreasonably interfered with his work performance. *See Faragher,* 524 U.S. at 787-88. With these essential details lacking, the Court must find that Plaintiff has failed to state a plausible claim for relief under ORS 659A.030.

> **2.　　Even If Considered Sufficiently Detailed, Plaintiff's Allegations Do Not Constitute the Type of Severe and Pervasive Conduct Necessary to Give Rise to a Hostile Work Environment Claim.**

Plaintiff's hostile work environment claim rests on his belief that the expressive conduct alleged in the Complaint was hostile and abusive. According to the Complaint, this conduct was distressing to Plaintiff. His claims, however, cannot hinge solely on subjective beliefs and reactions. Instead, he "must present sufficient evidence for a jury question on whether the work environment was '*both objectively and subjectively* offensive, one that a reasonable person would find hostile and one that the victim in fact did perceive to be so.'" *E.E.O.C. v. Prospect Airport Servs., Inc.,* 621 F.3d 991, 997 (9th Cir. 2010) (emphasis added; citation omitted).

Plaintiff's hostile work environment claim is premised on the assertion that his colleagues' display and expression of different views on geopolitical topics, through such methods as hanging flags, hosting a "prayer circle," and arranging for a Zoom meeting to discuss the Israel-Palestine conflict, were sufficiently offensive to be considered hostile. However, as demonstrated by case law and Plaintiff's own allegations, this type of conduct does not meet the threshold of subjective *and* objective severity and pervasiveness.

*Newman v. Point Park Univ.*, No. 20-00204, 2022 WL 969601 (W.D. Pa. Mar. 31, 2022), is persuasive. There, the plaintiff—a Jewish and Israeli-born professor—alleged a hostile workplace environment stemming from "a heated set of academic and philosophical contentions

between [the p]laintiff and other faculty members" related to Isreal and Palestine. *Id.* at *1. She also alleged that the disagreement over the geopolitical conflict "infiltrated [the university] Defendant's administration, the administration's decision making, and the student body." *Id*. Specifically, Newman and two other professors disagreed on class content about the Israel-Palestine conflict. *Id.* at *3. The situation escalated with Newman claiming, among other things, that: the other professors helped to remove her from the chair of a cultural studies program; the other professors created a social justice program as a "cover for anti-Semitism"; she was investigated for a Title IX violation and treated worse than other male, white, non-Jewish employees accused of similar violations; and students "shunned and evaded" her. *Id.* at *3, *22.

The court rejected Newman's claims. It noted that her claims relied heavily on the allegations that her colleagues "held and advanced in the classroom and beyond strongly differing viewpoints from those of [the plaintiff] on the Israel-Palestine conflict and the responses to it, that [they] support different political movements in those regards than [Newman] does," and Newman "considers those viewpoints on those topics as anti-Semitic and therefore by definition to be targeted at her." In dismissing Newman's claims with prejudice, the court found that such allegations do not facially support a hostile work environment claim:

> [Newman] has not shown that Defendant has subjected her to an objectively hostile work environment by its not suppressing, or otherwise protecting [Newman] from, the personal views and academic interests of some of Defendant's professors and students related to these geopolitical topics. The record does not plausibly make a "showing" that Defendant created an objectively hostile work environment for [Newman] or for a reasonable employee in [Newman's] shoes by allowing controversial theories and ideas that directly compete with [Newman's] own views to be discussed among professors and/or students in a classroom or academic setting or engaged with outside of the classroom. … Rather, [Newman's] allegations amount to her strong and fundamental disagreement with the viewpoints and public actions that she attributes to either or both of [the other professors], largely manifesting in actions outside of the classroom including participating in protests and posting

Page 26 – **DEFENDANT PORTLAND PUBLIC SCHOOLS' MOTION TO DISMISS**
129518210.28 0035426-00024

> content on social media … [Newman] posits that such advancement of these ideas and concepts … inherently makes her an outcast given her vigorously opposing viewpoints coupled with her race and religion.

*Id.* at \*24-25. The court further wrote that to find that such allegations could support a claim of hostile work environment under Title VII would be tantamount to allowing a plaintiff to use the law to quell the speech of others who have different views:

> [A]ccepting [Newman's] argument would prove too much, as it would invalidate as a facial matter and on Title VII grounds an entire academic and public debate and give [Newman] a veto over others engaging in that same debate. It would effectively compel, under the pain of Title VII liability, that any speech and viewpoints held and espoused by others as part of that debate and that are contrary to [Newman's] point of view be reformulated to be consistent with [Newman's] views on such topics.

