UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

JOHN DOE, *an individual*,

        Plaintiff,

        v.

PORTLAND ASSOCIATION OF
TEACHERS, *a labor organization*;
PORTLAND PUBLIC SCHOOLS; DR.
KIMBERLEE ARMSTRONG, *in her official
capacity as the superintendent of Portland
Public Schools*; EDWARD WANG, *in his
official capacity as the chair of the Portland
Public Schools Board of Education*;
MICHELLE DEPASS, *in her official
capacity as the vice chair of the Portland
Public Schools Board of Education*;
CHRISTY SPLITT, *in her official capacity
as a member of the Portland Public Schools
Board of Education*; VIRGINIA LA FORTE,
*in her official capacity as a member of the
Portland Public Schools Board of Education*;
STEPHANIE ENGELSMAN, *in her official
capacity as a member of of the Portland
Public Schools Board of Education*; PATTE
SULLIVAN, *in her official capacity as the
chairman of the Portland Public Schools
Board of Education*; RASHELLE CHASE-
MILLER, *in her official capacity as a
member of the Portland Public Schools
Board of Education*; the OREGON
EMPLOYMENT RELATIONS BOARD;
ADAM RHYNARD, *in his official capacity
as Chair of the Employment Relations Board*;
SHIRIN KHOSRAVI, *in her official capacity*

Case No. 3:25-cv-00854-AR

**ORDER/FINDINGS &
RECOMMENDATION**

*as a member of the Employment Relations Board*; and
BENJAMIN O'GLASSER, *in his official capacity*
*as a member of the Employment Relations Board*,

                 Defendants.

---

**ARMISTEAD, United States Magistrate Judge**

Plaintiff John Doe is an Israeli-born Jew who alleges that his labor union, Portland Association of Teachers (PAT), and his employer, Portland Public Schools (PPS), discriminated against him and violated his First Amendment constitutional rights. His lawsuit concerns responses from the school community to the Sunni Islamist group Hamas killing over 1,200 Israelis and foreign nationals and taking 251 hostages on October 7, 2023, and the ensuing violent conflict in Gaza between Israel and Palestinians. Doe also names as defendants the Oregon Employment Relations Board (ERB) and Adam Rhynard, Shirin Khosravi, and Benjamin O'Glasser in their official capacities as chair and members of ERB (ERB individual defendants); and Kimberlee Armstrong in her official capacity as superintendent of PPS and Edward Wang, Michelle DePass, Christy Splitt, Virginia La Forte, Stephanie Engelsman, Patte Sullivan, and Rashelle Chase-Miller in their official capacities as chairs and members of the PPS Board of Education (PPS individual defendants).

Doe brings seven claims. The first four claims are brought under 42 U.S.C § 1983 and allege violations of his constitutional rights. First, he claims that PAT, PPS defendants, and ERB defendants violated his First Amendment right to freedom of association (**Claim 1**). Second, he claims that PAT, PPS defendants, and ERB defendants violated his First Amendment right to freely exercise his religion (**Claim 2**). Third, Doe claims that PPS defendants violated his First

Page 2 – ORDER/FINDINGS & RECOMMENDATION
*Doe v. Portland Assoc. of Teachers et al.*, 3:25-cv-00854-AR

Amendment right to free speech (**Claim 3**). Fourth, he claims that PPS defendants violated the First Amendment's Establishment of Religion clause (**Claim 4**). His fifth claim is brought under Oregon's employment discrimination statute—ORS § 659A.030—for PPS's and PAT's alleged discrimination against him based on his national origin and religion (**Claim 5**). Doe's remaining two claims are Title VII (42 U.S.C. § 2000E(j) *et seq*.) claims: Doe claims religious discrimination and a hostile work environment against PPS (**Claim 6**) and religious and national origin discrimination against PAT (**Claim 7**). (First Am. Compl. (FAC) at 2-26, ECF 1.) Doe seeks as relief, among other things, declaratory judgments, a permanent injunction enjoining activity the court declares is unconstitutional or unlawful, and compensatory and other damages. (*Id*. at 26-28.)

The court now considers the following motions:

- Doe and PAT each move on the issue of Doe proceeding pseudonymously. (Doe Motion to Proceed Pseudonymously (MTPP), ECF 53; PAT MTPP Oppos., ECF 62.) Doe also moves to file his related declaration under seal. (MTPP Doe Decl., ECF 54.)

- ERB defendants move to dismiss on grounds that ERB cannot be sued in federal court under § 1983;[1] the FAC lacks any factual allegations of actions taken by ERB defendants; because no application or petition had been submitted to ERB, the ERB defendants have not undertaken any act of enforcement against Doe; and the FAC fails to state a claim as to Claims 1 and 2 because neither sufficiently alleges a First Amendment violation. (ERB MTD, ECF 44.)

---

[1]    ERB defendants argue that the claims against them are barred by Eleventh Amendment immunity to the extent that Doe seeks damages against the ERB members or ERB itself. During conferral, Doe's counsel agreed to stipulate that the FAC does not seek damages against ERB defendants.

- PPS individual defendants move to dismiss on grounds that Doe lacks factual allegations that any of them individually acted under color of state law or caused a deprivation of Doe's federal rights. (PPS individual defendants MTD (PPSID) MTD, ECF 50.)

- PAT first moves to dismiss on the basis that Doe cannot proceed anonymously. And under Supreme Court and Ninth Circuit case law concerning exclusive-representative collective bargaining, PAT asserts that Claims 1 and 2 are foreclosed, and, even if not foreclosed, Claims 1 and 2 would fail as a matter of law. PAT also argues that Claim 7 should be dismissed as untimely. (PAT MTD, ECF 33.)

- PPS moves to dismiss because Claims 1 and 2 fail to state a plausible claim for relief—they are foreclosed by precedent, lack alleged facts to establish PPS's liability, and do not allege the "policy or custom" necessary to establish PPS's *Monell* liability; Claim 3 fails to state a plausible claim for relief because viewpoint discrimination does not apply to government speech; Claim 4 fails to plausibly state a claim because the alleged facts do not support an Establishment Clause violation; Claim 5 fails to make a *prima facie* case for a hostile work environment; and Claim 6 is time barred. (PPS MTD, ECF 47.)

## BACKGROUND

Doe was born in Israel and takes his Jewish religious faith and ethnic heritage seriously. For Doe, the State of Israel is essential and integral to his devout religious faith. Although Doe immigrated to the United States, he maintains close ties to Israel and his family there. (FAC ¶¶ 20-22.) In the 2023-24 school year, Doe worked for PPS as a high school math teacher. When he started working for PPS, he chose not to become a dues-paying member of PAT, exercising his First Amendment right not to support union political speech and public sector collective bargaining. Nevertheless, because Doe is a PPS teacher, PAT is his exclusive representative by way of Oregon's Public Employee Collective Bargaining Act (PECBA), ORS § 243.650 *et seq*. and the collective bargaining agreement (CBA) PAT has with PPS. (FAC ¶¶ 24-25.)

A.    *Allegations against PAT*

Much of Doe's lawsuit is a challenge to PAT's exclusive representation. PECBA establishes that a majority of public-school employees in an appropriate bargaining unit may vote to be represented by an employee organization for purposes of collective bargaining with their public employer on matters of employment relations. ORS §§ 243.662, 243.666(1), 243.686(4).[2] If employees choose union representation, the union becomes the "exclusive representative" of the bargaining unit "for the purposes of collective bargaining with respect to employment relations," and the public employer has a duty to bargain with the union about unit-wide "employment relations." ORS §§ 243.666(1), 243.672(1)(e). PECBA defines "employment relations" as including "matters concerning direct or indirect monetary benefits, hours, vacations, sick leave, labor organization access to and communication with represented employees, grievance procedures and other conditions of employment," but excluding "subjects that have an insubstantial or de minimis effect on public employee wages, hours, and other terms and conditions of employment." ORS § 243.650(7)(a), (d). And school districts do not have to bargain with the exclusive representative about "the school curriculum" and other matters expressly excluded from the definition of "employment relations." ORS § 243.650(7)(e)(B).

---

[2]    The Oregon Supreme Court has observed that "PECBA was designed to improve relations between public employers and their employees[.]" *Am. Fed'n of State Cnty. & Mun. Emps. v. City of Lebanon*, 360 Or. 809, 815 (2017). PECBA is meant to protect public employees' "economic welfare during their employment and to provide a means for them to affect certain negotiable working conditions" and "public safety by the substantive device of prohibiting strikes of public safety employees." *Id.*

Page 5 – ORDER/FINDINGS & RECOMMENDATION
*Doe v. Portland Assoc. of Teachers et al.*, 3:25-cv-00854-AR

Doe argues that he is forced to associate with PAT even though it uses its position as exclusive representative to promote views that conflict with his religious beliefs. Doe's allegations against PAT generally fall into one of the following categories: (1) Curricula; (2) Displays; (3) Prayer; (4) Organizing and Political Activities; and (5) PAT Member Conduct.