*Id.* at \*25. And finally, the court noted that agreeing with Newman would require that the court rely solely on her subjective belief, while ignoring the necessary objective standard:

> [T]he argument that [Newman] posits would also require the Court to abandon a core principle of the "hostile work environment" claim analysis, namely that the conduct complained of be "objectively hostile," rather than being measured by the subjective assessment of [Newman].

*Id.* at \*26.

Plaintiff's hostile work environment claim should fare no better than Newman's Title VII claim. Plaintiff's claims are analogous to Newman's, premised on Plaintiff's fundamental disagreement with the viewpoints expressed by others within the walls of his school. Just as in *Newman*, Plaintiff cannot use ORS 659A.030 to demand that "speech and viewpoints held and espoused by others as part of that debate and that are contrary to [his] point of view be reformulated to be consistent with [his] views on such topics." *Id*. at \*25.

Other judges in this District have found that hostile work environment claims fail for far more severe and pervasive conduct than Plaintiff alleges in this case. In *Mills v. PeaceHealth*, 31 F. Supp. 3d 1099, 1104 (D. Or. 2014), Judge McShane granted summary judgment against the

Page 27 – **DEFENDANT PORTLAND PUBLIC SCHOOLS' MOTION TO DISMISS**
129518210.28 0035426-00024

Title VII claim of a Jewish employee who alleged that he was subjected to discrimination and a hostile work environment on the basis of religion. The plaintiff in that case alleged specific comments by his supervisor and coworkers such as "Jews are murderers, like everyone else"; "they should just send all the Jews back to Germany being it was Germany's fault that the Jews moved to Israel in the first place"; "Christianity is a good religion" and plaintiff had a "tortured soul"; "it was ridiculous for [defendant] to hire a Jew to work there"; and "Jews had money stashed and didn't really need to work." *Id*. at 1116-17 (quotation modified). Mills also alleged that his harassers slammed a fist on his desk in an effort to intimidate him and chased him toward the break room, yelling at him to go on a break. *Id.* at 1116. Despite these allegations, Judge McShane found "'[w]hen compared to other hostile work environment cases, the events in this case are not severe or pervasive enough to violate Title VII,'" and noted that the coworker comments, while offensive and inappropriate, did not so pollute the workplace that it altered the conditions of Mills's employment. *Id.* at 1118 (citation omitted; brackets in original).

Similarly, in *Manatt v. Bank of America, NA*, 339 F.3d 792, 795-96 (9th Cir. 2003)*,* a bank employee of Chinese descent brought a hostile work environment claim alleging explicit racial misconduct including: (1) a coworker saying to a supervisor "I am not a China man, I'm not like China man with their eyes like that"; (2) a supervisor telling Manatt "I've had the worst kind of trouble with your countrymen"; (3) Manatt overhearing coworkers saying "China man" and "rickshaw"; (4) Manatt hearing the phrase "China man" spoken in the context of jokes on several occasions; (5) Manatt hearing coworkers refer to Chinese people as "communists from Beijing"; (6) a coworker telling Manatt: "China woman, China woman, China woman, get your butt over here" and was then asking Manatt to repeatedly and improperly pronounce "Lima" for other coworkers; and (7) Manatt witnessing coworkers on multiple occasions pull their eyes back

with their fingers to imitate or mock the appearance of Asians. *Id.* (internal quotation marks and citation omitted). The Ninth Circuit upheld the district court's findings and concluded that, while certainly painful to Manatt, this conduct was neither severe nor pervasive enough to alter the conditions of Manatt's employment. *Id.* at 799.

Just as in *Mills* and *Manatt*, the conduct at issue here clearly distressed Plaintiff. But his hostile work environment claim is based on allegations that are less severe and pervasive than those alleged in *Mills* and *Manatt*, which involved repeated and blatantly offensive and discriminatory conduct. His claim should thus similarly fail.