*Curricula*. Doe alleges that PAT collaborates with Oregon Educators for Palestine (OEP) in its publications, including by co-publishing a guide called "Teach Palestine!"[3] The guide references resources for teaching about Palestine, "encourages teachers to use their classroom to teach anti-Isreal views[,] and includes detailed curricula recommendations for pre-K through high school." (FAC ¶ 41, Ex. B; ¶ 44.) Among the recommended resources in the "Teach Palestine!" guide is "Teaching While Muslim," which includes the statement "75 years ago, a lot of decision makers around the world decided to take away Palestinian land to make a country called Israel. Israel would be a country where rules were mostly fair for Jewish people with White skin" and encouragement to make signs that include the slogan "Free Palestine." (FAC ¶ 48, Exs. B, G.)

The "Teach Palestine!" resource guide also includes "Let's Go to Palestine." That lesson—directed at elementary school—includes the statement "Palestine is currently under a brutal occupation by Israel. We pray for a truly free Palestine so that the Palestinians can prosper and we can all visit freely." (FAC ¶¶ 46, 47, Exs. B, F.) Also recommended in the guide is "Handala's Return," which includes the statement: "A group of bullies called Zionists wanted our

---

[3]    The cover of the "Teach Palestine" guide includes a PAT logo and describes the document inside as having been compiled by OEP "in collaboration with" PAT. (FAC, Ex. B, ECF 30-2 at 1-2.)

land so they stole it by force and hurt many people." (FAC ¶ 49, Exs. B, H.) The "Know Your Rights!" guide, also co-published by PAT and OEP, includes references to CBA provisions that protect teachers in teaching what are, according to Doe, anti-Israel views. (FAC ¶ 50.)

*Displays*. Doe alleges that, with PAT's encouragement, teachers at Doe's school wore clothing that included pro-Palestine messages, such as "Free Palestine," and "From the River to the Sea." (FAC ¶ 73.) School administration also allowed posting of Palestinian flags, print-out maps of Palestine that eliminate Israel, and other symbols and slogans throughout the school. The displayed flags and other symbols were in common spaces such as hallways, the library, as well as shared classrooms. In Doe's view, the "placement was intentional so as to appear to be an expression of the community and school rather than any individual." (FAC ¶¶ 63, 64.)

*Prayer*. A teacher "led an on-campus morning meeting that he designated as a 'prayer circle' to support Palestine." (FAC ¶ 74.)

*Organizing and Political Activities*. PAT collaborates with OEP in its publications, including by co-publishing the "Know Your Rights!" guide—a document "developed in response to the censorship, discrimination, and harassment" that PPS staff experienced when teaching or supporting pro-Palestine views. (FAC ¶ 41, Ex. I.) PAT's social media accounts follow OEP, which organizes events and speech activities in support of Palestine and against Israel and which is visible to the public as well as members of PAT. (FAC ¶ 55.) OEP used social media to promote May 15 as "Nakba Day," for instance. It stated, "This Nakba Day, we call on educators across Oregon to wear your kufiya [sic], pins, and "From the River to the Sea, Palestine Will Be Free" shirt to school or work!" (FAC ¶ 42, Ex. D.) On its own social media channels, PAT

announced a "students for peace" walkout on March 15, 2024, with a rally at PAT headquarters that included anti-Israel expression. (FAC ¶ 40, Ex. C.)

Doe also alleges that PAT endorses candidates who are vocally anti-Israel and pro-Palestine, including then-candidates Raschelle Chase-Miller and Jorge Sanchez Bautista, both of whom have used social media to promote anti-Israel messages. (FAC ¶ 56.) On May 28, 2024, PAT held informational sessions for teachers to "[l]earn about your rights to teach and advocate for Palestine within Portland Public Schools" at PAT Hall. (FAC ¶ 43, Ex. E.)

*PAT Member Conduct*. PAT members and representatives allegedly "took coordinated, politically charged actions" while knowing or disregarding the effect they would have on Doe, including posting on social media that staff should wear pro-Palestinian clothing and should post pro-Palestinian messages through the school. (FAC ¶¶ 93-95.)

In March 2024, Doe "was physically intimidated by a colleague who physically blocked him from entering the copy room to use the copy machine." (FAC ¶ 100.) The colleague was "vocal about her anti-Israel views." (*Id.*) Doe also alleges that other PAT members spread rumors about Doe and falsely blamed and accused him of various things. (FAC ¶¶ 82, 99, 102, 103.)

**B.    *Allegations against PPS***

Doe also takes issue with PPS, alleging that it discriminated against him and violated his First Amendment rights. Against PPS, Doe alleges the following:

- "[t]he school's policy is that every poster or expressive item displayed in the school's common areas, such as a hallway, has to receive approval from administration. Thus, any display in these areas was with the explicit or implicit permission of the school administration." (FAC ¶ 61.)

- "School administration allowed posting of Palestinian flags, print-out maps of Palestine that eliminate Israel, and other symbols and slogans throughout the school." (FAC ¶ 63.)

- "The displayed flags and other symbols were in common spaces such as hallways, the library, as well as shared classrooms. The placement was intentional so as to appear to be an expression of the community and school rather than any individual staff person." (FAC ¶ 64.)

- Although Doe brought his concerns to PPS, his school's administration refused to remove pro-Palestine symbols. (FAC ¶¶ 68, 69.)

- "When he asked school administrators if he could display a flag of Israel or symbols supporting Israel's right to exist, school administrators denied Plaintiff's request telling him that an Israeli flag or related symbols would be too disruptive." (FAC ¶ 70.)

- "Because it only allowed pro-Palestinian flags, symbols, and messages, the school failed to maintain any kind of viewpoint neutrality on this issue." (FAC ¶ 71.)

Doe asserts that PPS created a hostile work environment in its religious discrimination, primarily by making Doe's school "a forum for one-sided, anti-Israel rhetoric." (FAC ¶ 60.) As a result of that hostile work environment, Doe experienced a "severe recurrence" of his post-traumatic stress disorder (PTSD) which forced him to take a leave of absence and undergo medical treatment during the summer of 2024. (FAC ¶¶ 111-12.)

Doe alleges that PPS's discriminatory conduct continues because it has failed to resolve or respond to his complaints, failed to take measures to curb the hostile work environment, and subjected him to an investigation based on false accusations. (FAC ¶¶ 104-09.) Although PPS transferred Doe to another school for the 2024-25 school year, Doe asserts that he continues to face hostility because of PPS's failure "hold individuals to account," which means that he cannot attend district-wide events because he might encounter those colleagues there. (FAC ¶¶ 113-17.)

Doe also contends that PPS's discrimination is ongoing because, as a result of PPS's "refusal to clarify the record," he continues to be "blamed for incidents that did not occur." (FAC ¶ 119.) For instance, in May 2025, Doe had to correct one of his new colleagues when they asked him "whether it was true that he was suspended for removing Palestinian flags from all the classrooms." (*Id.*)

Doe filed his initial complaint on May 19, 2025 (ECF 1) and filed an anonymous petition through his attorney with the Equal Employment Opportunities Commission (EEOC) on May 22, 2025. (FAC ¶ 183.) He received his right to sue letter on July 15, 2025. (FAC ¶ 183, Exs. K, L.) Before any defendants answered, Doe amended his complaint and added two Title VII claims against PAT and PPS. For those claims, Doe maintains that he has properly exhausted his administrative remedies. (Doe Resp. to PPS MTD at 25, ECF 60; Doe Resp. to PAT MTD at 17, ECF 52.)

## MOTION TO PROCEED PSEUDONYMOUSLY

Over PAT's objection, Doe requests that the court permit him to proceed under the Doe pseudonym because, in his view, concealing his identity is needed to protect him from retaliation, harassment, and injury. He also seeks to file under seal his declaration in support of his motion to proceed under pseudonym. (MTPP Doe Decl., ECF 54.) Doe's fears stem, in part, from media reports of nation-wide antisemitic violence since October 7, 2023. (MTPP at 7.) Those reports include an arson targeting Pennsylvania governor Josh Shapiro in April 2025, the killing of two Israeli embassy staff outside the Capitol Jewish Museum in Washington, D.C. in May 2025, and a gunman who shouted "Free Palestine" before opening fire at a New Hampshire

country club wedding in September 2025.[4] Doe also points to antisemitic violence in Oregon—antisemitic messages left at Southern Oregon homes and a Portland man who made bomb threats to Jewish hospitals.