Finally, Plaintiff's own allegations belie a claim that the conduct in question was sufficiently severe or pervasive to alter the conditions of his employment. *See Mills*, 31 F. Supp. 3d at 1115 (citing *Vasquez*, 349 F.3d at 642). While Plaintiff says that his exposure to pro-Palestine views caused him to suffer a recurrence of PTSD and forced him to receive medical treatment (FAC ¶¶ 111-112), he also asserts that he "has consistently received excellent evaluations, contributed substantially to curricula development, and enjoyed a good reputation with parents and students." FAC ¶ 118. *See Newman*, 2022 WL 969601, at *24 (the plaintiff's ability to perform her job duties satisfactorily, without more evidence of discrimination, does not violate Title VII). Plaintiff further contradicts himself by claiming that "[placing] Palestinian flags around the school clearly conveys the message that the District and PAT support not just the Palestinians, but specifically the destruction of the State of Israel" (FAC ¶ 66), but then asserting six paragraphs later that he "does not object to sharing a building or working closely with colleagues who disagree with his positions and beliefs as long as the environment is neutral, fair and safe, and allows for expression of his opinions and beliefs as well" (FAC ¶ 72). This would seem to indicate that Plaintiff's issue is not with the display of pro-Palestine messaging,

Page 29 – **DEFENDANT PORTLAND PUBLIC SCHOOLS' MOTION TO DISMISS**
129518210.28 0035426-00024

but rather his discontent at his inability to express his own opinions on this geopolitical issue in the ways he wished. Based on Plaintiff's own allegations, Plaintiff was not subjected to conduct sufficiently severe or pervasive to alter the conditions of his employment.

ORS 659A.030 is not a code of "general civility" that Plaintiff can use to avoid offense (even profound offense) or to force others into agreement. *Faragher,* 524 U.S. at 778 (discussing Title VII); *see Treaster v. Conestoga Wood Specialties, Corp*., No. 09-00632, 2010 WL 2606479, at *18 (M.D. Pa. Apr. 29, 2010) ("Title VII is not intended to cure a cold shoulder or ostracism by co-workers."); *see also Williams v. Pa. Hum. Rels. Comm'n,* No. 14-01290, 2016 WL 6834612, at *24 (W.D. Pa. Nov. 21, 2016) ("Rude behavior and disagreement … [do] not meet the requirements to show a hostile work environment."). Plaintiff's allegations are not so severe and pervasive as to alter the conditions of his employment and create a hostile and abusive working environment. He has failed to allege a prima facie claim of hostile work environment and thus his ORS 659A.030 claim must be dismissed.

### E.     Claim VI: Plaintiff's Title VII Claim Should Be Dismissed with Prejudice.

Plaintiff alleges that PPS violated Title VII by subjecting him to discrimination based on religion and national origin. This claim fails because (1) it is time barred; (2) Plaintiff failed to exhaust his administrative remedies; and (3) Plaintiff fails to state a plausible claim for relief under Title VII.

#### 1.     Plaintiff's Title VII Claim Is Time Barred.

Plaintiff's Title VII claim against PPS should be dismissed with prejudice as untimely. A plaintiff is required to exhaust administrative remedies before filing a Title VII claim.[10] *Lyons v. England*, 307 F.3d 1092, 1103-04 (9th Cir. 2002). "A Title VII plaintiff must file a charge with

the EEOC within 180 days or with a state or local agency within 300 days after the allegedly discriminatory act before seeking federal adjudication of his claim." *Clink v. Or. Health & Sci. Univ.*, 9 F. Supp. 3d 1162, 1164 (D. Or. 2014); *see* 42 U.S.C. § 2000e–5(b), (f)(1), (e)(1). In other words, if a plaintiff "first 'institutes proceedings' with a state agency that enforces its own discrimination laws," then the plaintiff has 300 days to file a claim with the EEOC. *Laquaglia v. Rio Hotel & Casino, Inc.*, 186 F.3d 1172, 1174 (9th Cir. 1999) (citation omitted). If, however, the plaintiff fails to file with the state agency, then he must file his discrimination claim with the EEOC within 180 days of the date on which the alleged discriminatory practice occurred. *Id.*

Here, Plaintiff's allegations focus on conduct that occurred from March to August 2024. The last allegation that ostensibly gives rise to his Title VII hostile work environment claim occurred in late August 2024. *See* FAC ¶ 108 (alleging that Plaintiff was subjected to an investigation for removing flags "days after" he filed an HR complaint on August 26, 2024).

According to the Complaint, Plaintiff filed his EEOC complaint on May 22, 2025 and received a right-to-sue letter on July 15, 2025. FAC ¶ 183. Plaintiff does not allege that he also filed a charge with Oregon's state agency, the Bureau of Labor and Industries ("BOLI"). Because he filed his claim only with the EEOC, not BOLI, he is subject to the 180-day deadline and was required to file his charge with the EEOC by the end of February 2025. Plaintiff did not meet that deadline, and thus his Title VII claim is barred by applicable statutes of limitations.