Doe also argues that he must proceed under pseudonym because of the "harassment, ridicule and physical and mental harm" he has already experienced as a result of PPS and PAT's alleged discriminatory conduct. (MTPP at 13.) Doe has been "constantly immersed" in an "atmosphere of hostility, intimidation, discrimination, and danger at school" and argues that he, his family, and other members of the Jewish community could face even more harm should his name become public. (*Id.* at 14.) Moreover, Doe contends that he is particularly vulnerable

---

[4]    Some of the news articles that Doe relies on include Christian Martinez, *Man arrested in possible hate crime at Fresno bakery is also a suspect in synagogue vandalism*, L.A. TIMES (Oct. 11, 2023), https://perma.cc/3Y7C-57NB; CBS New York Team, *NYPD: Man allegedly told woman he punched her because "you are Jewish"* CBS NEWS (Oct. 18, 2023), https://perma.cc/CGL6-64KG; Luke Tress, *19-year-old charged with hate crimes in reported attack on Israeli student at Columbia U*, JEWISH TELEGRAPH AGENCY (Oct. 16, 2023) https://perma.cc/EF4S-M43R; McGeehan, Patrick, *Man is Charged With Hate Crime in Stabbing Near Brooklyn Synagogue*, THE NEW YORK TIMES (Aug. 11, 2024), https://perma.cc/Q3CX-ZTNE; Hernandez, Joe, *What we know about the arson at Pennsylvania Gov. Josh Shapiro's residence*, NPR NEWS (April 14, 2025) https://perma.cc/JQ5Y-EG9T; Danny Freeman, *Suspect in arson at Pennsylvania governor's home targeted the governor for his views on war in Gaza, warrant says*, CNN.com (April 16, 2025) https://perma.cc/2K8Q-RU4N; Rabinowitz, Hannah, *Capital Jewish Museum shooting suspect indicted on murder and hate crime charges and could face death penalty*, CNN.COM (Aug. 6, 2025) https://perma.cc/L694-LWVK; Emily Mae Czachor, *Boulder attack suspect threw Molotov cocktails at people rallying for Israeli hostages, officials say. Here's what we know*, CBS News (June 4, 2025) https://perma.cc/9KGU-RBQM. Since Doe's briefing, a Mississippi synagogue was burned, Alisha Ebrahimji, Caroll Alvarado, *A baseball player and honor student: What we know about the teen who confessed to burning Mississippi's oldest synagogue*, CNN.COM (Jan. 14, 2026) https://perma.cc/BKF6-N6CF; and someone rammed their truck into a Michigan synagogue with more than a 100 children inside, Hanna Park, *A truck rammed a Michigan synagogue with more than a hundred children inside. Here's what we know*, CNN.COM (Mar. 15, 2026) https://perma.cc/P539-JDKR.

because of "documented PTSD" that resurged when he was confronted with pro-Palestine symbols and messages at his school. (*Id.*)

In the Ninth Circuit, a district court turns to five factors to determine whether to allow a party to proceed anonymously when the opposing party has objected: "(1) the severity of the threatened harm, (2) the reasonableness of the anonymous party's fears, (3) the anonymous party's vulnerability to such retaliation, (4) the prejudice to the opposing party, and (5) the public interest." *Doe v. Kamehameha Schs./Bernice Pauahi Bishop Est.*, 596 F.3d 1036, 1042 (9th Cir. 2010) (quoting *Does I Thru XXIII v. Advanced Textile Corp.,* 214 F.3d 1058, 1068 (9th Cir. 2000)) (citation modified). Considering those factors, the court exercises its discretion to permit Doe to proceed under pseudonym at this stage of the litigation.[5]

Beginning with the public's interest and right to open courts, there is a presumption that parties use their real names. *Kamehameha*, 596 F.3d at 1043-42. Yet the court does not see how withholding Doe's identity obstructs the public's consideration of the constitutional and discrimination issues in this case. *See id.* at 1043 ("on the other side of the public-interest debate, it is difficult to see 'how disguising plaintiffs' identities will obstruct public scrutiny of the important issues in this case'") (quoting *Advanced Textile,* 214 F.3d at 1072). And Doe has indicated that he may abandon his lawsuit if required to proceed under his real name. (Tr. Oral Arg. 103:8–105:24.) Allowing him to proceed pseudonymously to litigate the merits of his

---

[5]    As a nondispositive pretrial matter, the court's determination is reviewed for clear error. *Kamehameha*, 596 F.3d at 1041 n.4 (affirming district court's application of "clearly erroneous" standard of review for magistrate judge's findings on motion to proceed anonymously).

lawsuit is another factor that weighs in Doe's favor. *Advanced Textile*, 214 F.3d at 1077 (the

"public . . . has an interest in seeing this case decided on the merits").

As for the two most important *Advanced Textile* factors—severity of threatened harm and

reasonableness of the plaintiff's fears (*Kamehameha*, 596 F.3d at 1043)—the court finds that

they favor Doe. Although the court agrees with PAT that Doe's perceived threats of harm from

PPS or PAT are neither severe nor reasonable (*see generally*, PAT MTPP Oppos. at 10-13), the

violence against Jewish people and those who hold views like his cannot be discounted. The

court rejects PAT's characterization of the antisemitic violence nationwide relied on by Doe as

"isolated instances." (*Id.* at 13.) The media reports provided by Doe evince the reality that

antisemitic violence is a regular occurrence in the United States since the October 7 terror attack.

The antisemitic violence is notable for its unpredictability—there is no telling when or where it

may next happen. Which is why Jewish institutions (community centers, places of worship,

grade schools) in Portland have reasonably taken precautions, like employing security guards,

that similarly situated non-Jewish institutions have not. And which is why the court is

unconvinced by PAT's argument that the instances of violence relied on by Doe are not relevant

because they "all occurred in a handful of other states." (*Id.* at 14.) The court is similarly

unpersuaded by PAT's contention that none of the reported instances of violence "involved

retaliation against anyone for bringing a lawsuit." (*Id.*)

As for Doe's vulnerability, the court takes at face value at this stage of the litigation his

statement that he has documented PTSD from his time growing up in Israel, where, among other

things, he witnessed bombings and rockets flying over his home. (MTPP Doe Decl. ¶ 10.) And

finally, as for prejudice to PAT, the court is unconvinced by its assertion that Doe's pseudonymity

Page 13 – ORDER/FINDINGS & RECOMMENDATION
*Doe v. Portland Assoc. of Teachers et al.*, 3:25-cv-00854-AR

will hinder its ability to defend itself. Doe's identity is known to PAT, and presumably its members. PAT's contention that its efforts to gather third-party discovery will be hampered is unsupported by an explanation of who those third parties might be or how Doe's identity would be necessary for those efforts. As for PAT's ability to "fully defend" itself in the media[6] (PAT MTPP Oppos. at 19), PAT has this forum to challenge his allegations, and its inability to name him in the press is insufficient to establish enough prejudice to deny Doe's motion to proceed under pseudonym.

For those reasons, the court exercises its discretion to permit Doe to file his declaration under seal and grants his motion to proceed under pseudonym. Accordingly, PAT's motion for dismissal on the basis that Doe wishes to proceed under pseudonym (PAT MTD at 8) is DENIED.

## LEGAL STANDARD—RULE 12(b)(6)

A court will grant a Rule 12(b)(6) motion to dismiss for failure to state a claim when a claim is unsupported by a cognizable legal theory or when the complaint is without sufficient factual allegations to state a facially plausible claim for relief. *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010). Assessing the sufficiency of a complaint's factual allegations requires the court to: (1) accept that plaintiff's well-pleaded material facts alleged in the complaint are true; (2) construe factual allegations in the light most favorable to plaintiff; and (3) draw all reasonable inferences from the factual allegations in favor of plaintiff.

---

[6] Doe's attorneys have shared Doe's allegations in the press. (MTPP Resp. Bonilla Decl. ¶ 5, ECF 63.) They have done so while also seeking the protections of pseudonymity based in part on Doe's vulnerability. The court is permitting Doe to proceed under pseudonym for now, but that could change if his attorneys' conduct undermines Doe's asserted interests in doing so.

Page 14 – ORDER/FINDINGS & RECOMMENDATION
*Doe v. Portland Assoc. of Teachers et al.*, 3:25-cv-00854-AR

*Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012); *Newcal Indus. v. Ikon Off. Sol.*, 513 F.3d 1038, 1043 n.2 (9th Cir. 2008). A plaintiff's legal conclusions that are couched as factual allegations, however, need not be credited as true by the court. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). To be entitled to a presumption of truth, allegations in a complaint "may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

A complaint's factual allegations must "plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). Plausibility is not probability, but plausibility "asks for more than a sheer possibility that a defendant has acted unlawfully." *Mashiri v. Epsten Grinnell & Howell*, 845 F.3d 984, 988 (9th Cir. 2017) (quotation marks omitted). The court's assessment of plausibility is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 671.