### 2. Plaintiff's Title VII Claim Should Be Dismissed Because Plaintiff Failed to Exhaust Administrative Remedies.

As explained, to exhaust administrative remedies under Title VII, a plaintiff must file a timely charge with the EEOC, allowing the agency time to investigate the charge and receive a right-to-sue letter. *Lyons*, 307 F.3d at 1103-04; 42 U.S.C. § 2000e-5(e), (f)(1). An EEOC charge "serves the important purposes of giving the charged party notice of the claim and narrowing the

Page 31 – **DEFENDANT PORTLAND PUBLIC SCHOOLS' MOTION TO DISMISS**

issues for prompt adjudication and decision." *Freeman v. Oakland Unified Sch. Dist.*, 291 F.3d 632, 636 (9th Cir. 2002) (citation omitted). "Title VII requires that the charge be sworn …. ('Charges shall be in writing under oath or affirmation ....'), and that the EEOC send notice of the charge … (including the date, place and circumstances of the alleged unlawful employment practice) on [the] employer." *B.K.B. v. Maui Police Dep't*, 276 F.3d 1091, 1099 (9th Cir. 2002) (citing 42 U.S.C. § 2000e–5(b)).

Plaintiff claims that he "filed his complaint with the [EEOC] on May 22, 2025, and received a right to sue letter on July 15, 2025." But, it appears, this is inaccurate. As seen in Exhibit L to the Complaint, Plaintiff filed no such charge. Instead, someone else— Rebekah Schultheiss—apparently filed the charge in her own name.[11] *See* FAC, Ex. L ("Re: Rebekah Schultheiss v. PORTLAND PUBLIC SCHOOLS, et al., ... Dear Rebekah Schultheiss, You are receiving this notice because you filed the above charge(s) with the Equal Employment Opportunity Commission (EEOC), and you or your attorney specifically requested this notice."). Presumably, because the charge was not in Plaintiff's name, the charge was not properly sworn and was thus unperfected. The EEOC charge is "intended to satisfy the *dual* purpose of establishing notice of the complainant's claims both to the agency *and* to the named respondent." *B.K.B.*, 276 F.3d at 1101. Here, the EEOC and PPS had notice that Ms. Schultheiss had filed a charge, not Plaintiff; this defeats the purpose of the EEOC charge and thwarts Title VII's exhaustion requirement. *See Freeman*, 291 F.3d at 636.

What's more, because Plaintiff (i.e., John Doe) did not file an EEOC charge, Plaintiff has not received the required Notice of Right to Sue from the EEOC. Rather, the EEOC has granted

---

[11] We now know that Rebekah Schultheiss is the name of Plaintiff's counsel. Although counsel can certainly assist a client in filing an EEOC charge, they must do so in the name of their client, not in their own name.

someone else—Ms. Schultheiss—a right to sue PPS for her own claims. But Plaintiff cannot bring this lawsuit based on an EEOC charge filed by (and notice issued to) someone else.

Because Plaintiff failed to file a formal charge with the EEOC—and therefore has not been issued a right-to-sue letter by the EEOC—he has not exhausted administrative remedies for his Title VII claim, and the claim should be dismissed with prejudice.

### 3. Plaintiff's Title VII Claim Should Be Dismissed for Failure to State a Plausible Claim.

Plaintiff's Title VII claim is barred by the applicable statutes of limitations and should be dismissed on that basis. But if the Court reaches Plaintiff's claim on its merits, it also fails for failure to state a plausible claim.

Plaintiff seemingly asserts a Title VII claim under different theories. One theory is that Plaintiff was subjected to a hostile work environment based on his national origin and religion. FAC ¶¶ 167-183. Because the court's analysis of a religious discrimination claim under Oregon law is the same as under Title VII, this claim fails for the same reasons that Plaintiff's ORS 659A.030 hostile work environment claim fails, as set forth in detail in Section D above. *See Atwood v. PCC Structurals, Inc.*, No. 14-00021, 2015 WL 3606323, at *8 (D. Or. June 4, 2015); *Pullom v. U.S. Bakery*, 477 F. Supp. 2d 1093, 1100 (D. Or. 2007) (noting that "O.R.S. 659A.030 is modeled after Title VII").

Plaintiff also appears to assert a Title VII claim under a separate theory, but PPS cannot discern which one he attempts to articulate. Alleging "[e]mployment [d]iscrimination [b]ased [o]n [r]eligion," Plaintiff asserts that PPS allowed messaging in the workplace that offended Plaintiff's beliefs; "deprived" him of any means for expressing his disagreement; compelled him "to silently support the messages throughout the school"; and "took adverse action" by refusing to investigate Plaintiff's claims and "investigating him for false allegations." FAC ¶¶ 160-166.