## DISCUSSION

### A.    *ERB's Motion to Dismiss*

ERB and ERB individual defendants contend that they are protected from Doe's § 1983 claims (Claims 1 & 2) by Eleventh Amendment sovereign immunity. (ERB MTD at 5.); U.S. Const. amend. XI ("The Judicial power of the United States shall not be construed to extend to

Page 15 – ORDER/FINDINGS & RECOMMENDATION
*Doe v. Portland Assoc. of Teachers et al.*, 3:25-cv-00854-AR

any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."); *Hess v. Port Auth. Trans-Hudson Corp.*, 513 U.S. 30, 39 (1994) ("The Eleventh Amendment largely shields States from suit in federal court without their consent, leaving parties with claims against a State to present them, if the State permits, in the State's own tribunals."); *Kohn v. State Bar of Cal.*, 87 F.4th 1021, 1026 (9th Cir. 2023) (en banc) ("This immunity extends not just to suits in which the state itself is a named party but also to those against an arm of the state.") (citation modified).

Whether an entity is an arm of the state is determined by the Ninth Circuit's three-factor test set out in *Kohn*: (1) the state's intent as to the entity's status, including the functions the entity performs; (2) the state's control over the entity; and (3) the entity's overall effects on the state treasury. 87 F.4th at 1030. There is no doubt that ERB satisfies this test. Doe does not contest this. ERB should be dismissed from this lawsuit.

As for ERB individual defendants, they contend that the FAC fails to allege a single fact pinning on them conduct that violated Doe's constitutional rights to free speech and the free exercise of religion. Doe, effectively conceding that point, asserts two theories as to why ERB individual defendants should be included in this lawsuit: (1) they are "necessary" parties under Federal Rule of Civil Procedure 19(1); and they fall within the limited exception set out by the Supreme Court in *Ex parte Young*, 209 U.S. 123 (1908), in which a plaintiff may seek prospective or declaratory relief against state officers in their official capacities. Both theories fail to persuade.

Rule 19(1) is a joinder rule used for when an absent party is necessary for adjudication of a dispute. Here, ERB individual defendants are named parties that have appeared; the court is

Page 16 – ORDER/FINDINGS & RECOMMENDATION
*Doe v. Portland Assoc. of Teachers et al.*, 3:25-cv-00854-AR

unaware of any case law that says that invocation of Rule 19(1) relieves Doe of his pleading requirements under Rule 8(a) and *Iqbal*, which applied here require alleged facts that ERB individual defendants acted under color of state action and caused Doe's alleged constitutional deprivations. *See Leer v. Murphy*, 844 F.2d 628, 632-33 (9th Cir. 1988) ("Section 1983 imposes two essential proof requirements upon a claimant: (1) that a person acting under color of state law committed the conduct at issue, and (2) that the conduct deprived the claimant of some right, privilege, or immunity protected by the Constitution or laws of the United States.").

Doe also failed to plead (or provide at oral argument) facts alleging the part ERB defendants would play in any enforcement of a court judgment directed at conduct in PPS schools or by PAT. To the extent that Doe seeks modification of the collective bargaining agreement (Doe Resp. to ERB MTD at 5), even then the ERB individual defendants would have no role here. That is, in their capacities as ERB board members, their function is to determine the "appropriate bargaining unit." *See* ORS § 243.682 (ERB, "upon application of a public employer, a public employee or a labor organization, designate[s] the appropriate bargaining unit."). And any such action cannot be done without an application or petition. *Id.* Nothing in the record indicates that that has happened. Because Doe has not pleaded any facts that establish a sufficient nexus to enforcement of the alleged constitutional deprivation, the ERB individual defendants are neither necessary parties to this lawsuit nor subject to the exception of sovereign immunity provided in *Ex parte Young*. *Cf. Espino v. Regents of the Univ. of Cal.*, 666 F. Supp. 3d 1065, 1082 (C.D. Cal. 2023) (observing that "to state a cognizable Title II claim against the Chiefs of Staff, Plaintiffs must allege sufficient facts to show that the Chiefs of Staff have some

'fairly direct' connection to the enforcement of Title II when acting in their official capacities as employees of Defendant").

ERB individual defendants should be dismissed because the FAC fails to plausibly allege facts necessary to establish § 1983 liability for Claims 1 and 2, irrespective of the court's recommendations regarding the lack of adequately pleaded constitutional violations.

**B.     *PPS Individual Defendants' Motion to Dismiss***

PPS individual defendants—PPS board members and the superintendent—seek dismissal of the constitutional claims (Claims 1-4) and the discrimination claims (Claims 5 and 6). For the constitutional claims, PPS individual defendants advance arguments like the ones raised by ERB individual defendants: the FAC does not allege that they were acting under color of state law, nor that they caused the alleged constitutional deprivations. (PPSID MTD at 4.) And like his response to ERB individual defendants, Doe argues that those allegations are not required because PPS individual defendants are necessary under Rule 19(1) and *Ex parte Young*. For the reasons stated above, Doe's response is lacking. Rule 19(1) is inapplicable here and the FAC does not explain how PPS individual defendants had a fairly direct role in carrying out the alleged constitutional violations Doe seeks to enjoin. The same holds true for the state discrimination law claims.

PPS individual defendants should be dismissed because the FAC fails to plausibly allege facts necessary to establish their § 1983 liability for Claims 1 through 4 as well as Claims 5 and 6, irrespective of the court's recommendations regarding the lack of adequately pleaded constitutional violations and discriminatory conduct.

Page 18 – ORDER/FINDINGS & RECOMMENDATION
*Doe v. Portland Assoc. of Teachers et al.*, 3:25-cv-00854-AR

C.    *Claims 1 & 2—Exclusive Representation (against PAT, PPS & ERB)*

Doe brings two claims under 42 U.S.C. § 1983, alleging that Oregon's statutory requirement of exclusive representation placed him in a bargaining unit exclusively represented by PAT. Claim 1 alleges that PAT's exclusive representation violated his First Amendment right to free association by forcing him to associate with expression with which he disagrees, and which betrays his deeply held religious and moral beliefs. (FAC ¶¶ 122-23.) He alleges that a reasonable observer would associate him with PAT's speech because he "is a known member of the bargaining unit represented by PAT, and PAT purports to speak for all members of the bargaining unit." (*Id.* ¶ 124.) Claim 2 alleges that PAT's exclusive representation compels him, bv association, to tacitly affirm beliefs that violate his deeply religious beliefs and personal convictions as a condition of employment. (*Id.* ¶ 129.)

**Knight *and* Mentele.** PPS, PAT, and ERB have the same argument as to why Claims 1 and 2 should be dismissed: Supreme Court case law—*Minnesota State Board for Community Colleges v. Knight*, 465 U.S. 271 (1984)—and Ninth Circuit case law—*Mentele v. Inslee*, 916 F.3d 783 (9th Cir. 2019)—foreclose Doe's allegations that his free association and free exercise rights were violated. (PPS MTD at 16-17; PAT MTD at 19-22, 28-29; ERB MTD at 11-12). The court agrees.

In *Knight*, the Court considered a constitutional challenge brought by non-union faculty members at a community college against Minnesota's exclusive representation law, which required, in part, for Minnesota to "meet and confer" with public employees' exclusive representative regarding "policy questions relating to employment but outside the scope of mandatory bargaining." 465 U.S. at 273-75, 279. The Court held that the exclusion of non-union

members from Minnesota's "meet and confer" provision did not infringe the non-union members' First Amendment rights. It reasoned that Minnesota had "in no way restrained the [non-union members'] freedom to speak on any education-related issue or their freedom to associate or not to associate with whom they please, including the exclusive representative." *Id.* at 288. That is because, the Court explained, the non-union members had not been denied access to a public forum, *id.* at 280-83, state employees had no right to be heard by, or negotiate individually with, a public body, *id.* at 283-85, and the non-union members were free to form advocacy groups or otherwise make their views known to Minnesota and associate with whomever they wished to associate, *id.* at 288-90.

*Knight* was relied on by the Ninth Circuit in *Mentele*, when it considered a challenge to exclusive representation in the State of Washington by two childcare providers, who asserted that Washington's authorization of a union to exclusively represent publicly subsidized childcare providers infringed her First Amendment rights of free speech and association. 916 F.3d at 784. The court rejected that challenge: "Washington's authorization of an exclusive bargaining representative does not infringe [plaintiff's] First Amendment rights." *Id.* at 789.

The collective bargaining system considered in *Knight* is no different than PECBA in any way that matters to Doe's constitutional challenges. Doe, who is not a member of PAT and does not have to pay PAT membership dues, has not had his associational rights impaired. And *Knight* extends, as this court sees it, to First Amendment rights generally. 465 U.S. at 288 ("The state has in no way restrained appellees' freedom to speak on any education-related issue or their freedom to associate or not to associate with whom they please, including the exclusive representative. Nor has the state attempted to suppress any ideas."). That Doe specifically

Page 20 – ORDER/FINDINGS & RECOMMENDATION
*Doe v. Portland Assoc. of Teachers et al.*, 3:25-cv-00854-AR

challenges his right to freely exercise his religion is of no moment in this context. Like the freedom to associate and freedom to speak, rights that are unburdened by exclusive representation, so too is Doe's freedom to practice his religion—PAT's exclusive representation in no way "forces" Doe to "tacitly approve" PAT's beliefs. (Doe Resp. to PAT MTD at 42-43.)