Here, Plaintiff fails to identify which additional theory of religious discrimination he is asserting. "A claim for religious discrimination under Title VII can be asserted under several different theories, including disparate treatment and failure to accommodate." *Peterson v. Hewlett-Packard Co.*, 358 F.3d 599, 603 (9th Cir. 2004). On its face, the Complaint is unclear as to whether Plaintiff seeks relief under a disparate treatment theory, failure to accommodate theory, or something else. For example, Plaintiff does not allege that "similarly situated individuals outside his protected class were treated more favorably" as is often required for a disparate impact claim. *See id.* Nor does he assert or offer factual support for a claim that his bona fide religious belief conflicted with an employment duty or that PPS "discharged, threatened, or otherwise subjected him to an adverse employment action because of his inability to fulfill the job requirement" as needed for a failure to accommodate claim. *See id.* at 606.[12]

With his Complaint devoid of sufficient factual allegations or clarity to establish a cognizable theory, Plaintiff leaves the Court guessing as to which Title VII discrimination theory he is attempting to advance. But "[t]he district court is not required to guess as to what theory a plaintiff might be relying on in a complaint[.]" *Say & Say v. Layman*, 15 F.3d 1089, 1993 WL 539259, at *1 (9th Cir. 1993) (unpublished); *see also Edwards ex rel. J.E. v. Yamhill County*, No.

---

[12] Under either theory, Plaintiff must plausibly assert that he suffered adverse employment action. But Plaintiff merely alleges that he was subjected to adverse action in the form of (1) a retaliatory investigation into his conduct and (2) an inadequate investigation into his concerns. FAC ¶ 166. As discussed, Plaintiff was investigated for taking down someone else's property and the investigation into this misconduct exhibits no discriminatory motive. And as for the failure to investigate, courts routinely have held that such an employment decision does not constitute an adverse employment action. *See, e.g., Cozzi v. County of Marin*, 787 F. Supp. 2d 1047, 1069 (N.D. Cal. 2011) ("[T]he failure to conduct an adequate investigation after an alleged act of discrimination cannot be considered an action that … reasonably would deter an employee from engaging in the protected activity under Title VII."); *Brown v. Dignity Health*, No. 18-03418, 2020 WL 3403088, at *7 (D. Ariz. June 19, 2020) ("[A]n inadequate investigation is not an adverse employment action[.]").

19-00240, 2020 WL 6931316, at *6 (D. Or. Oct. 15, 2020) (dismissing a claim where the plaintiff relied on "bald allegations" "far short of asserting a plausible" claim, which left the court "to guess what First Amendment theory [the p]laintiffs [were] attempting to advance"). Plaintiff has alleged that he faced employment discrimination based on his religion, but bald and conclusory assertions do not make a plausible claim. Plaintiff has failed to sufficiently allege a plausible claim for relief under Title VII and his claim should be dismissed.

## V.    CONCLUSION

As mentioned, PPS strives to focus the educational environment on cultivating student learning according to the curriculum adopted by the district and its schools, and the classroom should not be a soapbox for teachers' exclusionary political opinions. PPS does not typically take positions on matters of intense political, ideological, and religious controversy; the current conflict in Israel and Gaza is no exception. At this stage of litigation, however, the role of the parties and the Court is to assume the truth of the allegations in the Complaint and to determine whether they make out viable legal claims under controlling law. Here, they do not.

For the reasons stated above, this Court should reject Plaintiff's requests to disregard settled labor and municipal liability law, misconstrue well-established constitutional doctrines, and misuse employment discrimination statutes to veto the expression of dissenting viewpoints. Plaintiff's claims against PPS should be dismissed in their entirety.

/ / /

/ / /

/ / /

/ / /

/ / /

Page 35 – **DEFENDANT PORTLAND PUBLIC SCHOOLS' MOTION TO DISMISS**
129518210.28 0035426-00024

DATED: September 15, 2025 STOEL RIVES LLP

/s/ Misha Isaak
MISHA ISAAK, OSB No. 086430
misha.isaak@stoel.com
MEGAN S. BRADFORD, OSB No. 222711
megan.bradford@stoel.com
DOMINIK K. MACKINNON, OSB No. 231723
dominik.mackinnon@stoel.com

*Attorneys for Defendants Portland Public Schools, Dr. Kimberlee Armstrong, Edward Wang, Michelle DePass, Christy Splitt, Virginia La Forte, Stephanie Engelsman, Patte Sullivan, and Rashelle Chase-Miller*