Nor does the court agree with Doe that *Knight* no longer remains good law. The Supreme Court in *Janus*, which addressed the constitutionality of compulsory union dues, raised the issue of exclusive bargaining and left it intact. 585 U.S. at 916 ("It is also not disputed that the State may require that a union serve as exclusive bargaining agent for its employees—itself a significant impingement on associational freedoms that would not be tolerated in other contexts. We simply draw the line at allowing the government to go further still and require all employees to support the union irrespective of whether they share its views."). Likewise, the Ninth Circuit in *Mentele*, when it chose whether to heed *Knight* or *Janus* as the basis for its decision, viewed *Knight* as good law when it chose to rely on it. 916 F.3d at 789 ("The same passage [plaintiff] identifies as evidence that *Knight* did not survive *Janus* goes on to expressly affirm the propriety of mandatory union representation, which is consistent with *Knight*. *Janus* is also clear that the degree of First Amendment infringement inherent in mandatory union representation is tolerated in the context of public sector labor schemes.").

Also not well taken is Doe's argument that in *Mentele* the Ninth Circuit "improperly expand[ed] *Knight*'s holding in deciding that compelled exclusive representation does not violate the First Amendment's [guarantee] of freedom of speech." (Doe Resp. to PPS MTD at 38.) *Knight* and *Mentele* are sufficiently broad in scope to encompass Doe's claims. In *Knight*, the Court stated that the non-union members' "associational freedom has not been impaired" and that

Page 21 – ORDER/FINDINGS & RECOMMENDATION
*Doe v. Portland Assoc. of Teachers et al.*, 3:25-cv-00854-AR

they "are not required to become members of [the union], and they do not challenge the monetary contribution they are required to make to support [the union's] representation activities." 465 U.S. at 289. As in *Knight*, Doe, who is not required to be a member of PAT, is *not* a member of PAT. (FAC ¶¶ 24, 26.) The extent of his "association" with PAT is that PAT is his exclusive representative for collective bargaining as to the *terms and conditions* of his employment—subjects like wages, hours, and vacation. That is, PAT is prohibited from bargaining with PPS about curriculum or other conduct that Doe challenges in this lawsuit.

Even if *Knight* and *Mentele* did not foreclose Doe's constitutional challenge to PECBA, Doe fails to establish PPS's § 1983 liability. To establish municipal liability under *Monell*, Doe must plead that his alleged injury was caused by a municipal policy or custom. *Los Angeles County v. Humphries*, 562 U.S. 29, 31 (2010). The court agrees with PPS that the only "policy" alleged in Doe's FAC is PPS's recognition of PAT as the exclusive bargaining representative. (PPS MTD at 19-20.) But that is not so much a policy as it is a statutory mandate under PECBA. *See Wilkins v. Herron*, 24-80, 2024 WL 5200177, at *2 (9th Cir. Dec. 23, 2024), *cert. denied*, 146 S. Ct. 176 (2025) ("[A municipal policy or custom must constitute a 'deliberate choice to follow a course of action . . . made from among various alternatives.") (citing *Benavidez v. County of San Diego*, 993 F.3d 1134, 1153 (9th Cir. 2021)).

In *Wilkins*, a plaintiff challenging Oregon's vaccine mandates failed to establish municipal liability because he could not show that his injuries were "traceable to any policy or custom of the School District, as opposed to state law." *Id.* at *2 (citations omitted). So too here. Doe's allegations show nothing beyond PPS's adherence to its statutory obligations under PECBA. And Doe's response that PPS has discretion in negotiating and enforcing the terms of

Page 22 – ORDER/FINDINGS & RECOMMENDATION
*Doe v. Portland Assoc. of Teachers et al.*, 3:25-cv-00854-AR

the CBA between PPS and PAT does not alter the court's analysis. As PPS correctly points out, Doe does not allege that any particular CBA provision gave rise to his injuries; his only challenge is PAT's exclusive representation. Doe cannot establish PPS's § 1983 liability on those allegations.

In sum, Doe's freedom of association arguments are best suited for the appellate courts, cannot succeed in this court, and should therefore be dismissed.

### D.    *Claim 3—Viewpoint Discrimination (against PPS)*

Does allege in Claim 3 that PPS allows expression of pro-Palestine, anti-Israel views but disallowed his request to promote pro-Israel views, and that by doing so (the One View Conduct), PPS applied its rules on speech and expressive activity in a viewpoint-based manner. (FAC ¶¶ 137-39.) That viewpoint discrimination, he alleges, violated his First Amendment rights. *See Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 828-29 (1995) (it is "axiomatic that the government may not regulate speech based on its substantive content or the message it conveys"). PPS asserts that the One View Conduct is government speech, which cannot, according to *Downs v. Los Angeles Unified Sch. Dist.*, 228 F.3d 1003, 1005 (9th Cir. 2000), give rise to a viewpoint-discrimination claim.

"When government speaks, it is not barred by the Free Speech Clause from determining the content of what it says." *Walker v. Texas Div., Sons of Confederate Veterans, Inc.*, 576 U.S. 200, 207 (2015). In *Downs*, the Ninth Circuit held that materials posted on school bulletin boards constituted government speech because only school employees could access the bulletin boards, the bulletin boards were the property of the school, and the school principal oversaw (and thus implicitly approved) the posted materials. *Downs*, 228 F.3d at 1011. That implicit approval was

Page 23 – ORDER/FINDINGS & RECOMMENDATION
*Doe v. Portland Assoc. of Teachers et al.*, 3:25-cv-00854-AR

equivalent to the school itself speaking, and when the school principal removed a competing bulletin board put up by a teacher with opposing views, that "explicit rejection" was equivalent to the school "choosing not to speak." *Id.* at 1012.

The court agrees with PPS that *Downs* controls. Doe alleges that it is PPS's policy "that every poster or expressive item displayed in the school's common areas, such as a hallway, has to receive approval from administration" and thus any displays in the school's common areas required PPS's "explicit or implicit permission." (FAC ¶ 61.) Given that Doe alleges that the One View Conduct is approved by PPS, the viewpoint challenged by Doe is attributable to PPS. *Downs*, 228 F.3d at 1016-17 (holding that "when the school district speaks through bulletin boards that are not 'free speech zones,' but instead are vehicles for conveying a message from the school district, the school district may formulate that message without the constraint of viewpoint neutrality"). The court is unpersuaded that *Downs* is distinguishable because the speech in that case was initiated and directed by the school board's resolution and only school faculty and staff had access to post materials on the bulletin boards. The explicit and implicit approval alleged by Doe makes the viewpoints "vehicles for conveying a message" from PPS. *Id.*

The court disagrees with Doe that he fares better under the Supreme Court's decision in *Shurtleff v. City of Boston, Massachusetts*, 596 U.S. 243 (2022), in which the Court described a "holistic inquiry" to determine whether the government "intends to speak for itself or to regulate private expressions," which includes  (1) the history of the expression at issue; (2) the public's likely perception as to who (the government or a private person) is speaking; and (3) the extent to which the government has actively shaped or controlled the expression. *Id.* at 252 (citing *Walker v. Texas Div., Sons of Confederate Veterans, Inc.*, 576 U.S. 200, 209-214 (2015)). As for

Page 24 – ORDER/FINDINGS & RECOMMENDATION
*Doe v. Portland Assoc. of Teachers et al.*, 3:25-cv-00854-AR

the second factor, Doe alleges that the "display of flags and other symbols were placed intentionally so as to appear to be an expression of the community and the school rather than an individual" (FAC ¶ 64), which means that it is the public's likely perception that PPS is the speaker. As for the third factor, again, Doe's allegation that PPS provided implicit and explicit approval of the views expressed in the hallways of Doe's school (FAC ¶ 61) means that PPS "shaped" and "controlled" the challenged expression. This is particularly true because Doe also alleges that he was prohibited from posting his own views in the common areas. (FAC ¶ 70 ("When he asked school administrators if he could display a flag of Israel or symbols supporting Israel's right to exist," PPS denied that request because it would be "too disruptive.").)

Because the second and third factors favor a conclusion that the alleged viewpoint is government speech—and Doe neither alleges nor argues anything about the first factor—his viewpoint discrimination claim should be dismissed. *See Feldman v. Denver Public Schools*, No. 23-CV-02986-RMR-STV, 2024 WL 4309365, at *6 (D. Colo. Aug. 1, 2024), *report and recommendation adopted*, 23-CV-02986-RMR-STV, 2024 WL 4308189 (D. Colo. Sept. 26, 2024) (accepting the plaintiffs' allegations that the school district's policy was to support its employees' right to display Pride Flags at its schools, "the government 'actively shaped or controlled' the expression at issue") (quoting *Shurtleff*, 596 U.S. at 252)).

Whether analyzed under *Downs* or *Shurtleff*, the One View Conduct alleged by Doe is government speech. Accordingly, his First Amendment freedom of speech claim against PPS cannot stand. The court recommends dismissal of Claim 3.

Page 25 – ORDER/FINDINGS & RECOMMENDATION
*Doe v. Portland Assoc. of Teachers et al.*, 3:25-cv-00854-AR

### E.    *Claim 4—Establishment of Religion (against PPS)*

Doe claims that PPS prefers and promotes religious views and practices in violation of the Establishment Clause. *See* U.S. CONST. amend. I ("Congress shall make no law respecting the establishment of religion,"); *Larson v. Valente*, 456 U.S. 228 (1982) ("one religious denomination cannot be officially preferred over another"). His bases for that claim are that (1) PPS "does not prohibit teachers" from using the Curricula "to proselytize for religious beliefs concerning the State of Israel[] and religious practices" and "on information and belief" that the Curricula has been taught in PPS's classrooms; (2) PPS allowed the Displays while denying Doe an opportunity to display an Israeli flag; and (3) PPS promoted the Prayer. (FAC ¶¶ 140-47.)

The court agrees with PPS's response that the Curricula and Display allegations are not a violation of the Establishment Clause because they can be regarded as *geopolitical* or *political* expressions that happen to align or harmonize with religious beliefs. That is, a policy or conduct does not violate the Establishment Clause "merely because it 'happens to coincide or harmonize with the tenets of some or all religions.'" *Bob Jones Univ. v. United States*, 461 U.S. 574, 604 n.30 (1983) (quoting *McGowan v. Maryland*, 366 U.S. 420, 442 (1961)). To be sure, Doe's understanding of the messages conveyed in the Displays and the Curricula[7] is not unique to him, but PPS's preference (taken as true for this analysis) of pro-Palestinian views over anti-Israel views might have a *secular* basis—something that Doe acknowledges. (Doe Resp. to PPS MTD at 25 (PPS "may have a secular reason for a discussion of the issue").) The maps and flags at issue—although believed by Doe and many others to be inherently religious—are also political

---

[7]    Doe asserts that the Displays and the Curricula are "overtly antisemitic and violate a traditional understanding of Judaism." (FAC ¶ 21; Doe Resp. to PPS MTD at 60.)

and geopolitical. Even for the resource guide "Teaching While Muslim," which Doe alleges is sectarian, he fails to allege specifically what content in the guide advanced the Muslim faith rather than a political viewpoint that can be shared by Muslims and non-Muslims alike. *See American Legion v. American Humanist Assoc.*, 588 U.S. 29, 53 (acknowledging that the Ten Commandments can also have "secular purposes").

As for the Prayer allegation, its critical deficiency is that it fails to satisfy *Iqbal* pleading standards. The allegation merely states that a "teacher led an on-campus morning meeting that he designated as a 'prayer-circle' to support Palestine." (FAC ¶ 74.) That cursory allegation omits any facts that would allow the court to conclude whether the "meeting" or "prayer-circle" was an instance of the unnamed teacher crossing the line from "protected private expression" to "impermissible government coercion." *Kennedy v. Bremerton Sch. Dist.*, 597 U.S. 507, 537 (2022). Put differently, prayer is not categorically prohibited in schools because the Supreme Court has "long recognized . . . that secondary school students are mature enough to understand that a school does not endorse, let alone coerce them to participate in, speech that it merely permits on a nondiscriminatory basis." *Id.* at 538 (citation modified). Nothing in Doe's allegations permits the court to conclude that PPS has plausibly violated the Establishment Clause. Claim 4 should be dismissed.

**F.    *Claim 5—Oregon Workplace Discrimination (against PPS)*[8]**

Doe's fifth claim—brought under ORS § 659A.030(1)(b) (it is unlawful for an employer "to discriminate against the individual in compensation or in terms, conditions or privileges of

---

[8]    Claim 5 is also brought against PAT, which is not moving to dismiss.

employment" because of a person's religion or national origin)—alleges that PPS discriminated against him at work because of his national origin and religion. He alleges that PPS created and fostered a hostile work environment because he was "constantly immersed in an atmosphere that ostracizes his perspective, disparages his beliefs, and refuses him any support," and that when he brought his concerns to PPS, it did nothing. (FAC ¶¶ 151, 152, 155.) That triggered his PTSD, which forced him to take a leave of absence. (*Id.* ¶ 153.) The alleged conduct was directed at Doe's national origin as a person who immigrated from Israel and his sincere religious belief that "the State of Israel is essential to the Jewish faith." (*Id*. at 156.)

On this claim, Doe fails to plausibly allege that PPS's conduct was "sufficiently severe or pervasive to alter the conditions of the plaintiff's employment and create an abusive work environment." *Brown v. Nw. Permanente, P.C.*, 3:22-cv-00986-SI, 2023 WL 6147178, at *6 (D. Or. Sept. 20, 2023) (stating what is required, along with unwelcome verbal or physical conduct of a [religious] nature, to prove workplace discrimination); *Harris v. Pameco Corp.*, 170 Or. App. 164, 176 (2000) (because ORS § 659A.030 is modeled after Title VII employment discrimination laws, "federal cases interpreting Title VII are instructive"). To begin with, his factual allegations lack details about the frequency and extent to which he personally experienced them. Detailed allegations are necessary in this context because to determine objectively if an environment is sufficiently hostile or abusive to constitute a hostile work environment, a court looks at "all the circumstances," including the "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Nichols v. Azteca Rest. Enters., Inc.*, 256 F.3d 864, 872 (9th Cir. 2001).

Page 28 – ORDER/FINDINGS & RECOMMENDATION
*Doe v. Portland Assoc. of Teachers et al.*, 3:25-cv-00854-AR

As pleaded, Doe's Claim 5 allegations also miss the mark because they cannot establish that his workplace was, objectively, sufficiently offensive. *Nichols v. Azteca Rest. Enters., Inc.*, 256 F.3d 864, 871-72 (9th Cir. 2001)) (a plaintiff must ultimately prove that his workplace was "both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so") (quoting *Faragher v. City of Boca Raton,* 524 U.S. 775, 787 (1998)). Although the court does not doubt Doe's subjective perception that his workplace was hostile and conflicted with his religious beliefs and identity, the occurrences alleged by him do not rise to the baseline of pervasiveness and severity that the Ninth Circuit has set.

For example, in *Manatt v. Bank of Am., NA*, 339 F.3d 792, 798-99 (9th Cir. 2003), the court held that troubling and offensive racial comments and behavior (like pulling eyes back to mock the appearance of Asians) were not enough to "so pollute the workplace that it altered the conditions of her employment." *See also Mills v. Peacehealth*, 31 F. Supp. 3d 1099, 1117-18 (D. Or. 2014) (anti-Jewish comments like asking "plaintiff why he worked at PeaceHealth when 'Jews had money stashed and didn't really need to work'" did "not rise to the pervasiveness and severity outlined in *Manatt*"). There are two reasons why Doe's allegations do not plausibly allege an objective basis for a sufficiently severe and pervasive abusive work environment.

First, PPS's alleged conduct is part of a contentious geopolitical debate in which it is not settled whether the views Doe takes issue with are antisemitic or, rather, protests against the actions of the Israeli government toward Palestinians. To adopt Doe's argument that the environment at his school was objectively offensive enough to alter his work conditions is to conflate Doe's subjective belief with the requirement that the work environment was objectively

Page 29 – ORDER/FINDINGS & RECOMMENDATION
*Doe v. Portland Assoc. of Teachers et al.*, 3:25-cv-00854-AR

hostile. *See Newman v. Point Park Univ.*, 2:20-CV-00204, 2022 WL 969601, at *26 (W.D. Pa. Mar. 31, 2022) (reasoning that "the argument that the Plaintiff posits would also require the Court to abandon a core principle of the 'hostile work environment' claim analysis, namely that the conduct complained of be objectively hostile, rather than being measured by the subjective assessment of the Plaintiff"). Whereas the racist and anti-Asian conduct in *Manatt* and *Mills* were offensive in ways in which all can agree (albeit not severe or pervasive enough for a hostile work environment claim), that is not plausibly the case here; were the court to conclude that the PPS's alleged conduct was objectively hostile, it would impermissibly take a side in the debate.[9]

Second, Doe does not allege, or plausibly allege, that the conduct he finds offensive was directed at him. Significant for the Ninth Circuit in *Manatt* and Judge McShane in *Mills* was that much of the alleged conduct was not directed at the plaintiffs. *Manatt*, 339 F.3d at 798 (observing that most of the offensive conduct was overhead and on only a couple of occasions was it directed at plaintiff); *Mills*, 31 F. Supp. 3d at 1117 ("another comment involved a political discussion of the Middle East not directed at plaintiff"). And the court disagrees with Doe's argument that the conduct was directed at him because "his beliefs were well known throughout the school." (Tr. Oral Arg. 58:4-9.) Offensive comments purposely directed at an employee are by degrees more severe than comments overheard first-hand or second-hand, or in this case expressions concerning a geopolitical dispute.

---

[9]      That does not mean that the court does not find troubling the allegation that "print-out maps of Palestine that eliminate Israel" were posted in common areas of Doe's school. (FAC ¶ 63.) But that that display alone, which is difficult to reduce to merely geopolitical polemic, is not enough to meet the severity and pervasiveness threshold.

Nor is the court convinced that because Doe alleges that he was not allowed to express his own views, the alleged conduct was directed at him. The one incident that could said to be directed toward Doe is when a colleague who had voiced anti-Israel views "blocked" Doe from the copy room. (FAC ¶ 100.) Although Doe "was physically intimidated,"[10] that alone or in combination with the other allegations is not enough to objectively establish a hostile work environment.

For those reasons, Claim 5 should be dismissed.

## G.    *Claims 6 & 7—Title VII Workplace Discrimination (against PPS and PAT)*

*PPS.* In his sixth claim, Doe alleges that PPS's conduct violated 42 U.S.C. § 2000e *et seq.*, the federal statutory framework that prohibits workplace discrimination because of, as relevant here, an employee's religion and national origin. This claim is pleaded in two parts. The first is a discrimination claim, based on Doe's belief that the State of Israel is essential to the Jewish faith and that supporting the State of Israel's right to exist as a nation are among his sincerely and deeply held bona fide religious beliefs. (FAC ¶¶ 161, 162.) And those beliefs were deeply offended when PPS gave approval and support to messages throughout Doe's workplace. (*Id.* ¶ 163.) Because he was not permitted by PPS, Doe alleges, to express his disagreement or offer an alternative perspective, he was compelled to silently support those offensive workplace messages. (*Id.* ¶¶ 163, 164.) In his view, PPS discriminated against him by refusing to investigate and resolve his claims and by conducting retaliatory investigations against

---

[10]    The court notes that the passive construction indicates Doe's subjective impression rather than a description of conduct by the colleague that would plausibly describe intimidating behavior on an objective basis.

him for false allegations. The second part of his workplace discrimination claim against PPS is that PPS's actions were severe and pervasive enough to create a hostile work environment. (*Id*. ¶¶ 167-183.)

PPS moves to dismiss Doe's Title VII claim as time-barred. Plaintiffs bringing Title VII claims in federal court must first exhaust their administrative remedies by filing a timely administrative charge with the EEOC. *Lyons v. England*, 307 F.3d 1092, 1104 (9th Cir. 2002). To be timely, a charge must be filed with the EEOC within 180 days of the alleged discriminatory conduct, or, if filed first with a state or local agency, within 300 days of the alleged discriminatory conduct. 42 U.S.C. § 2000e-5(e)(1); *MacDonald v. Grace Church Seattle*, 457 F.3d 1079, 1081-82 (9th Cir. 2006).

Doe, or Doe's attorney on his behalf, filed his EEOC complaint on May 22, 2025, and he received his right-to-sue letter on July 15, 2025, but it is PPS's view that Doe had to file his EEOC complaint by the end of February 2025 and his failure to do so bars his Title VII claim.[11] (FAC ¶ 183.) That is, PPS argues that because the discriminatory conduct alleged by Doe began in March 2024 and lasted until no later than the end of August 2024 when Doe learned that he was under investigation, he had from that time 180 days to file his EEOC complaint (not having alleged he filed a complaint with Oregon's Bureau of Labor and Industries (BOLI)). (PPS MTD

---

[11]    PPS also argues that Doe failed to exhaust his administrative remedies because his attorney filed his EEOC charge in her name, rather than his. (PPS MTD at 42 (citing FAC Ex. L (listing Doe's attorney's name, rather than his own, on the EEOC right-to-sue letter).) Doe responds, supported by a declaration from his attorney, that that is "typical procedure at the EEOC for a complaint filed anonymously." (Doe Resp. to PPS MTD at 25; Schultheiss Decl., ECF 60-1).) PPS does not argue further in its reply but reserves the right to challenge Doe's Title VII claim on that basis. (PPS Reply at 30 n. 13, ECF 69.) Because the court finds Doe's Title VII claim to be untimely, it declines to reach the anonymity issue here.

Page 32 – ORDER/FINDINGS & RECOMMENDATION
*Doe v. Portland Assoc. of Teachers et al.*, 3:25-cv-00854-AR

at 31; FAC ¶¶ 108, 109.) Without support, Doe responds that his claim is timely because PPS's alleged "hostile acts" are ongoing. (Doe Resp. to PPS MTD at 26.)

In *Morgan*, the Supreme Court held that "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges" because "[e]ach discrete . . . act starts a new clock for filing charges alleging that act." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 102 (2002). The Court carved out a limited exception, however, for hostile work environment claims because such claims arise out of the "cumulative effect" of individual, non-discrete acts. *Id.* at 115. Under *Morgan*, a Title VII plaintiff may assert a continuing violation where the hostile work environment persists and "at least one act falls within" the applicable exhaustion period. 536 U.S. at 122.

Here, Doe asserts that there is an ongoing Title VII violation because PPS "continues to foster and encourage an abusive environment regarding [him]" and "continues to advocate elimination of Israel." (Doe Resp. to PPS MTD at 26 (citing FAC ¶¶ 25, 195).) Doe points to two events that occurred in the spring of 2025 to show a timely and continuing violation. The first was a district-wide professional development day held in March. Doe alleges that "faced with the chance of running into former colleagues," he had a panic attack. (FAC ¶ 117.) He also alleges that, due to his "fear of confrontation by former colleagues" who are "openly hostile" and "harassed and threatened him," he cannot "feel safe" at district-wide events and has been unable to attend. (*Id.* ¶¶ 115-117.) In Doe's view, PPS is "perpetuating and continuing the ongoing hostility" by refusing to hold his former colleagues accountable. (*Id.* ¶ 116.) As an example of the purported ongoing hostility resulting from PPS's "refus[al] to clarify the record," Doe alleges

that in May 2025, he had an interaction with a colleague who "asked whether it was true that he was suspended for removing Palestinian flags from all the classrooms." (*Id.* ¶ 119.)

Doe does not clearly articulate in his papers whether the alleged continuing violation is PPS's discrimination against him, or PPS's creation of a hostile work environment. Either way, his Title VII claim is time-barred as currently pleaded. To the extent that Doe asserts a continuing violation based on PPS's discriminatory conduct, his Title VII claim should be dismissed with prejudice because the two events described above do not amount to discrete adverse employment actions taken by PPS. That is true despite any allegation that those events occurred *because of* PPS's discriminatory conduct, as "continuing effect [from past violations] is insufficient to demonstrate a continuing violation." *Bird v. Dep't of Hum. Servs.*, 935 F.3d 738, 748 (9th Cir. 2019).

At oral argument, Doe asserted that it is the hostile work environment created by PPS that is ongoing for the purposes of his Title VII claim. (Tr. Oral Arg. 73:21–74:4.) But Doe cannot rely on that claim to allege a continuing violation either, for two reasons. First, as discussed above, Doe does not plausibly allege that PPS's actions were severe and pervasive enough to create a hostile work environment. Second, even if Doe stated a hostile work environment claim, the court is not persuaded that the two events alleged to fall within the exhaustion period contributed to a purportedly hostile work environment. As pleaded, neither constitutes a discrete or non-discrete act that would give rise to a plausible hostile work environment claim. *See Green v. Brennan*, 578 U.S. 547, 562 n.7 (2016) (clarifying that, under *Morgan*, a timely unlawful employment action, whether discrete or non-discrete, can be aggregated with untimely acts to extend the limitations period for hostile work environment claims).

Page 34 – ORDER/FINDINGS & RECOMMENDATION
*Doe v. Portland Assoc. of Teachers et al.*, 3:25-cv-00854-AR

Doe asserts that, ahead of a district-wide meeting, the fear of seeing colleagues who were "openly hostile" towards him in the past caused him to have a panic attack. (FAC ¶¶ 115-117.) At oral argument, Doe underscored his apprehension about seeing the coworker who allegedly blocked his way into the copy room. (Tr. Oral Arg. 76:7-19.) But Doe does not allege that he attended any district-wide meeting and that any offensive conduct, however minor, transpired between his colleagues and himself. *See Potts v. Steiner*, 6:26-CV-00432-MC, 2026 WL 986295, at *2 (D. Or. Apr. 13, 2026) (describing "offensive comments, name-calling, and insults over time" as "non-discrete acts" that could provide the basis for a hostile work environment claim). Doe also does not articulate how being required to attend district-wide events with previous colleagues amounts to a discrete adverse employment action by PPS.[12]

The only timely *conduct* alleged by Doe is his coworker's question about his suspension. (FAC ¶ 119.) Yet, as pleaded, that single question is just that: a question. Doe does not plead, for example, that the colleague harassed, insulted, threatened, or physically intimidated him. In other words, Doe does not provide any context that would support a finding that the coworker's conduct was severe and pervasive enough to create an objectively hostile work environment. Doe argues that the question stems from PPS's refusal to "clarify the record." (*Id.*) But even construed in the light most favorable to Doe, the coworker's question is, at most, an effect of PPS's past discrimination and, under *Bird*, cannot demonstrate a continuing violation. 935 F.3d

---

[12]    Doe also argues that "[n]o accommodation was made for [him]" at these district-wide meetings to "protect [him] against hostility by coworkers who had instigated and perpetuated the hostility against him." (Doe Resp. to PPS MTD at 26 (citing FAC ¶¶ 114-17).) But Doe does not proceed under a failure to accommodate theory, nor does he allege that he requested accommodations for the meetings and was denied. He accordingly does not properly allege a continuing violation against PPS for any failure to accommodate.

Page 35 – ORDER/FINDINGS & RECOMMENDATION
*Doe v. Portland Assoc. of Teachers et al.*, 3:25-cv-00854-AR

at 748. To the extent that Doe's Title VII claim is premised on an alleged hostile work environment, it should be dismissed.

*PAT.* Claim 7 is a discrimination claim against PAT, alleging that PAT encouraged its members and representatives to promote, teach, and advance messaging supporting destruction of Doe's homeland, and denigrating Doe's heritage and beliefs, and that PAT itself published materials denigrating his ethnicity and religious beliefs. (FAC ¶¶ 188, 191.) He also points to the building where he worked as filled with symbols, images, and messages promoting the destruction of his homeland, at PAT's instigation and encouragement. (FAC ¶ 190.) He alleges that, when he sought PAT representation and counsel, he was assigned to work with someone from PAT who voiced anti-Israel rhetoric. (FAC ¶ 193.)

Labor unions like PAT are subject to Title VII's prohibition against employment discrimination. Section § 2000e-2(c)(3) provides that it is "an unlawful employment practice for a labor organization . . . to cause or attempt to cause an employer to discriminate against an individual in violation of this section." Like PPS, PAT moves to dismiss Doe's Title VII claim as untimely because Doe does not allege that PAT engaged in any discriminatory conduct after he transferred to a new school at the end of the 2024 school year. (PAT MTD at 32-33.) Again, Doe points to the district-wide meetings and the question from his coworker to show that the hostile work environment allegedly created by PAT is ongoing.

But Doe's allegations are conclusory. He alleges that he must attend district-wide events "at which PAT representatives are present and who continue to create hostility" for him. (Doe Resp. to PAT MTD at 18 (citing FAC ¶¶ 114-15).) But as explained above, Doe alleges only that he cannot attend due to his fear of confrontation; his factual allegations do not reveal any actions,

hostile or otherwise, taken by PAT representatives or members at those meetings besides merely being present.

The coworker's question is similarly unavailing as alleged against PAT. Doe asserts that, when he took leave from teaching, "PAT representatives started a false rumor at school that he had been suspended for misconduct."[13] (FAC ¶ 103.) Doe took leave during the 2023-24 school year, long before the applicable exhaustion period. (*Id.* ¶ 111.) Even viewed in the light most favorable to Doe, the coworker's question is again an effect of alleged past discriminatory conduct. The FAC is silent on whether the coworker was even a teacher or associated with PAT. Without more, that interaction is insufficient to show a continuing Title VII violation against PAT. *Bird*, 935 F.3d at 748.

Doe points to two allegations that are unique to PAT to show a continuing violation. First, he asserts that, in the spring of 2025, PAT publicly endorsed two school board candidates, on social media and through a meet-and-greet, who are "vocally anti-Israel and pro-Palestine." (FAC ¶ 56.) PAT responds that imposing civil liability for a public endorsement would violate its First Amendment rights. The court agrees. *See Rodriguez v. Maricopa Cnty. Cmty. Coll. Dist.*, 605 F.3d 703, 710 (9th Cir. 2010) ("Harassment law generally targets conduct, and it sweeps in speech as harassment only when consistent with the First Amendment."). The endorsement and social media posts were not directed at Doe, nor does Doe allege that he was required to attend the meet-and-greet. In other words, PAT's endorsement sought to "disseminate a message to the general public," rather than "intrude upon the targeted [listener] . . . in an especially offensive

---

[13]    Doe alleges elsewhere in his FAC that "teachers," rather than "PAT representatives," started the rumor that he was suspended for misconduct. (*See* FAC ¶ 154.)

Page 37 – ORDER/FINDINGS & RECOMMENDATION
*Doe v. Portland Assoc. of Teachers et al.*, 3:25-cv-00854-AR

way." *Frisby v. Schultz*, 487 U.S. 474, 486 (1988); *see also Rodriguez*, 605 F.3d at 710 (holding that "a college professor's expression on a matter of public concern, directed to the college community" could not "constitute unlawful harassment" where its "offensive quality was based entirely on [its] meaning, and not on any conduct or implicitly threat of conduct that [it] contained"). Doe cannot rely on PAT's endorsements to allege an ongoing hostile work environment and timely Title VII violation.

Doe also argues that a continuing violation exists because he "remains compelled to associate with PAT through exclusive representation, and PAT continues to foster and encourage the abusive environment that it created." (Doe Resp. to PAT MTD at 18 (citing FAC ¶ 195).) But again, Doe's failure to allege any conduct—any discrete or non-discrete act—taken by PAT is fatal to his continuing violation theory. *See Morgan*, 536 U.S. at 112-13 ("Mere continuity of employment, without more, is insufficient to prolong the life of a cause of action for employment discrimination.") (quoting *Delaware State College v. Ricks*, 449 U.S. 250, 257 (1980)); *Cherosky v. Henderson*, 330 F.3d 1243, 1247 (9th Cir. 2003) ("[A] discriminatory policy claim does not extend the statute of limitations."). Because Doe does not properly allege a continuing violation, his Title VII claim against PAT is time-barred and should be dismissed.

## LEAVE TO AMEND

Under Federal Rule of Civil Procedure 15(a), a court should grant leave to amend a complaint "unless amendment would cause prejudice to the opposing party, is sought in bad faith, is futile, or creates undue delay." *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 607 (9th Cir. 1992); FED. R. CIV. P. 15(a)(2) (leave to amend should be freely given "when justice so requires"). When a complaint cannot be saved by amendment, however, dismissal with

prejudice is appropriate. *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir.2003).

As alleged against ERB, PPS, and PAT, Claims 1-3 should be dismissed with prejudice. ERB is immune from suit under the Eleventh Amendment, and PAT's and PPS's § 1983 liability is foreclosed by Ninth Circuit and Supreme Court case law. As alleged against PPS, Claims 4 and 5 should be dismissed without prejudice and with leave to amend. Those claims fail on their facts, rather than on the law, and Doe could cure those deficiencies with additional factual allegations. PAT did not move to dismiss Claim 5, so that claim survives.

With regard to Claims 6 and 7, the court has explained why the allegations in Doe's FAC are insufficient to show a timely and continuing Title VII violation. But because the court recommends dismissing Doe's hostile work environment claim as alleged against PPS without prejudice and with leave to amend, it recommends the same for Claim 6. Likewise, because Doe's hostile work environment claim against PAT survives, Claim 7 also should be dismissed without prejudice and with leave to amend.

As for the individual defendants, Claims 1-6 should be dismissed with prejudice and without leave to amend. Doe has already amended his complaint once (ECF 1) and takes the position in his papers that additional factual allegations are not necessary to state a plausible claim for relief against the ERB individual defendants or PPS individual defendants. Thus, the court concludes that additional factual details are not forthcoming and leave to amend would be futile. *See Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531, 539 (9th Cir. 1989) ("Leave to amend need not be given if a complaint, as amended, is subject to dismissal.").

Page 39 – ORDER/FINDINGS & RECOMMENDATION
*Doe v. Portland Assoc. of Teachers et al.*, 3:25-cv-00854-AR

**CONCLUSION**

For the above reasons, PAT's motion to dismiss (ECF 33) should be GRANTED IN PART and DENIED IN PART. ERB's and ERB individual defendants' motion to dismiss (ECF 44) should be GRANTED. PPS's motion to dismiss (ECF 47) should be GRANTED IN PART and DENIED IN PART. PPS individual defendants' motion to dismiss (ECF 50) should be GRANTED. Doe's cross-motion to proceed under pseudonym (ECF 53) and motion to file his supporting declaration under seal (ECF 54) are GRANTED. Permitting Doe to proceed pseudonymously means that all parties will refer to plaintiff as Doe in all publicly-filed documents and redact all publicly-filed pleadings and other documents to refer to plaintiff as Doe and not his full first or last name.

**SCHEDULING ORDER**

The Findings and Recommendation will be referred to a district judge. Objections, if any, are due within fourteen days. If no objections are filed, the Findings and Recommendation will go under advisement on that date. If objections are filed, a response is due within fourteen days. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

DATED: July 23, 2026

/s/ JEFF ARMISTEAD
_____
JEFF ARMISTEAD
United States Magistrate Judge